# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### MIAMI DIVISION

CASA EXPRESS CORP, as Trustee of
CASA EXPRESS TRUST,

                Judgment Creditor,                       Case No. 1:21-mc-23103-BB

     v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

                Judgment Debtor.

_____/

## JUDGMENT CREDITOR'S *EX PARTE* EXPEDITED MOTION TO COMMENCE PROCEEDINGS SUPPLEMENTARY, TO IMPLEAD DEFENDANTS, AND FOR ISSUANCE OF STATUTORY NOTICES TO APPEAR

       Judgment Creditor Casa Express Corp., as Trustee of Casa Express Trust ("Casa Express"), moves for commencement of proceedings supplementary to execute the Amended Final Judgment (the "Judgment") entered in its favor against Judgment Debtor, the Bolivarian Republic of Venezuela ("Venezuela"), pursuant to the Foreign Sovereign Immunities Act ("FSIA") 28 U.S.C. § 1610(c), Federal Rule of Civil Procedure 69(a), Florida Statute § 56.29, and Southern District of Florida Local Rule 7.1(d)(2).   Casa Express also moves for entry of an order impleading the following individuals and entities as defendants in this matter, and for the issuance of statutory Notices to Appear: Alejandro Andrade Cedeno ("Andrade"), Raul Gorrin Belisario ("Gorrin"), RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group Investments II Corp., RIM Group Investments III Corp., Posh 8 Dynamic Inc., and Planet 2 Reaching Inc.

1

## REQUEST FOR EXPEDITED RELIEF

Casa Express seeks to attach Venezuelan assets blocked by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC")[1].  The assets consist of eight real properties located in Florida that were purchased by Gorrin (through shell entities) with misappropriated Venezuelan funds that he obtained through an illicit and corrupt foreign currency exchange scheme.  Since misappropriated Venezuelan funds were used to acquire the real properties, the properties are subject to a constructive trust in favor of Venezuela, and as explained below, are subject to execution by Casa Express pursuant to 28 U.S.C. § 1610(c) and Florida Statute § 56.29.

Pursuant to Local Rule 7.1(d)(2), Casa Express requests expedited review.  **As recent as March 12, 2021, Gorrin's business partner sold a Venezuelan asset, real property located in Coral Gables, Florida for $3.6 million—despite it being blocked by OFAC.**  In addition, most properties have liens for unpaid assessments and are at risk of foreclosure.  To prevent additional Venezuelan properties from being similarly sold, transferred, or otherwise moved, Casa Express respectfully requests expedited review and relief by date certain – September 24, 2021 (14 days after filing) to promptly implead the parties holding title to the aforementioned real properties.  *See Stansell, et al., v. Revolutionary Armed Forces of Colombia*, Case No. 10-mc-22724-Civ-Scola

---

[1]     Casa Express is in the process of obtaining an OFAC license to cover the eventual execution sale of the real properties.  In the interim, this Court has authority to commence this proceedings supplementary and issue writs of execution against Venezuela's blocked assets.  *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 151 (3d Cir. 2019), *cert. denied*, 140 S. Ct. 2762, 206 L. Ed. 2d 936 (2020) (affirming issuance of writ of attachment to execute Venezuela's blocked asset where creditor had not obtained necessary OFAC license explaining that "[w]hether the Treasury Department permits execution," does not prevent the issuance of a writ of attachment or execution).

(S.D. Fla. Feb. 19, 2019, D.E. 22) (issuing writs of execution and garnishment on an expedited basis because the properties were at risk of being moved or otherwise sold by OFAC-designated individuals).[2]

## STATEMENT OF FACTS

*The Judgment*

1. The United States District Court for the Southern District of New York awarded a $43.3 million judgment in favor of Casa Express against Venezuela for non-payment of two dollar-denominated sovereign bonds, which Casa Express beneficially owns. *See Casa Express Corp., as Tr. of Casa Express Trust v. Bolivarian Republic of Venezuela*, Case No. 1:18-cv-11940-AT, (S.D.N.Y. Oct. 16, 2020, D.E. 77); Aff. of Luis E. Gamardo Medina, President of Casa Express, attached as **Exhibit A,** at Ex. 1.

2. After Venezuela failed to pay the Judgment for more than seven months, the Southern District of New York issued an order finding that a "reasonable period of time" elapsed since the entry of judgment pursuant to 28 U.S.C. §1610(c) of the FSIA[3], and authorizing Casa Express to begin enforcement actions in the United States. *See Casa Express Corp. as Tr. of Casa*

---

[2]     This motion is filed on an *ex parte* basis for the same reasons.  Specifically, Venezuela has conceded in other litigation, that the only method to effect service of process on Venezuela is through the Secretary of State. *See Lovati v. Bolivarian Rep. of Venezuela*, No. 1:19-cv-04796 (S.D.N.Y. Mar. 13, 2020), ECF No. 44, at 17 ("The only method of service currently available against the Republic is set forth in § 1608(a)(4), which allows for service through diplomatic channels.").  Effectuating service of process through the Secretary of State could take up to four months. *See e.g., Pharo Gaia Fund et al. v. Bolivarian Republic of Venezuela*, No. 20-cv-8497 (S.D.N.Y. April 21, 2021), ECF No. 26, at 2 (effecting service on Venezuela "took nearly four months"); *Chickpen, S.A. v. Bolivarian Republic of Venezuela*, Case No. 21-cv-597 (AT) (S.D.N.Y. August 31, 2021) (service "took nearly three months").  Casa Express will serve notice to Venezuela after this proceedings supplementary have commenced and the third party defendants have been impleaded.

[3]     "No attachment or execution [under the FSIA] shall be permitted until the court has ordered such attachment and execution after having determined that a reasonable period of time has elapsed following the entry of judgment[.]" 28 U.S.C. § 1610(c).

*Express Trust v. Bolivarian Republic of Venezuela*, Case No. 1:18-cv-11940-AT (S.D.N.Y. Oct. 16, 2020, D.E. 96); Ex. A, at Ex. 2.

3. On August 27, 2021, Casa Express registered the Judgment in this District pursuant to 28 U.S.C. § 1963, and it may now be enforced as if it were rendered in this District. *See* ECF No. 1.

4. The amount of $43,315,535.20, plus $27,330.32 in post-judgment interest, remains due and owing from the Judgment. Ex. A, at ¶ 7.

**Corrupt Practices In Venezuela**

5. For years, many officials and insiders of the Hugo Chavez and Nicolas Maduro regimes have enriched themselves by engaging in illicit and corrupt schemes that have depleted the country's national resources at the expense of the Venezuelan people. Ex. A, at ¶ 10.

6. One of those schemes involved the misappropriation of Venezuelan funds through the conversion of Venezuelan bolivars to American dollars. *Id.*, at ¶ 11.

