UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**Case No. 1:21-mc-23103-BLOOM**

CASA EXPRESS CORP, as Trustee of
CASA EXPRESS TRUST,

                    Judgment Creditor,

     v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

                    Judgment Debtor.

_____/

CASA EXPRESS CORP, as Trustee of
CASA EXPRESS TRUST,

                    Plaintiff,

     v.

RAUL GORRIN BELISARIO, et al.

                    Impleaded Defendants.

_____/

**JUDGMENT CREDITOR'S REPLY IN FURTHER SUPPORT OF ITS MOTION FOR LEAVE TO AMEND BY INTERLINEATION THE *EX PARTE* EXPEDITED MOTION TO COMMENCE PROCEEDINGS SUPPLEMENTARY, TO IMPLEAD DEFENDANTS, AND FOR ISSUANCE OF STATUTORY NOTICES TO APPEAR**

        Plaintiff and Judgment Creditor Casa Express Corp, as Trustee of Casa Express Trust ("Casa Express") replies to the Impleaded Defendants Posh 8 Dynamic Inc., Planet 2 Reaching Inc., RIM Group Investments Inc., RIM Group Investments I Inc., RIM Group Investments II Inc., RIM Group Investments III Inc.'s (collectively, "Impleaded Defendants") Opposition to Judgment Creditor's Motion for Leave to Amend by Interlineation the *Ex Parte* Expedited Motion to Commence Proceedings Supplementary, to Implead Defendants, and for Issuance of Statutory Notices to Appear [ECF No. 45] (the "Response").

1

## INTRODUCTION

Casa Express moved for leave to amend its initial pleading by interlineation for three straight-forward reasons: (1) to incorporate allegations that would allow it to effect service of process on Raul Gorrin Belisario ("Gorrin"); (2) to implead Claudia Patricia Diaz Guillen ("Diaz") as a named defendant to this action; and (3) to allege its unjust enrichment cause of action more thoroughly. [ECF No. 42] (the "Motion"). The Impleaded Defendants opposed the Motion through the Response.

But the Response does not raise a single argument against the allegations that would be incorporated via interlineation. By failing to address the actual allegations that would be incorporated if leave to amend is granted, the Impleaded Defendants have conceded that there is no substantial justification to deny the Motion.

As more thoroughly explained below, the arguments raised by the Impleaded Defendants lack merit and fall short of meeting the futility standard. Therefore, the Court should grant the Motion.

## ARGUMENT

I.      **The Court has authority to grant the Motion.**

Rule 69 of the Federal Rules of Civil Procedure provides that "[t]he procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located[.]" Fed. R. Civ. P. 69(a)(1). In Florida, post-judgment supplementary proceedings are governed by Fla. Stat. § 56.29.

In order to commence a supplementary proceeding, the judgment creditor must file a motion and an affidavit establishing that it has an unsatisfied judgment, and that the judgment is

valid and outstanding. *See* § 56.29(1), Fla. Stat.; *see also Gorham v. Kaufman*, No. 21-CV-80160, 2022 WL 1420999, at *2 (S.D. Fla. May 4, 2022).

Long-standing Florida jurisprudence establishes that the motion to commence proceedings supplementary is the "initial pleading" in post-judgment proceedings. *See, e.g., B & I Contractors, Inc. v. Mel Re Const. Mgmt.*, 66 So. 3d 1035, 1038 (Fla. 2d DCA 2011) (ruling that Plaintiff was entitled to commencement of proceeding supplementary "in light of the facial sufficiency of its pleading [i.e., a motion for proceedings supplementary under § 56.29] and affidavit"); *Pollizzi v. Paulshock*, 52 So. 3d 786, 790 (Fla. 5th DCA 2010) (holding that a motion to commence proceeding supplementary "is a sufficient pleading in order to assert a valid claim against third-party defendants in a supplementary proceeding").

Federal courts have consistently recognized this principle. *See Licea v. Curacao Drydock Co.*, 794 F. Supp. 2d 1299, 1303 (S.D. Fla. May 27, 2011) ("The operative pleading here [is] Plaintiffs' Motion to Commence Proceedings Supplementary") (applying Florida law); *GS2 Corp. v. Bellemead Marina Del Rey Corp.*, No. CV 17-22303-CIV, 2018 WL 1859345, at *2 (S.D. Fla. Jan. 5, 2018) (ruling that "the motion for proceedings supplementary [is] the pertinent initial pleading here") (applying Florida law).