**Venezuela's Foreign Currency Exchange**

7. The Oficina Nacional del Tesoro ("ONT") is the Venezuelan National Treasury, which is responsible for managing the country's public funds and finances. *See* U.S. Department of the Treasury, January 8, 2019, OFAC Press Release, http://home.treasury.gov/news/press-releases/sm583 (last accessed, September 10, 2021) attached as **Exhibit B**; *see also* Alejandro Andrade Cedeno Factual Proffer[4], attached as **Exhibit C**, at ¶ 2 (hereinafter "Andrade Proffer").

---

[4] Factual Proffers are admissible in civil actions. *See e.g.*, *F.T.C. v. 1st Guar. Mortg. Corp.*, No. 09-CV-61840, 2011 WL 1233207, at *15, n. 144 (S.D. Fla. Mar. 30, 2011) (providing that the "factual statements in [the] Factual Proffer, [were admissible] for purposes of this civil action."). In addition, this Court may take judicial notice of Factual Proffers. *See Phillips v. City of W. Palm Beach*, No. 18-CV-80172, 2018 WL 3586179, at *5 (S.D. Fla. July 26, 2018) (taking judicial notice of factual proffer "[b]ecause the Factual Proffer [was] both authentic and relevant to Plaintiff's claim").

8.      To meet obligations in bolivars, Venezuela's official currency, the ONT sold Venezuelan bonds from its portfolio that were denominated in U.S. dollars and other foreign currencies. Ex. B; Andrade Proffer, at ¶ 5.

9.      The Venezuelan National Treasurer would then decide whether the proceeds generated from the bond sales would be exchanged to bolivars at the Venezuelan National Bank or at "casas de bolsa" (brokerage firms) at the preferential government exchange rate.  Ex. B; Andrade Proffer, at ¶¶ 5-6.

10.     The casas de bolsa had access to the parallel "black market" rate, which provided for a much higher exchange rate than the preferential government rate, allowing the exchanges to sell the preferential dollars at the higher rate and retain massive profits from the spread. Ex. B.

11.     Notably, only ONT-approved casas de bolsa had the ability to conduct bolivar-to-dollar exchanges with the government of Venezuela. *Id.*

12.     Gorrin controlled one of the few casas de bolsa, which were ONT-approved.  *Id.*

***Gorrin Misappropriates Venezuelan Funds With Andrade's Assistance Through An Illicit Foreign Currency Exchange Scheme***

13.     From 2008 through 2017, Gorrin paid hundreds of millions of dollars in bribes to Andrade, who served as the Venezuelan National Treasurer from 2007 until approximately 2011, to secure the rights to illegally conduct foreign currency exchange transactions for the Venezuelan government. *Id.*

14.     As the Venezuelan National Treasurer, Andrade had a confidential relationship with Venezuela, which charged him with fiduciary obligations to oversee the management of sovereign funds deposited in ONT accounts.  *See* Ley Organica de la Administracion Financiera del Sector Publico Sobre el Sistema de Tesoreria (Organic Law of the Financial Administration in

the Public Sector Over the Treasury System), as published in Official Gazette of the Bolivarian Republic of Venezuela No. 38.433, at Article 10(5), (12).

15.     In breach of his fiduciary duties, Andrade accepted "**over \$1 billion dollars**" in bribes, and permitted Gorrin (and other regime insiders) to misappropriate billions of dollars from Venezuela. *Id.* (emphasis added); *see also* U.S. Department of Justice, November 20, 2018, Press Release, https://www.justice.gov/opa/pr/venezuelan-billionaire-news-network-owner-former-venezuelan-national-treasurer-and-former (last accessed, September 10, 2021), attached as **Exhibit D.**  Through this scheme, Andrade and Gorrin were unjustly enriched at the expense of Venezuela and the Venezuelan people. Ex. B.

16.     The United States government prosecuted Andrade for his involvement in the foreign currency scheme, to which he pleaded guilty, and is currently serving a ten-year prison sentence. U.S. Department of Justice, November 27, 2018, Press Release, https://www.justice.gov/opa/pr/former-venezuelan-national-treasurer-sentenced-10-years-prison-money-laundering-conspiracy (last accessed, September 10, 2021), attached as **Exhibit E.**

17.     In 2010, Gorrin and his associate Gabriel Arturo Jimenez Aray ("Jimenez") acquired Banco Peravia, a financial institution in the Dominican Republic, to more discreetly launder the misappropriated Venezuelan funds and to facilitate bribe payments to government officials, such as Andrade.   Ex. D; Jimenez Factual Proffer, at ¶ 1 attached as **Exhibit F** (hereinafter "Jimenez Proffer").

18.     The United States government prosecuted Jimenez for his involvement in the above-scheme, to which he pleaded guilty, and is currently serving a three-year prison sentence. U.S. Department of Justice, November 29, 2018, Press Release, https://www.justice.gov/opa/pr/former-owner-dominican-republic-bank-sentenced-three-years-

prison-money-laundering-conspiracy#:~:text=%Gabriel%20Arturo%20Jimenez%20Aray-%20Jimenez,the%20Southern-%20District%20of%20Florida (last accessed, September 10, 2021), attached as **Exhibit G.**

19.     When Andrade stepped down as National Treasurer, he introduced Gorrin to his successor, Claudia Patricia Diaz Guillen ("Diaz"), to ensure that the illicit foreign currency exchange scheme continued, undeterred.  Ex. B.  Gorrin started to pay bribes to Diaz (through her husband), continued paying bribes to Andrade for the introduction, and continued misappropriating Venezuelan funds with impunity.  *Id.*; *see also* U.S. Department of Justice, December 16, 2020, Press Release, https://www.justice.gov/opa/pr/former-venezuelan-national-treasurer-and-her-spouse-charged-connection-international-bribery  (last accessed, September 10, 2021), attached as **Exhibit H**.

20.     The United States government federally indicted Diaz and her husband in the District Court for the Southern District of Florida for their participation in the above scheme.  *See* Ex. H; *see also* Superseding Indictment attached as **Exhibit I**.  Diaz and her husband are currently under house arrest in Spain.  Ex. B; Ex. H.

21.     In total, this illicit foreign currency exchange scheme generated "more than $2.4 billion in corrupt proceeds," which resulted in hundreds of millions of dollars in profit to Gorrin. Ex. B; Ex. I, at ¶ 10.

***Gorrin Invested The Misappropriated Venezuelan Funds In Real Properties Through Shell Entities To Obfuscate His Beneficial Ownership Of The Assets***

22.     On January 8, 2019, OFAC designated Gorrin on the Specially Designated Nationals and Blocked Persons List for his role in the illicit foreign currency exchange scheme. *Id.*; *see also* U.S. Department of the Treasury, OFAC Press Release Chart,

https://home.treasury.gov/system/files/126/gorrin_network_chart_20190108.pdf,     attached     as

**Exhibit J**.

23.     In its designation, OFAC made the factual finding that Gorrin invested the misappropriated Venezuelan funds in "domestic and international property" through a network of corporate entities and structures in order to obfuscate the beneficial ownership of the assets.  Ex. B; Ex. I.