And unsurprisingly, judgment creditors routinely amend their motions to commence proceeding supplementary in federal court proceedings. *See, e.g., Pues Fam. Tr. IRA by Pues v. Parnas Holdings Inc.*, No. 19-MC-80024, 2019 WL 13189469, at *1 (S.D. Fla. Oct. 29, 2019) (granting plaintiff's amended motion to commence proceedings supplementary); *Gorham v. Kaufman*, No. 21-CV-80160, 2022 WL 1420999, at *2 (S.D. Fla. May 4, 2022) (same); *4 Dakota Ventures, LLC v. Seger Com. Properties, LLC*, No. 3:15CV51/MCR/EMT, 2020 WL 6864547, at *4 (N.D. Fla. July 20, 2020), *report and recommendation adopted sub nom. 4 DAKOTA*

3

*VENTURES, LLC, Plaintiff, v. SEGER COMMERCIAL PROPERTIES, LLC, et al., Defendants.*, No. 3:15CV51-MCR-EMT, 2020 WL 5015948 (N.D. Fla. Aug. 24, 2020) (recommending that district court grant in part amended motion to commence proceedings supplementary).

Yet the Impleaded Defendants contend that the Motion to Commence Proceedings Supplementary [ECF No. 3] cannot be amended because it "is not and never was a pleading." [ECF No. 45] at 2. To support their position, they cite a string of inapplicable cases that have nothing to do with whether a motion to commence proceedings supplementary is a pleading. *See, e.g.*, *Ramos v. Tomasino*, No. 16-CV-80681, 2016 WL 8678546, at *4 (S.D. Fla. Aug. 25, 2016) (holding that a motion to strike is not a pleading); *Siegmund v. Xuelian*, No. 12-62539-CIV, 2016 WL 1444582, at *4 (S.D. Fla. Apr. 11, 2016) (same); *Sec. & Exch. Comm'n v. City of Miami, Fla.,* No. 13-22600-CIV, 2016 WL 7188133, at *1 (S.D. Fla. May 20, 2016) (same).

Critically, their argument plainly contradicts Judge Bloom's prior ruling in this proceeding:

> **It is well-established that the motion to commence proceedings supplementary, albeit not a complaint, is considered the "initial pleading" in post-judgment actions.**

[ECF No. 38] at 2 (emphasis added; internal citation omitted). In the Order, Judge Bloom further directed Venezuela to "file an answer or other responsive pleading to the Motion to Commence Proceedings Supplementary." *Id*. at 3. Needless to say, a responsive pleading may only be filed in response to another pleading.

Somehow the Impleaded Defendants disagree. They insist that a motion to commence supplementary may be considered a pleading solely "for purposes of removal." [ECF No. 45] at 5. But the Order has nothing to do with removal. It deals with authorizing service on Venezuela pursuant to 28 U.S.C. § 1608(a)(4), which provides for a substituted method of service via diplomatic channels that requires mailing the summons and initial pleading (*i.e.*, the Motion to

Commence Proceedings Supplementary) to the U.S. Secretary of State. *See generally* [ECF No. 38]; 28 U.S.C. § 1608(a)(4).

According to the Impleaded Defendants, the Court lacks authority to grant leave to amend because Fed. R. Civ. P. 15 is purportedly limited to the pleadings listed in Fed. R. Civ. P. 7(a), which does not include a motion to commence proceeding supplementary. But supplementary proceedings must accord with the procedure of the state where the court is located, here Florida. Fed. R. Civ. P. 69 (a). And under Florida law, the motion to commence proceedings supplementary is the initial pleading of the post-judgment proceeding. *See* [ECF No. 38] at 2.

Therefore, the Court should grant Casa Express leave to amend the Motion to Commence Proceedings Supplementary under Fed. R. Civ. P. 15.[1] Alternatively, the Court should grant leave to amend under its "inherent authority to control its docket and ensure the prompt resolution of lawsuits." *Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 662 (11th Cir. 2019) (internal quotations omitted).

## II.     The Proposed Amendment is not clearly insufficient or frivolous on its face.

A motion for leave to amend should not be denied on the ground of futility "unless the proposed amendment is clearly insufficient or frivolous on its face." *Montes v. M & M Mgmt. Co.*, No. 15-80142-CIV, 2015 WL 11254703, at *1 (S.D. Fla. May 12, 2015) (internal citations omitted). Generally, leave to amend is not clearly insufficient when the arguments raised in opposition are complex. *Id.* (explaining that "complexity of argument proves amendment not frivolous or clearly insufficient") (internal citation omitted).