24.     Specifically, OFAC designated the following entities (among others) as beneficiaries of the misappropriated Venezuelan funds:

- **RIM Group Investments Corp.,** a Florida entity which was designated by OFAC because it is owned or controlled by Gorrin, and his wife.

- **RIM Group Investments I Corp.,** a Florida entity which was designated by OFAC because it is owned or controlled by Gorrin, and his wife.

- **RIM Group Investments II Corp.,** a Florida entity which was designated by OFAC because it is owned or controlled by Gorrin, and his wife.

- **RIM Group Investments III Corp.**, a Florida entity which was designated by OFAC because it is owned or controlled by Gorrin, and his wife.

- **Posh 8 Dynamic Inc.**, a Delaware entity, which was designated by OFAC because it is owned or controlled by Gorrin.

- **Planet 2 Reaching Inc.**, a Delaware entity, which was designated by OFAC because it is owned or controlled by Gorrin.

Ex. B.

25.     Through an independent investigation conducted by Certified Fraud Examiner and Certified Forensic Interviewer, Nelson Luis, Casa Express was able to establish that the OFAC-

designated entities did acquire real properties in Florida since 2008. *See* Declaration of Judgment

Creditor's Expert, Nelson Luis, attached hereto as **Exhibit K**, at ¶ 28 (hereinafter "Luis Decl.").

26.    The OFAC-designated entities continue to hold title to the following real properties

located in Florida:

- 144 Isla Dorada Boulevard, Coral Gables, Florida 33143;

- 4100 Salzedo Street, Unit 1010, Coral Gables, Florida 33146;

- 4100 Salzedo Street, Unit 608, Coral Gables, Florida 33146;

- 4100 Salzedo Street, Unit 807, Coral Gables, Florida 33146;

- 4100 Salzedo Street, Unit 813, Coral Gables, Florida 33146;

- 4100 Salzedo Street, Unit 913, Coral Gables, Florida 33146;

- 18555 Collins Avenue, Unit 4401, Sunny lsles Beach, Florida 33160; and

- 7043 Fisher Island Dr., Unit 7043, Fisher Island, Florida 33109.

*Id*.

27.    On August 16, 2018, Gorrin was federally indicted in the Southern District of

Florida, and a Superseding Indictment was issued on December 15, 2020, for his participation in

the illicit and corrupt foreign currency exchange scheme. *See* Ex. I.

28.    The Superseding Indictment lists several "substitute" real properties[5] as "derived

from proceeds traceable to [the] offense" including:

- 140 Paloma Drive, Coral Gables, Florida 33143 ("140 Paloma Drive");

---

[5]    The government's interest in the real properties does not vest "until there is a forfeiture decree." *United States v. Parcel of Land, Bldgs., Appurtenances & Improvements, Known as 92 Buena Vista Ave., Rumson, N.J.*, 507 U.S. 111, 113, 113 S. Ct. 1126, 1129, 122 L. Ed. 2d 469 (1993). There is no forfeiture decree on these real properties, and Gorrin has been placed in fugitive status by the government. *See U.S. v. Raul Gorrin Belisario*, Case No. 18-80160-WPD-1 [ECF No. 48].

- 144 Isla Dorada Boulevard, Coral Gables, Florida 33143;

- 18555 Collins Avenue, Unit 4401, Sunny lsles Beach, Florida 33160;

- 4100 Salzedo Street, Unit 804, Coral Gables, Florida 33146;

- 4100 Salzedo Street, Unit 1010, Coral Gables, Florida 33146;

- 4100 Salzedo Street, Unit 608, Coral Gables, Florida 33146;

- 4100 Salzedo Street, Unit 807, Coral Gables, Florida 33146;

- 4100 Salzedo Street, Unit 813, Coral Gables, Florida 33146; and

- 4100 Salzedo Street, Unit 913, Coral Gables, Florida 33146.

*Id.*, p. 18-19.

29.     Despite 140 Paloma Drive being the ***first*** property listed in Gorrin's Superseding Indictment, Gorrin's brother-in-law and business partner, Gustavo Adolfo Perdomo Rosales ("Perdomo"), sold the property on March 12, 2021, for $3.6 million.  *See* Warranty Deed and Screenshot from Miami-Dade's public records, attached as **Composite Exhibit L**; *see also*  Luis Decl., at ¶ 29.

30.     All of the above-mentioned real properties were purchased with funds that were misappropriated from, and belong to, Venezuela.  Luis Decl., at ¶ 27; Ex. J; Ex. B; Ex. D.

31.     Casa Express, as a Judgment Creditor of Venezuela, is entitled to execute against these properties in partial satisfaction of its Judgment.  Ex. A, at ¶¶ 8, 12-22.

## MEMORANDUM OF LAW

Under Rule 69(a) of the Federal Rules of Civil Procedure, post-judgment execution proceedings "must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies."  F.R.C.P. § 69(a)(1).  The FSIA provides the federal statutory procedure for the enforcement of judgments against foreign states, such as Venezuela.

Specifically, Section 1610(c) of the FSIA provides that "[n]o attachment or execution . . . shall be permitted until the court has determined that a reasonable period of time has elapsed following the entry of judgment[.]"  28 U.S.C. § 1610(c).

In compliance with the FSIA requirements, Casa Express obtained an order from the rendering court holding that a "reasonable period of time" has elapsed since the entry of the Judgment, and authorizing Casa Express to initiate its post-judgment proceedings against Venezuela.  Ex. A, at Ex. 2.

Section 1610(a)(1) of the FSIA provides that the following property of a foreign state is not immune from execution:

> (a) The **property in the United States of a foreign state**, as defined in section 1603(a) of this chapter, **used for a commercial activity** in the United States, shall not be immune from attachment in aid of execution, or from execution, upon a judgment entered by a court of the United States or of a State after the effective date of this Act, if--
>
> (1) the foreign state has **waived** its immunity from attachment in aid of execution or from execution either explicitly or by implication, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver.

28 U.S.C. § 1610(a)(1) (emphasis added).  As more thoroughly explained below, execution pursuant to Section 1610(a) is proper because Venezuela waived its sovereign immunity, and Casa Express is seeking to execute its Judgment against Venezuela's "property in the United States" that is "used for a commercial activity." 28 U.S.C. § 1610(a).  Additionally, Florida law allows a judgment creditor to execute its unsatisfied judgment against "any property of the judgment debtor not exempt from execution **in the hands of any person**[.]" Fla. Stat. § 56.29 (emphasis added).

## I.  The real properties are property of Venezuela located in the United States.

Casa Express seeks to execute its Judgment against eight real properties located in Florida that were purchased with misappropriated Venezuelan funds by OFAC-designated Gorrin.  Since

the term "property" is not defined under the FSIA, federal courts must look at state law to determine what type of property interest the judgment creditor has the ability to execute against. *See, e.g., Calderon-Cardona v. Bank of New York Mellon*, 770 F.3d 993, 1001 (2d Cir. 2014) (explaining that courts "must look to state law to define the rights the [judgment debtor] has in the property the [creditor] seeks to reach" because of the absence "of any definition of property rights [in the FSIA]") (internal quotations omitted).