---

[1]     District courts have substantial discretion to grant leave to amend under the federal rules of civil procedure. Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."); Fed. R. Civ. P. 15(a)(2) ("The Court should freely give leave when justice so requires.").

Here, the Impleaded Defendants do not even attempt to argue that the Proposed Amendment "is clearly insufficient or frivolous on its face." Instead, they contend that the entire proceeding is futile and purport to seek dismissal of this proceeding.

But dismissal is an inappropriate vehicle to dispose of a supplementary proceeding. *See Walton v. St. Paul Fire & Marine Ins. Co.*, No. 17-61391-CIV, 2017 WL 5654733, at *2 (S.D. Fla. Aug. 9, 2017) (striking motion to dismiss as "procedurally inadequate" in supplementary proceeding); *Wiand for Valhalla Inv. Partners, L.P. v. Lee*, No. 8:10-CV-210-T-17MAP, 2014 WL 12684528, at *1 (M.D. Fla. Jan. 30, 2014) (ruling that a motion to dismiss "is not the proper vehicle to attack [] allegations" made in a supplementary proceeding after Plaintiff had met the jurisdictional prerequisites). And in any event, the Impleaded Defendants' arguments lack merit and fall woefully short of meeting the futility standard.

Therefore, the Court should grant leave to amend because there is no substantial justification to deny the amendment.

## A.  The Court has authority to hear this action without a specific license from OFAC.

First, the Impleaded Defendants contend that the entire proceeding is "null and void" because the properties are blocked by OFAC, and Casa Express has not obtained a specific license authorizing this action. But Casa Express does not need a specific license to litigate this action. It only needs a specific license to execute the blocked properties.

 Nearly 10 months ago, Casa Express applied with OFAC for a specific license to execute nine[2] blocked real properties that were purchased by Gorrin (through shell entities) with misappropriated Venezuelan funds, including the properties that are the subject of this action. On July 18, 2022, OFAC denied the application as premature explaining that it lacked authority to

---

[2]     The application included a New York property which is not the subject of this proceeding.

approve the execution of the blocked properties because they "appear to belong to a person other than [Venezuela]."

Four days later, Casa Express applied for a specific license for the limited purpose of litigating this case. The new application explained that Casa Express would seek the imposition of a constructive trust in favor of Venezuela over the blocked real properties that are being held by the Impleaded Defendants. And that if it prevailed, it would submit a new application for a specific license to execute the properties because, at that point, the properties would no longer appear to belong to a person other than Venezuela. A true and correct copy of Casa Express's new application is attached hereto as **Exhibit A**.

On July 29, 2022, OFAC's Licensing Officer, Mr. Jae Ahn, responded to Casa Express's new application in the below e-mail:

> Dear Mr. Gamardo,
>
> I received your request dated July 22, 2022, to the Office of Foreign Assets Control, on behalf of Casa Express Corp, requesting an authorization to litigate in the case styled Casa Express Corp v. Bolivarian Republic of Venezuela, et al. Case No. 1:21-23103-BB, which is pending at the US District Court for the Southern District of Florida.
>
> Based on information provided in the Application, it appears to me that the client is not blocked persons pursuant to the Venezuela Sanctions Regulations, and it appears to me that the proposed activities are not prohibited by Venezuela Sanctions Regulations. To the extent this is accurate, and to the extent your representation/client do not involve persons blocked consistent with Venezuela Sanctions Regulations, 31 C.F.R. Part 591, **the proposed activities would not be prohibited. Therefore, I believe that your litigation would not appear to require a license from OFAC**.
>
> Please note, however, that the entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other **order through execution**, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or

> interests in property blocked pursuant to the Venezuela Sanctions Regulations is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to the Venezuela Sanctions Regulations. *See* VSR § 591.407. **We encourage you to submit a license application or interpretive guidance request to OFAC, if and when the [litigation] process reaches that point**.

A true and correct copy Mr. Ahn's e-mail is attached hereto as **Exhibit B** (emphases added). In other words, Casa Express does not need a specific license to litigate this action, according to the OFAC Licensing Officer overseeing Casa Express's new application. A specific license is only required to execute the blocked properties.