Under Florida law, the well-recognized constructive trust doctrine allows the rightful owner of misappropriated funds to trace "the proceeds of such property and to whatever has been bought with the proceeds if it is capable of being substantially identified as having been acquired with the misappropriated property or funds." *Republic of Haiti v. Crown Charters, Inc.*, 667 F. Supp. 839, 843 (Fla. S.D. 1987) (applying Florida law). Florida courts routinely impose constructive trusts over real properties that were purchased with misappropriated funds. *See, e.g., In re Fin. Federated Title & Tr., Inc.*, 347 F.3d 880, 891 (11th Cir. 2003) (imposing constructive trust where creditor could "directly or indirectly" trace fraudulent funds to the purchase of the property) (applying Florida law); *see also Joseph v. Chanin*, 940 So.2d 483, 487 (Fla. 4th DCA 2006) ("A constructive trust is an equitable remedy available in a situation where there is a wrongful taking of the property of another") (internal quotations omitted).

The necessary elements for an imposition of a constructive trust are "(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment." *Little v. White Diamond Int'l, LLC*, No. 10-60109, 2010 WL 11602166, at *4 (S.D. Fla. Apr. 27, 2010) (quoting *Ben-Yishay v. Mastercraft Dev. LLC*, 553 F. Supp. 2d 1360, 1372 (S.D. Fla. 2008)); *see also Republic of Haiti*, 667 F. Supp. at 843 (holding that "[t]he imposition of a constructive trust is an appropriate remedy for breach of fiduciary duty").

12

In this case, Andrade made an express promise, as the National Treasurer of Venezuela, to manage the ONT, which is charged with the fiduciary responsibility to administer Venezuelan funds deposited in ONT accounts. *See* Ley Organica de la Administracion Financiera del Sector Publico Sobre el Sistema de Tesoreria (Organic Law of the Financial Administration in the Public Sector Over the Treasury System), as published in Official Gazette of the Bolivarian Republic of Venezuela No. 38.433, at Article 10(5), (12); Ex. B; Andrade Proffer, at ¶ 4-6.

Moreover, Venezuela entrusted Andrade with the management of public funds in reliance of his express promise when he was appointed as National Treasurer. Ex. B.; Andrade Proffer, at ¶ 3. Andrade and Venezuela were in a confidential relationship because he acted as "an official of the government and a department and agency of the Venezuelan government." Andrade Proffer, at ¶ 3. In breach of his express promise, and fiduciary obligations, Andrade accepted "over 1 billion dollars" in bribes from Gorrin (and other regime insiders), which permitted them to misappropriate Venezuelan funds at the government preferential rate with impunity. Ex. B; Ex. E; Andrade Proffer, at ¶ 7. Through this scheme, Gorrin and Andrade were unjustly enriched at the expense of Venezuela. Ex. B.

In addition, Gorrin is charged as a trustee ex maleficio because he obtained Venezuelan funds with actual knowledge that a breach of trust was being committed by Andrade. *See Republic of Haiti*, 667 F. Supp. at 844 ("[U]nder Florida law, 'one who takes or purchases trust property with knowledge of the trust, stands in the place of his grantor and is himself chargeable with the trust or, as sometimes expressed, is accountable as trustee ex maleficio.'") (quoting *Connelly v. Fla. Nat'l Bank of Jacksonville*, 120 So.2d 647, 650 (Fla. 2nd DCA 1960)). Gorrin is also accountable for wrongfully participating in Andrade's breach of trust because he committed an overt act in furtherance of the breach of trust (i.e., the bribe payments), with knowledge that a

breach of trust was being committed. *Centrust Sav. Bank v. Barnett Banks Trust Co., N.A.*, 483 So.2d 867, 869 (Fla. 5th DCA 1986) ("The wrong of [sic] participation in a breach of trust has two elements: (1) An act or omission which furthers or completes the breach of trust by the trustee; and (2) knowledge at the time that a breach of trust was occurring or the legal equivalent of such knowledge.").

Accordingly, Casa Express has established all the necessary elements for the imposition of a constructive trust, and the Court should impose a constructive trust in favor of Venezuela over the real properties as long as they are "directly or indirectly" traceable to the misappropriated funds. *In re Fin. Federated Title*, 347 F.3d at 891.

### a. Gorrin misappropriated hundreds of millions of dollars from Venezuela through an illicit and corrupt foreign currency exchange scheme.

From 2008 through 2017, Gorrin paid hundreds of millions of dollars in bribes to two consecutive National Treasurers to secure the rights to illegally conduct foreign currency exchange transactions for the Venezuelan government. Ex. B. On January 8, 2019, OFAC formally designated Gorrin and made the following factual findings, which are admissible and relevant to Judgment Creditor's request herein, and which federal courts afford extreme deference to:

## Treasury Targets Venezuela Currency Exchange Network Scheme Generating Billions of Dollars for Corrupt Regime Insiders
01/08/19
*Action continues to expose endemic corruption at the highest levels of the Venezuelan government as it prepares for Nicolas Maduro's illegitimate inauguration*

 **Washington** – Today, the U.S. Department of the Treasury's Office of Foreign Assets Control (OFAC) sanctioned Venezuelan individuals and companies involved in a significant corruption scheme designed to take advantage of the Government of Venezuela's currency exchange practices, **generating more than $2.4 billion in corrupt proceeds**. This designation, pursuant to Executive Order (E.O.) 13850, targets seven individuals, including former Venezuelan National Treasurer Claudia Patricia Diaz Guillen (Diaz) and Raul Antonio Gorrin Belisario (Gorrin), who bribed the Venezuelan Office of the National Treasury (ONT, or Oficina Nacional del Tesoro) in

order to conduct illicit foreign exchange operations in Venezuela.  In addition to Diaz and Gorrin, OFAC designated or blocked five other individuals and 23 entities, pursuant to E.O. 13850, for their roles in the bribery scheme, and identified one private aircraft as blocked property.

"**Venezuelan regime insiders have plundered billions of dollars from Venezuela while the Venezuelan people suffer**.  Treasury is targeting this currency exchange network which was another illicit scheme that the Venezuelan regime had long used to steal from its people," said Secretary of the Treasury Steven T. Mnuchin.  "Our actions against this corrupt currency exchange network expose yet another deplorable practice that Venezuela regime insiders have used to benefit themselves at the expense of the Venezuelan people.  The United States remains committed to holding accountable those responsible for Venezuela's tragic decline, and will continue to use diplomatic and economic tools to support the Venezuelan people's efforts to restore their democracy."

**THE INNER WORKINGS OF A CORRUPT SYSTEM**

Today's designations target individuals who took advantage of a corrupt system within the Venezuelan ONT, stealing billions of dollars from the Venezuelan people since 2008, under the watch of two Venezuelan National Treasurers, Alejandro Jose Andrade Cedeno (Andrade) and Diaz.  Andrade was sentenced by the United States District Court for the Southern District of Florida on November 27, 2018, to 10 years in prison for accepting **over $1 billion in bribes** for his role in the below scheme.