The Impleaded Defendants disagree. They contend that the entire proceeding, including any orders entered by the Court, is "null and void" because Gorrin's attorney has not approved these actions. [ECF No. 45] at 8 (Gorrin's attorney "has not approved the actions undertaken by [Casa Express]"); *see also id.,* at 9 (therefore, "any summons issued in this case [is] null and void"). According to the Impleaded Defendants, the Court should seek permission from Gorrin's attorney before it issues a summons or enters an order in this case for it to be valid. This is an absurd argument that is obviously not endorsed by OFAC or any federal regulation.

To support their position, the Impleaded Defendants rely on 31 C.F.R. § 591.202(e). The regulation provides that "any attachment, judgment, decree, lien, execution, garnishment, or other judicial process is null and void with respect to any property and interests in property blocked pursuant to § 591.201." 31 C.F.R. § 591.202(e). According to the Impleaded Defendants, this supplementary proceeding is a "judicial process" that requires a specific license by OFAC.[3]

---

[3]     The Impleaded Defendants also brazenly assert that Casa Express may be subject to criminal sanctions for filing this lawsuit and seeking leave to amend without a specific license from OFAC. As of the filing of this reply brief, the Impleaded Defendants remain the only entities in this action that have been designated by OFAC for their association with a most-wanted fugitive.

Critically, the Eleventh Circuit Court has squarely rejected the Impleaded Defendants argument: "Simply because Congress empowers the Executive to forbid certain transfers of property and he [or she] acts thereon does not imply that the jurisdiction of the federal courts is dependent upon the issuance of a license by the Treasury Department." *Dean Witter Reynolds, Inc. v. Fernandez*, 741 F.2d 355, 360 n.16 (11th Cir. 1984). The Eleventh Circuit further explained that "a license is not necessary to litigate, [but] a district court should not enter a judgment that would permit a [plaintiff to execute blocked property without a specific license]." *Id*., at 363.

What is more, 31 C.F.R. § 591.202 (the regulation that purportedly prohibits this proceeding) authorizes OFAC to validate prohibited transactions retroactively. 31 C.F.R. § 591.202(c) (OFAC may issue a license "before, during, *or after* a transfer shall validate such transfer or make it enforceable to the same extent that it would be valid or enforceable but for the provisions of this part and any regulation, order, directive, ruling, instruction, or license issued pursuant to this part.").

So assuming *arguendo* that the proceeding supplementary is a judicial process that requires a specific license (it is not), OFAC may validate this proceeding retroactively with Casa Express's pending application. It may also validate this action by authorizing the execution of the real properties after the Court determines that the properties are subject to a constructive trust in Venezuela. In sum, the whole notion that this action cannot proceed without a specific license lacks merit.

Indeed, other district courts have authorized similarly situated creditors of Venezuela to litigate their claims without a specific license from OFAC. *OI Eur. Grp. B.V. v. Bolivarian Republic of Venezuela*, No. MC 19-290-LPS, 2022 WL 611563, at *7 (D. Del. Mar. 2, 2022) (ruling that "the OFAC sanctions regime does not require a specific license before the Court may

enter an order authorizing the eventual issuance of a writ of attachment"); *Koch Mins. Sarl v. Bolivarian Republic of Venezuela*, 514 F. Supp. 3d 20, 44 (D.D.C. 2020) (explaining that no OFAC license is required until judgment creditor "reach[es] into PdVSA's pockets"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 151 (3d Cir. 2019), cert. denied, 140 S. Ct. 2762, 206 L. Ed. 2d 936 (2020*)* ("[w]hether the Treasury Department permits execution," does not prevent the issuance of a writ of attachment or execution). *See also Casa Express Corp. as Tr. of Casa Express Tr. v. Bolivarian Republic of Venezuela*, 492 F. Supp. 3d 222, 228 (S.D.N.Y. 2020) (explaining that parties not prohibited from taking "legal actions that stop short of transferring control of property"). This Court should do the same.

Finally, the Impleaded Defendants rely on two cases that do not help their position. *See Versilia Supply Serv. SRL v. M/Y WAKU*, 371 F. Supp. 3d 1143 (S.D. Fla. April 16, 2019); *Martinez v. Republic of Cuba*, No. 10-22095-CIV, 2011 WL 13115471 (S.D. Fla. Aug. 26, 2011).

In *Versilia*, the plaintiffs brought claims under the Kingpin act. Unlike the Foreign Sovereign Immunities Act ("FSIA") which governs this action, the Kingpin act expressly "requires the procurement of a government-issued license before private individuals may execute against assets frozen under the Act." *Versilia*, 371 F. Supp. 3d at 1147. This express requirement was the ground for the Court's decision in *Versalia*. Because no equivalent requirement exists under the FSIA, *Versalia* is inapplicable to this action.