The primary responsibility of the ONT is to manage the public finances of the Government of Venezuela using bolivars, the Venezuelan currency.  The ONT maintains assets in UK bonds, U.S. dollars, and bolivars, the sum total of which equal the amount that the ONT has available to spend on Venezuelan government operations.  When lacking sufficient bolivars for government projects, Andrade used a series of exchange houses, or casas de bolsa, to exchange dollars for bolivars.  As part of the scheme, exchange houses sold dollars for bolivars on parallel markets at a higher, black market exchange rate than the official government rate.  These exchange houses kept the difference between the black market rate and the official government rate, resulting in massive profits for exchange houses providing bolivars to the ONT.  **Only exchange houses approved by the Government of Venezuela, specifically the ONT, had the ability to conduct bolivar-to-dollar exchanges with the Government of Venezuela.  As the National Treasurer, Andrade and later Diaz had the authority to decide which exchange houses received government contracts.**

**THE NETWORK THAT RIGGED THE SYSTEM**

The below former Government of Venezuela officials and individuals enriched themselves by capitalizing on favorable foreign exchange transactions through casas de bolsa, concealing their profits in European and U.S. bank accounts and investments.  **Both Andrade and Diaz, while occupying the role of National Treasurer, used their official positions to give Gorrin, a prominent Venezuelan businessman, access to the ONT's preferred exchange rates to maximize profits on currency transactions moving through the casas de bolsa, which Gorrin, amongst a select few others that were approved by the ONT, controlled.  While**

**Andrade was National Treasurer, he awarded the ONT exchange business to a limited number of individuals, including Gorrin and Leonardo Gonzalez Dellan (Gonzalez).**
In return for their selection as the only currency exchange houses approved by the ONT, Gorrin and Gonzalez, another Venezuelan businessman, paid hundreds of millions of dollars in bribes to Andrade. Andrade facilitated the continuation of the bribery scheme by introducing Gorrin to Andrade's successor, Diaz, when he left the ONT. Gorrin compensated Andrade for introducing him to Diaz, and as a result, allowed the bribery scheme to continue, undeterred. From at least 2011 to 2013, Gorrin paid bribes to Diaz, wiring money to her and her husband, Adrian Jose Velasquez Figueroa (Velasquez), and purchasing assets on their behalf, to include a residence in Cap Cana, Dominican Republic, and an aircraft.

Gorrin and Gonzalez controlled the corrupt wealth that was generated on Andrade's behalf, holding the money in offshore bank accounts and reinvesting in properties, aircraft, and other luxury assets at the direction of Andrade. Andrade's portion of the illicit profits were never sent directly to Andrade; instead these individuals would purchase assets for Andrade, at his direction, or on his behalf. **Gorrin, Gonzalez, and Gorrin's brother-in-law and business partner, Gustavo Adolfo Perdomo Rosales (Perdomo), purchased assets and paid expenses for Andrade related to numerous aircraft and yachts, properties in the United States and abroad, multiple championship horses, and numerous high-end watches. The purchase of all of these goods and wiring of payments was hidden behind a sophisticated network of U.S. and foreign companies that hid the individuals' beneficial ownership.** All individuals involved in the scheme spent their portions of the resulting profits on properties in the United States as well as through maintaining significant accounts in U.S. banks, and purchasing boats and planes that were registered in the United States. Gorrin later mimicked this structure in controlling Diaz's assets generated as a result of the currency exchange scheme.

The seven individuals designated today have been determined to be responsible for or complicit in, or have directly or indirectly engaged in, any transaction or series of transactions involving deceptive practices and corruption and the Government of Venezuela or projects or programs administered by the Government of Venezuela, or are immediate family members of such a person who held properties or owned or controlled companies on that person's behalf. These individuals are listed below:

- **Raul Gorrin Belisario** was indicted by the United States Attorney's Office for the Southern District of Florida in August 2018 for conspiring to violate the Foreign Corrupt Practices Act, and for conspiring to bribe Venezuelan officials and commit money laundering by **hiding embezzled government funds, totaling more than $1 billion, in Florida and New York**. Gorrin was also being investigated for misappropriating billions of dollars from Venezuela's state-owned oil company, Petroleos de Venezuela, S.A. (PDVSA). Gorrin is also thought to have paid several officials to have access to Venezuelan politicians and government officials, and was believed to hold funds on behalf of these individuals in the same way he held funds for Andrade. These individuals include, but are not limited to, Elvis Eduardo Hidrobo Amoroso, who was designated by OFAC on November 9, 2017, and Maikel Jose Moreno Perez, a close friend of Gorrin, who was designated by OFAC on May 18, 2017 pursuant to Executive Order (E.O.) 13692. Gorrin also purchased

gifts for Cilia Adela Flores de Maduro, the First Lady of Venezuela, who was designated by OFAC on September 25, 2018 pursuant to E.O. 13692.

- **Claudia Patricia Diaz Guillen** is the former head of the ONT, serving as the National Treasurer between 2011 and 2013. In her role as the National Treasurer, Diaz accepted bribes from Gorrin directly, as well as through her husband, Adrian Jose Velasquez Figueroa (Velasquez), in return for permitting Gorrin to be the one of the select casas de bolsa for the Government of Venezuela. Gorrin held and purchased assets for Diaz and Velasquez in the same way he did for Andrade, to include a property in Cap Cana, Dominican Republic, aircraft, and yachts, obfuscating ownership of these assets through another individual to hide the ultimate ownership by Diaz and Velasquez. She, along with Velasquez, is currently under house arrest in Spain.

- **Adrian Jose Velasquez Figueroa** received bribes from Gorrin on behalf of his wife, Diaz, as part of the scheme to ensure Gorrin's selection as one of the casas de bolsa for the Government of Venezuela. Gorrin held and purchased assets for Diaz and Velasquez in the same way he did for Andrade, to include a property in Cap Cana, Dominican Republic, aircraft, and yachts, obfuscating ownership of these assets through another individual to hide the ultimate ownership by Diaz and Velasquez. He, along with Diaz, is currently under house arrest in Spain.

  \*              \*              \*

- **Gustavo Adolfo Perdomo Rosales** is the brother-in-law and a business partner of Gorrin. As Gorrin's business partner, Perdomo — on Gorrin's instruction — made wire transfers and held property on behalf of Andrade. Additionally, Perdomo beneficially owns an aircraft that Andrade would use, N133JA.

- **Maria Alexandra Perdomo Rosales (Maria Alexandra)** is the wife of Gorrin, and owns or controls, along with Gorrin, several of the companies used to hold property in the United States.

- **Mayela Antonina Tarascio-Perez (Mayela Antonina)** is the wife of Perdomo, and owns or controls, along with Perdomo, a company used to hold property in the United States.