In *Martinez*, the Court dissolved certain writs of garnishment as "null and void" holding that execution of blocked property would be improper without a specific license. *Martinez*, 2011 WL 13115471, at *1. This holding is entirely consistent with Casa Express's position: You may *litigate* a case without a specific license, but you may not *execute* blocked property without one.

In sum, a specific license is not required to litigate this proceeding. The Court should grant Casa Express leave to amend by interlineation and hear the merits of this action.

**B.  Casa Express has standing to seek the imposition of a constructive trust over the blocked properties in favor of Venezuela.**

Next, the Impleaded Defendants contend that the entire proceeding is futile because Casa Express purportedly lacks standing to pursue this action. [ECF No. 45] at 9. As explained below, their arguments lack merit and fall short of satisfying the futility standard.

**i.  Under Florida law, a judgment creditor may step in the shoes of a judgment debtor to seek the imposition of a constructive trust over real property that is being held by a third party.**

First, the Impleaded Defendants contend that Casa Express lacks authority to seek claims on behalf of Venezuela, a statement that is both legally and factually incorrect. Indeed, long-standing Florida jurisprudence recognizes a judgment creditors' right to step in the shoes of their judgment debtor to seek the imposition of a constructive trust over real property that is being held by a third party through a supplementary proceeding.

As the Florida Supreme Court has explained:

> "[A] judgment creditor . . . may pursue in a court of equity any equitable interest, trust, or demand of his debtor, in whosesoever hands it may be found. Lands or personal property in which a debtor has an equitable estate or interest, the legal title being in another, may be reached by a creditor's bill. The rule is general that a debtor's interest in a trust fund created either by himself or another may be reached to satisfy a judgment against him by a creditor's bill. A like rule applies to a resulting or a constructive trust.

*Hillsborough Cnty. v. Dickenson*, 125 Fla. 181, 186–87, 169 So. 734, 737 (1935). Simply put, Casa Express may reach assets of Venezuela in the hands of the Impleaded Defendants through the

imposition of a constructive trust in a supplementary proceeding.[4] Any assertion to the contrary must fall by the wayside.

ii.   **Venezuela has expressly authorized Casa Express to execute the real properties being held by the Impleaded Defendants.**

In any event, Casa Express has obtained express authorization from Venezuela to execute the Venezuelan real properties being held by the Impleaded Defendants. On February 21, 2022, the government[5] of Venezuela passed a law establishing a procedure that authorizes creditors of Venezuela to sue "the holders of Venezuelan assets obtained through acts of corruption," and to use the recovered assets "to repay the debts owed by the Republic." *See* Official Legislative Gazette of the Bolivarian Republic of Venezuela No. 57, at 1 attached as **Exhibit C**.[6]

Interested creditors must submit a proposal to the Special Attorney General of Venezuela identifying the holders of public assets obtained by acts of corruption, and the assets that they seek to execute. *Id*., at Art. 1. They must also waive their right to initiate post-judgment actions against other Venezuelan assets "at least until the conclusion of the procedures that have been initiated against the holders of assets originated from corruption." *Id*., at Art. 2. Then the Special Attorney

---

[4]   Supplementary proceedings are the "substitute for the creditor's bill of the chancery practice." *George E. Sebring Co. v. O'Rourke*, 101 Fla. 885, 898, 134 So. 556, 561 (1931).

[5]   The executive branch has recognized the Juan Guaidó as the interim President of Venezuela. That decision cannot be second-guessed by the judiciary. *Zivotofsky ex rel. Zivotofsky v. Kerry*, 135 S. Ct. 2076, 2090, 192 L. Ed. 2d 83 (2015) ("[J]udicial precedent and historical practice teach that it is for the President alone to make the specific decision of what foreign power he will recognize as legitimate, both for the Nation as a whole and for the purpose of making his own position clear within the context of recognition in discussions and negotiations with foreign nations"); *Guar. Tr. Co. of New York v. United States*, 304 U.S. 126, 137–38, 58 S. Ct. 785, 791, 82 L. Ed. 1224 (1938) ("What government is to be regarded here as representative of a foreign sovereign state is a political rather than a judicial question, and is to be determined by the political department of the government.").

[6]   The Official Legislative Gazette of the Bolivarian Republic of Venezuela is in Spanish. Exhibit C includes a certified translated version in English and the original copy in Spanish.