*Id*. (emphasis added). As mentioned, these OFAC factual findings, which establish the misappropriation of Venezuelan funds, are afforded extreme deference under federal law. *See Stansell*, Case No. 10-mc-22724-Civ-Scola (S.D. Fla. Feb. 19, 2019, D.E. 22) (issuing writs of garnishment and execution "[b]ased upon the U.S. Treasury Department's Office of Foreign Assets Control [] factual findings . . . ."); *Islamic Am. Relief Agency v. Gonzales*, 477 F.3d 728, 734 (D.C. Cir. 2007) (stating that courts are "extremely deferential" to OFAC designations because OFAC operates "in an area at the intersection of national security, foreign policy, and

administrative law"); *Weinstein v. Islamic Republic of Iran*, 609 F.3d 43, 52 (2d Cir. 2010) (stating that an OFAC designation is a "factual finding"); *De Cuelar v. Brady*, 881 F.2d 1561, 1565 (11th Cir. 1989) ("The decision of the OFAC is entitled to great deference, and should be reversed only if arbitrary or capricious."); *Paradissiotis v. Rubin*, 171 F.3d 983, 987 (5th Cir. 1999) (noting that OFAC's designation of a specially designated national, as "an agency's application of its own regulations, receives an even greater degree of deference than the *Chevron* standard, and must prevail unless plainly inconsistent with the regulation").

**b. The misappropriated Venezuelan funds were invested in real properties located in Florida.**

OFAC also made the factual finding that the "billions of dollars" in proceeds from the corrupt foreign currency exchange scheme were invested in "domestic and international property" through a network of corporate entities and structures meant to obfuscate Gorrin's beneficial ownership of the assets.  Ex. B; Ex. I.  Specifically, OFAC designated the following entities (among others) as the beneficiaries of the misappropriated funds:

- **RIM Group Investments Corp.,** a Florida entity which was designated by OFAC because it is owned or controlled by Gorrin, and his wife;

- **RIM Group Investments I Corp.,** a Florida entity which was designated by OFAC because it is owned or controlled by Gorrin, and his wife;

- **RIM Group Investments II Corp.,** a Florida entity which was designated by OFAC because it is owned or controlled by Gorrin, and his wife;

- **RIM Group Investments III Corp.,** a Florida entity which was designated by OFAC because it is owned or controlled by Gorrin, and his wife;

- **Posh 8 Dynamic Inc.,** a Delaware entity, which was designated by OFAC because it is owned or controlled by Gorrin; and

- **Planet 2 Reaching Inc.**, a Delaware entity, which was designated by OFAC

  because it is owned or controlled by Gorrin.

Ex. B.  Through the independent investigation conducted by Mr. Luis, Casa Express was able to

establish that the OFAC-designated entities did acquire the following real properties in Florida

since 2008:

1. **144 Isla Dorada Boulevard, Coral Gables, Florida 33143.**  Purchased on October

   21, 2009, by OFAC-designated entity RIM Group Investments III Corp. with

   misappropriated Venezuelan funds, and is legally described as:

   > **Lot 8, Block 20, of COCOPLUM SECTION TWO, Plat E, according to the Plat thereof as recorded in Plat Book 131, Page 76, of the Public Records of Miami-Dade County, Florida.**

*See* Warranty Deed attached as **Exhibit M.**

2. **18555 Collins Avenue, Unit 4401, Sunny Isles Beach, Florida 33160.** Purchased on

   November 29, 2009, by OFAC-designated entity Posh 8 Dynamic Inc. with

   misappropriated Venezuelan funds, and is legally described as:

   > **Unit 4401 of 18555 Collins Avenue Condominium, a Condominium according to the Declaration of Condominium thereof, recorded in Official Records Book 28399, Page 2439, of the Public Records of Miami-Dade County, Florida, and all amendments thereto, together with its undivided share in the common elements.**

*See* Special Warranty Deed attached as **Exhibit N.**

3. **7043 Fisher Island Dr., Unit 7043, Fisher Island, Florida 33109.**[6]  Purchased on

   November 8, 2016, by OFAC-designated entity Planet 2 Reaching Inc. with

   misappropriated Venezuelan funds, and is legally described as:

---

[6]   This property is the only real property not listed in Gorrin's Superseding Indictment.  *See* Ex. I.

**Unit 7043, PALAZZO DEL SOL / DELLA LUNA AT FISHER ISLAND, A CONDOMINIUM, together with an interest in the limited common elements and common elements appurtenant thereto, according to the Declaration of Condominium for Palazzo del Sol / della Luna at Fisher Island, a Condominium, as recorded on December 30, 2015, in Official Records Book 29908, Page 447, as amended from time to time, of the Public Records of Miami-Dade County, Florida.**

*See* Special Warranty Deed attached as **Exhibit O**, at Ex. A**.**

4.  **4100 Salzedo Street, Unit 1010, Coral Gables, Florida 33146.**  Purchased on October 29, 2008, by OFAC-designated entity RIM Group Investments Corp. with misappropriated Venezuelan funds, and is legally described as:

**Condominium Unit No. 1010 of ONE VILLAGE PLACE, A CONDOMINIUM, according to the Declaration of Condominium thereof, recorded in Official Records Book 26306, at Page 2098, of common elements appurtenant thereto.**

**Master Folio Numbers #03-412 0017 0330; 03 412 0017 0340; and 03 412 0017 0380.**

Ex. P.

5.  **4100 Salzedo Street, Unit 608, Coral Gables, Florida 33146.**  Purchased on December 19, 2014, by OFAC-designated entity RIM Group Investments I, Corp. with misappropriated Venezuelan funds, and is legally described as:

**Unit No. 608 of ONE VILLAGE PLACE, A CONDOMINIUM, according to the Declaration of Condominium thereof, recorded in Official Records Book 26306, at Page 2098, and all exhibits and amendments thereof, Public Records of Miami-Dade County, Florida.**

Ex. Q.

6. **4100 Salzedo Street, Unit 807, Coral Gables, Florida 33146.** Purchased on April 2, 2010, by OFAC-designated entity RIM Group Investments I, Corp. with misappropriated Venezuelan funds, and is legally described as:

> **Unit No. 807, ONE VILLAGE PLACE, A CONDOMINIUM, according to the Declaration of Condominium thereof, as recorded in Official Records Book 26306, at page 2098, of the Public Records of Miami-Dade County, Florida, together with an undivided share in the common elements appurtenant thereto.**

**Ex. R.**

7. **4100 Salzedo Street, Unit 813, Coral Gables, Florida 33146.** Purchased on December 19, 2014, by OFAC-designated RIM Group Investments II Corp. with misappropriated Venezuelan funds, and is legally described as:

> **Unit No. 813, of ONE VILLAGE PLACE, a Condominium, according to The Declaration of Condominium recorded in Official Records Book 26306, at Page 2098, and all exhibits and amendments thereof, Public Records of Miami-Dade County, Florida.**

**Ex. S.**

8. **4100 Salzedo Street, Unit 913, Coral Gables, Florida 33146** – Purchased on April 2, 2010, by OFAC-designated RIM Group Investments II Corp. with misappropriated Venezuelan funds, and is legally described as:

> **Unit No. 913, ONE VILLAGE PLACE, a Condominium, according to The Declaration of Condominium thereof, as recorded in Official Records Book 26306, at page 2098, of the Public Records of Miami-Dade County, Florida, together with an undivided share in the common elements appurtenant thereto.**

**Ex. T.**

*See* Luis Decl., at ¶ 28.