General must issue a decision granting or denying the proposal. *Id.*, at Art. 3. If the decision is favorable, and upon request of the interested creditor, the Special Attorney General may address an official communication to OFAC advising that Venezuela has no objection to the issuance of a specific license to the interested creditor for the proposed transaction. *Id*.

Here, Casa Express submitted a proposal to execute, on behalf of Venezuela, the blocked properties being held by the Impleaded Defendants. On March 17, 2022, the Special Attorney General of Venezuela, Enrique J. Sanchez Falcon, granted Casa Express's proposal. *See* Letter from Special Attorney General, Enrique J. Sanchez Falcon, granting Casa Express's proposal attached hereto as **Exhibit D**.[7]  He also issued a letter of No Objection to OFAC. *See* Venezuela's Letter of No Objection attached hereto as **Exhibit E**.[8]

In sum, Casa Express may step in the shoes of Venezuela to reach assets held by the Impleaded Defendants via the imposition of a constructive trust. Although not required under Florida law, Casa Express has obtained express authorization from Venezuela to execute the real properties. Accordingly, the Impleaded Defendants "lack of authorization" standing argument is moot and without merit.

### iii.  Casa Express has Article III standing to bring this proceeding.

The Impleaded Defendants contend that Casa Express lacks constitutional standing because it has not suffered an injury-in-fact that is traceable to the Impleaded Defendants. [ECF No. 45] at 10-11. According to the Impleaded Defendants, "Casa Express lacks direct standing

---

[7]     The Special Attorney General's letter was written in Spanish. Exhibit D includes a certified translated copy in English and the original letter in Spanish.

[8]     Venezuela's letter of No Objection was written in Spanish. Exhibit E includes a certified translated copy in English and the original letter in Spanish.

because it did not personally suffer any injury in fact by any of the alleged foreign exchange conduct." [ECF No. 33] at 19. Their standing analysis is flawed.

Indeed, the Impleaded Defendants conflate two separate standing questions which has inevitably led them to the wrong conclusions. The first question is, does Casa Express have standing to sue Venezuela? The second one is, does Venezuela have standing to sue the Impleaded Defendants? And the answer to both questions is "yes."[9]

Since Casa Express is stepping in the shoes of Venezuela to assert claims against the Impleaded Defendants, it is irrelevant whether Casa Express suffered an injury-in-fact for their conduct. The correct question would be whether Venezuela suffered an injury-in-fact vis-à-vis the Impleaded Defendants. The Proposed Amendment alleges that it has. *See, e.g.* [ECF No. 42-1] ("Gorrin misappropriated and retained hundreds of millions of dollars of sovereign funds at the expense of Venezuela."). Likewise, the Proposed Amendment does not have to allege that Casa Express "possessed, or has an immediate right to possess, [the misappropriated Venezuelan funds.]" [ECF No. 45] at 11. That would also be a proper question for the standing analysis between Venezuela and the Impleaded Defendants.

To sum up, Casa Express has standing to sue Venezuela. Venezuela has standing to sue the Impleaded Defendants. And Casa Express may step in the shoes of Venezuela to seek the imposition of a constructive trust on its behalf over the real properties being held by the Impleaded Defendant. Also, Venezuela has expressly authorized Casa Express to pursue these claims on its behalf (although not required by law).

---

[9]     The Response does not dispute that Casa Express has standing to sue Venezuela. Nor does it dispute that Venezuela has standing to sue the Impleaded Defendants. For these reasons, Casa Express refrains from engaging in a thorough analysis of each party's individual standing in this reply brief.

Accordingly, the Court should grant leave to amend because Casa Express has standing to litigate this action.

> iv.   **The Proposed Amendment alleges causes of actions that support the imposition of a constructive trust over the real properties.**

Finally, the Impleaded Defendants contend that Casa Express lacks standing to seek the imposition of a constructive trust because a constructive trust is an "equitable remedy" and not a cause of action implying that the Proposed Amendment does not allege any cause of action. [ECF No. 45] at 10. But the Proposed Amendment does allege causes of actions against Alejandro Andrade Cedeno ("Andrade"), Diaz, and Gorrin.

In fact, Casa Express moved for leave to amend by interlineation to allege the unjust enrichment cause of action more thoroughly. *See* [ECF No. 42] at 2 (explaining that "the Proposed Amendment seeks to incorporate allegations that thoroughly explain how the parties that participated in the foreign currency exchange scheme were unjustly enriched at the expense of Venezuela.").