Relying on OFAC's factual findings, and the results from the independent investigation, Mr. Luis opined that the real properties "**were acquired using misappropriated Venezuelan**

**funds**." *Id.*, at ¶ 27.  Mr. Luis' expert opinion is consistent with the demonstrative chart published by OFAC, which portrays the bribery scheme and the manner in which the misappropriated funds were invested in "properties and assets" located in the U.S.  Ex. J.  His opinion is also consistent with the allegations from Gorrin's Superseding Indictment describing the real properties as "substitute property" that are "derived from proceeds traceable to [the illicit bribery scheme]." *See* Ex. I, p. 17-18**.**  Since the real properties were purchased from 2008 till 2016, Mr. Luis' opinion is also consistent with OFAC's factual finding that Gorrin began investing the misappropriated funds in real properties starting in 2008.  *See* Ex. B ("From the beginning of the scheme in 2008 to present day [2019], the billions of dollars' worth of corrupt proceeds generated through this scheme were invested in domestic and international property").

Thus, Casa Express has presented substantial competent evidence, expert testimony, two factual proffers, OFAC-factual findings, and a demonstrative chart establishing that the misappropriated funds are traceable to the real properties.  Therefore, this Court should find that the properties are subject to a constructive trust in favor of Venezuela.  *See In re Lee*, 574 B.R. 286, 295–96 (Bankr. M.D. Fla. 2017), *aff'd sub nom. Lee v. Wiand*, 603 B.R. 161 (M.D. Fla. 2018) ("Tracing does not require that each dollar be specifically accounted for at all points in time") (applying Florida law); *see also In re Fin. Federated Title*, 347 F.3d at 891 (imposing constructive trust where creditor could "directly or indirectly" trace fraudulent funds to the purchase of the property) (applying Florida law).

## II.    The real properties are used for a commercial activity as defined by the FSIA.

It is undisputed that a foreign sovereign is "absolutely immune" from the jurisdiction of foreign courts for its sovereign and public acts.  *See* Restatement (Third) of the Foreign Relations Law of the United States § 451 (1987).  However, "[a] foreign state ***loses its immunity*** if it engages

in *commercial* activity . . . because then it is exercising the same powers that a private citizen might exercise." *Honduras Aircraft Registry, Ltd. v. Gov't of Honduras*, 129 F.3d 543, 548 (11th Cir. 1997) (citing *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 614, 112 S. Ct. 2160, 2166, 119 L. Ed. 2d 394 (1992)) (emphasis added); *see also Devengoechea v. Bolivarian Republic of Venezuela*, 889 F.3d 1213, 1221 (11th Cir. 2018) (providing that, under the FSIA, "a foreign state engaging in commercial activities does not exercise powers peculiar to sovereigns; rather, it exercises only those powers that can also be exercised by private citizens") (internal quotations omitted).

In this case, the real properties were not being used for consular or embassy purposes, which are recognized sovereign activities. *See, e.g., S & S Mach. Co. v. Masinexportimport*, 802 F. Supp. 1109, 1112 (S.D.N.Y. 1992) ("[I]t is axiomatic that only a sovereign can operate a Consulate and undertake the activities for which such a building is used."). To the contrary, the real properties at issue were **purchased by private citizens** (through shell entities) **for the benefit of private citizens**. There is nothing peculiarly sovereign about such ownership.

Accordingly, the real properties are used for a commercial activity as defined by the FSIA.

**III. Venezuela has waived sovereign immunity from execution under the FSIA.**

Lastly, Venezuela unequivocally and irrevocably waived sovereign immunity from execution in the Fiscal Agency Agreements (the "FAA"), which govern the underlying debt securities that form the basis of the Judgment. *See* **Ex. U** (1998 FAA); **Ex. V** (2001 FAA). Specifically, Section 14(d) of the FAA, provides:

> To the extent that the Issuer [Venezuela] … shall be entitled, … with respect to any suit, action or proceeding at any time brought solely for the purpose of enforcing or executing any **Related Judgment** in any jurisdiction in which any Specified Court or **Other Court** is located, to any immunity from suit, from the jurisdiction of any such court, from attachment prior to judgment, from attachment in aid of

> execution of judgment, from execution of a judgment or from any
> other legal or judicial process or remedy, and to the extent that in
> any such jurisdiction there shall be attributed such an immunity, **the
> Issuer irrevocably agrees not to claim and irrevocably waives
> such immunity to the fullest extent permitted by the laws of such
> jurisdiction (including, without limitation, the Foreign
> Sovereign Immunities Act of 1976 of the United States)** ….

Ex. U § 14(d) (1998 FAA) (emphasis added); Ex. V § 14(d) (2001 FAA).  Casa Express seeks to

execute a "Related Judgment," as defined by the FAA, because the Judgment "[was] obtained in

[a] Specified Court[7] [in an action] arising out of a[] Related Proceeding[8][.]"  *E.g.*, Ex. V § 14(A)

(2001 FAA).  Additionally, this Court is an "Other Court," as defined by the FAA, because it is a

court with "competent jurisdiction" to enforce or execute the Judgment.  *Id.*  As such, Venezuela

has explicitly waived sovereign immunity in this execution action.  *See EM Ltd. v. Republic of

Argentina*, 695 F.3d 201, 203 & n.1 (2d Cir. 2012) (finding that Argentina waived sovereign

immunity using similar language in bond indenture agreements).

Accordingly, the real properties are subject to execution pursuant to 28 U.S.C. § 1610(c)

of the FSIA, and the execution should be conducted in compliance with the procedures provided

by Florida's post-judgment statutes.  *See* Fed. R. Civ. P. 69(a).

**IV.   Florida's proceedings supplementary statutes allow Casa Express to execute its
unsatisfied Judgment against non-exempt Venezuelan property in the hands of a
third party.**

Section 56.29, Florida Statutes, allows judgment creditors like Casa Express that hold

unsatisfied judgments to execute against "any property of the judgment debtor not exempt from

---

[7]    The United States District Court for the Southern District of New York is a Specified
Court under the Fiscal Agency Agreements.  *See, e.g.,* Ex. V § 14(A) (2001 FAA).