To be clear, the Proposed Amendment alleges a breach of fiduciary claim against Andrade and Diaz. *See* [ECF No. 42-1] at Statement of Facts ("SOF") ¶¶ 14-15; 22 (alleging breach of fiduciary elements against Andrade); *Id.*, at SOF ¶¶ 20-22 (alleging breach of fiduciary duty elements against Diaz). It alleges a wrongful participation in a breach of trust cause of action against Gorrin. *See Id.*, p. 17. And it alleges an unjust enrichment claim against Andrade, Diaz, and Gorrin. *See Id.*, p. 15-16.

As the Proposed Amendment explains, a constructive trust is a proper remedy for these causes of action. *Id.* at 15 ("The imposition of a constructive trust is an appropriate remedy for breach of fiduciary duty") (quoting *Republic of Haiti v. Crown Charters, Inc.*, 667 F.Supp. 839, 843 (S.D. Fla. Aug. 13, 1987); *id.* ("The necessary elements for an imposition of a constructive

trust are '(1) a promise, express or implied, (2) transfer of the property and reliance thereon, (3) a confidential relationship and (4) unjust enrichment'") (quoting *Little v. White Diamond Int'l, LLC*, No. 10-60109, 2010 WL 11602166, at *4 (S.D. Fla. Apr. 27, 2010).

In short, the Proposed Amendment alleges several causes of action that support the imposition of a constructive trust. Therefore, the Court should grant leave to amend because the Proposed Amendment is not "clearly insufficient or frivolous on its face." *Montes*, 2015 WL 11254703, at *1.

### C. The Impleaded Defendants lack standing to raise a defense under the Foreign Sovereign Immunities Act.

Next, the Impleaded Defendants contend that the entire proceeding is futile because the real properties would be immune from execution under the FSIA. [ECF No. 42] at 12-15. According to the Impleaded Defendants, Venezuela has not waived its immunity from execution and the properties do not fall under the commercial activity exception of Section 1610(a). *Id.*

As a threshold matter, the Impleaded Defendants "lack standing to raise the defense of sovereign immunity." *Aquamar, S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1290 (11th Cir. 1999). *See also Rubin v. Islamic Republic of Iran*, 408 F. Supp. 2d 549, 563 (N.D. Ill. 2005) (ruling that "no party other than [the foreign state] may assert [the foreign state's] foreign immunity defenses under Sections 1609 and 1610 of the FSIA."). The Court should disregard their FSIA arguments for this reason, alone.

Assuming *arguendo* that the Impleaded Defendants have standing to assert defenses under the FSIA (they do not), and that the Court should entertain their arguments at this stage (it should not), their arguments lack merit and fall woefully short of satisfying the futility standard. *Montes*, 2015 WL 11254703, at *1 (A motion for leave to amend should not be denied on futility grounds "unless the proposed amendment is clearly insufficient or frivolous on its face.").

First, Venezuela has expressly waived its immunity from execution in the Fiscal Agency Agreements that govern the bonds that are the subject of Casa Express's judgment.[10] [ECF No. 3-21]; [ECF No. 3-22]. This is an indisputable fact.

Second, the real properties do fall under the commercial activity exception.[11] According to the Impleaded Defendants, "what matters under the statute is how the foreign state uses the property, not how private parties may have used the properties in the past." [ECF No. 45] at 14-15. While Casa Express disagrees with their interpretation of Section 1610(a), their argument is moot.

Indeed, Venezuela has expressly stated that the real properties will be **used** "to repay the debts owed by the Republic [*i.e.*, Casa Express's unsatisfied judgment]." *See* Exhibit C, at 1; *see also id.*, at Art. 5 ("The assets that the proposing person manages to recover will be imputed to the cancellation of the claim against [Venezuela]"). Guaranteeing the payment of sovereign debt with specific property is a recognized commercial activity. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 616, 112 S. Ct. 2160, 2167, 119 L. Ed. 2d 394 (1992) (holding that foreign state engaged in commercial activity by issuing an instrument that guaranteed payment of its sovereign debt in U.S. dollars).

In sum, the Court should not entertain the Impleaded Defendants' arguments under the FSIA because they do not have standing to assert those defenses. Even if it does, their arguments lack merit and fall woefully short of satisfying the futility standard.

---

[10]     Casa Express hereby adopts all arguments in the Proposed Amendment that thoroughly discuss Venezuela's express waiver. [ECF No. 42-1] at 27-28.