[8]    The action styled *Casa Express Corp. as Tr. of Casa Express Tr. v. Bolivarian Republic of
Venezuela*, 18 Civ. 11940 (S.D.N.Y. 2018) is a Related Proceeding because it is a "suit, action or
proceeding against [Venezuela] or its properties, assets or revenues with respect to this Agreement
[or] any Note or coupon appertaining thereto."  *E.g.*, Ex. V § 14(A) (2001 FAA).

execution **in the hands of any person**[.]" Fla. Stat. § 56.29 (emphasis added). The proceedings supplementary give judgment creditors the ability to "ferret out what assets the judgment debtor may have or what property of his others may be holding for him, or may have received from him to defeat the collection of the lien or claim, that might be subject to execution." *Uoweit, LLC v. Fleming*, 300 So.3d 1201, 1203 (Fla. 4th DCA 2020) (quoting *Longo v. Associated Limousine Servs., Inc.*, 236 So.3d 1115, 1118 (Fla. 4th DCA 2018)). Moreover, proceedings supplementary "are equitable in nature and should be liberally construed." *Zureikat v. Shaibani*, 944 So.2d 1019, 1023 (Fla. 5th DCA 2006) (internal quotations omitted).

In compliance with Section 56.29(1) and (2), Florida Statutes, Casa Express filed this motion with an accompanying affidavit from its president. *See* Ex. A. This Court should enter the proposed Order attached hereto as **Exhibit W**, which provides for the commencement of this proceeding supplementary, and should issue the attached Notices to Appear directing the impleaded defendants to respond to this Motion within 7 business days of service of the Order.

> a. **Casa Express does not need to obtain an unsatisfied writ of execution prior to commencement of this proceedings supplementary.**

The proceedings supplementary statutes were amended in 2005 to eliminate the requirement of obtaining an unsatisfied writ of execution, and to authorize any judgment creditor holding an "unsatisfied judgment" to commence supplementary proceedings in aid of execution. *Compare* § 56.29(1), Fla. Stat. (October 1, 2004 Amendment) ("When any person or entity holds an **unsatisfied execution** and has delivered a writ of execution to any sheriff, the plaintiff . . . is entitled to these proceedings") (emphasis added); *with* § 56.29(1), Fla. Stat. (June 17, 2005 Amendment) ("When any person or entity holds **an unsatisfied judgment** . . . the judgment holder . . . is entitled to these proceedings supplementary to execution) (emphasis added).

25

Despite this, Casa Express is aware of post-amendment jurisprudence from this District (applying Florida law) stating that an unsatisfied writ of execution is a prerequisite to a proceedings supplementary.  *See e.g., Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enterprises, LLC*, No. 17-CV-81140-CIV, 2020 WL 3146502, at *1 (S.D. Fla. June 11, 2020) ("A party bringing a proceeding supplementary to execution must 1) show that he or she possesses an unsatisfied writ of execution, and 2) file an affidavit averring that the writ is valid and unsatisfied") (internal quotations omitted).  But, as the Northern District of Florida has recognized, those holdings are premised on outdated caselaw.  *See Planet Bingo, LLC v. Wild Bill's Bingo, Inc.*, No. 5:10-CV-64/RS-MD, 2011 WL 13315685, at *1 (N.D. Fla. Nov. 10, 2011) (explaining that "[t]he current version [of the proceedings supplementary statute] is more expansive and allows 'any person or entity [who] holds an unsatisfied judgment' to act").

Indeed, Section 56.29(1) does not make **any** reference to an unsatisfied "writ of execution" as a requirement to initiate a proceedings supplementary:

> (1)   When any judgment creditor holds an **unsatisfied judgment** or judgment lien obtained under chapter 55, the judgment creditor may file a motion and an affidavit so stating, identifying, if applicable, the issuing court, the case number, and the **unsatisfied amount of the judgment** or judgment lien, including accrued costs and interest, and stating that the execution is valid and outstanding, and thereupon the judgment creditor is entitled to these proceedings supplementary to execution.

§ 56.29, Fla. Stat. (emphasis added).  Furthermore, in a case against a foreign sovereign, the court must "determine whether the property in question falls within one of the statutory exceptions to foreign immunity" prior to issuance of a writ of execution.  *Connecticut Bank of Com. v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002), *as amended on denial of reh'g* (Aug. 29, 2002).

In an abundance of caution, if this Court finds that an unsatisfied writ of execution is a requirement for commencement of proceedings supplementary, Casa Express alternatively

requests that this Court enter an Order in the form proposed in **Exhibit X** determining that the real properties are (1) subject to a constructive trust in Venezuela; (2) subject to execution by Casa Express pursuant to 28 U.S.C. § 1610(a); (3) issuing the proposed writ of execution against Venezuela (**Ex. Y**) prior to commencement of this proceedings supplementary; and (4) commencing this proceedings supplementary after the writ of execution is issued.

### Local Rule 7.1(a)(3) Certification

Southern District of Florida Local Rule 7.1(a)(3) is inapplicable at this time.

**WHEREFORE**, Casa Express Corp., as Trustee of Casa Express Trust, requests expedited review and relief and that its Motion be granted in either of the following forms:

1.      if the Court finds that an unsatisfied writ is necessary for commencement of this proceedings supplementary, Casa Express respectfully requests that the Court enter an Order in the form proposed by (Ex. X):

a) determining that the real properties are subject to a constructive trust in favor of Venezuela;

b) determining that the real properties are not immune from execution pursuant to 28 U.S.C. § 1610(a);

c) issuing the proposed writ of execution against Venezuela (Ex. W);

d) commencing this proceedings supplementary;

e) issuing the attached Notices to Appear directing the impleaded defendants to respond to this Motion within seven (7) business days of service of the Order stating why the real properties should not be applied to satisfy the judgment; and

     f)   taxing attorneys' fees and costs in relation to this proceeding to the Judgment Debtor, the Bolivarian Republic of Venezuela, pursuant to § 56.29(8), Fla. Stat.

2.     if the Court finds that an unsatisfied writ is not a requirement for commencement of a proceedings supplementary, Casa Express respectfully requests that the Court enter  an Order in the form proposed by (Ex. W):

     a)   commencing this proceedings supplementary;

     b)   issuing the attached Notices to Appear directing the impleaded defendants to respond to this Motion within seven (7) business days of service of the Order stating why the real properties should not be applied to satisfy the judgment; and

     c)   taxing attorneys' fees and costs in relation to this proceeding to the Judgment Debtor, the Bolivarian Republic of Venezuela, pursuant to § 56.29(8), Fla. Stat.

Dated: September 10, 2021

Respectfully submitted,

**SANCHEZ FISCHER LEVINE, LLP**
1200 Brickell Avenue, Suite 750
Miami, Florida 33131
(305) 925-9947

/s/ *Fausto Sanchez*
Fausto Sanchez, Esq.
Florida Bar No.: 86229
Email: fsanchez@sfl-law.com
Secondary: eservice@sfl-law.com
David M. Levine, Esq.
Florida Bar No.: 84431
Email: dlevine@sfl-law.com
Andres Gamardo, Esq.
Florida Bar No.: 1021165
Email: agamardo@sfl-law.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 10, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system.  I further testify that the foregoing document was served by electronic email to the following:

OFFICE OF FOREIGN ASSETS CONTROL
U.S. Department of the Treasury
1500 Pennsylvania Ave. N.W.
Washington D.C.
[by email service directly to OFAC counsel in compliance with 31 CFR 501.605]

By: /s/ *Andres Gamardo*
Andres Gamardo, Esq.