[11]     Casa Express hereby adopts all arguments in the Proposed Amendment that discuss the commercial activity exception. [ECF No. 42-1] at 26-27.

### D. The act of state doctrine is inapplicable to this supplementary proceeding.

Finally, the Impleaded Defendants contend that the act of state doctrine "bars suit." [ECF No. 45] at 15. According to the Impleaded Defendants, the Court cannot render a decision in this proceeding without invalidating acts undertaken by "Venezuelan government officials at the highest level." *Id*. at 15-16. This is inaccurate.

In the Response, the Impleaded Defendants quote *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp., Int'l*, 493 U.S. 400 (1990), which is instructive. In *Kirkpatrick*, an unsuccessful bidder for a Nigerian government construction contract sued the winning bidder, Kirkpatrick (and other parties), after learning that the contract was awarded to Kirkpatrick for making bribe payments to certain government officials totaling 20% of the contract. *Id*. In defense, Kirkpatrick argued that the act of state doctrine barred the suit because "the facts necessary to establish respondent's claim will also establish that the contract was unlawful." *Id*. at 406**.** The Supreme Court of the United States rejected that argument and explained:

> Act of state issues **only** arise when a court **must decide**—that is, when the outcome of the case turns upon—the effect of official action by a foreign sovereign. When that question is not in the case, neither is the act of state doctrine. That is the situation here. **Regardless of what the court's factual findings may suggest as to the legality of the Nigerian contract, its legality is simply not a question to be decided in the present suit, and there is thus no occasion to apply the rule of decision that the act of state doctrine requires**.

*Id*. (emphasis added). In other words, if the court does not need to decide "whether the alleged acts are valid, but whether they occurred," then the act of state doctrine does not apply *Id*. (quoting *Sharon v. Time, Inc.*, 599 F.Supp. 538, 546 (S.D.N.Y. 1984)).

Just like in *Kirkpatrick*, here the Proposed Amendment does not seek to invalidate the foreign currency exchange transactions that took place in Venezuela. It merely seeks to prove that

certain acts occurred while the foreign currency exchange transactions were performed (*i.e.*, whether government officials accepted bribes from Gorrin; whether Gorrin misappropriated Venezuelan funds through the foreign currency exchange scheme; and whether Gorrin invested those funds in the real properties). And to the extent that the factual findings in this proceeding may serve to prove that the transactions were unlawful, that "still does not suffice." *Id.*

The Impleaded Defendants also rely on *Glen v. Club Mediterranee S.A*., 365 F. Supp. 2d 1263, 1268 (S.D. Fla. 2005), *aff'd,* 450 F.3d 1251 (11th Cir. 2006), which is distinguishable. In *Glen*, the plaintiff sought monetary damages for the alleged commercial expropriation of its real property located in Cuba. The Court found that Plaintiff's claims were predicated on its alleged continuing interest in the property which effectively asked the Court to invalidate the expropriation act taken by the Cuban government. *Id*. at 1270. Based on that finding, the Court ruled that the act of state doctrine barred Plaintiff's claim.

Unlike *Glen*, here the Court does not have to invalidate Venezuela's foreign currency exchange transactions to impose a constructive trust over the real properties being held by the Impleaded Defendants. It merely has to determine whether certain acts occurred while the foreign currency exchange transactions took place. Also, expropriation claims are generally barred under the act of state doctrine. *See id.,* at 1270 (ruling that Plaintiffs cannot "complain in this Court about a seizure by [a sovereign] government").

To sum up, the act of state doctrine is inapplicable to this proceeding because the Court does not have to invalidate official acts of the government of Venezuela to reach a decision. It merely has to determine whether specific acts occurred while the act was being performed.

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant the Motion [ECF No. 42].

Dated: August 1, 2022                    Respectfully submitted,

                                        **GAMARDO, P.A.**
                                        1200 Brickell Avenue, Suite 750
                                        Miami, Florida 33131
                                        Tel: (305)542-6626

                                        <u>/s/ *Andres Gamardo*</u>
                                        Andres Gamardo, Esq.
                                        Florida Bar No.: 1021165
                                        Email: agamardo@gamardolaw.com
                                        Secondary: eservice@gamardolaw.com
                                        *Attorney for Casa Express Corp, as Trustee*
                                        *Of Casa Express Trust*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 1, 2022, I authorized the electronic filing of the foregoing

with the Clerk of the Court using the CM/ECF system.

                            By:  <u>/s/ *Andres Gamardo*</u>
                                    Andres Gamardo, Esq.