UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23103-BB

CASA EXPRESS CORP, as Trustee of
CASA EXPRESS TRUST,

           Judgment Creditor,

vs.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

           Judgment Debtor.
_____/

## RESPONDENTS' RESPONSE TO ORDER TO SHOW CAUSE (D.E. 175)

Respondents hereby respond to the Order to Show Cause (D.E. 175) and respectfully submit that Plaintiff's Motion for Default Final Judgment (D.E. 149) against the Bolivarian Republic of Venezuela ("Venezuela" or "Judgment Debtor") should not be granted for all of the following reasons.

1. **Casa's Motion for Default is Procedurally Improper and Violates the Court's Order on Default Judgment Procedure (D.E. 115), Because There is More than One Defendant and There is a Possibility of Inconsistent Liability.**

Judgment Creditor, Casa Express Corp. ("Casa"), obtained a judgment against the Bolivarian Republic of Venezuela ("Venezuela") in the Southern District of New York based on unpaid Venezuelan bonds. D.E. 1. Casa registered its New York judgment in this Court, (D.E. 1), and filed an *Ex Parte* Motion to Commence Proceedings Supplementary (D.E. 3) in order to execute against Venezuela pursuant to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. § 1610(c). Ultimately, after Casa filed an Amended *Ex Parte* Motion to Commence Proceedings (D.E. 60) (the "Amended Motion"), a Clerk's Default against Venezuela was entered (D.E. 112).

Following the Clerk's Default, this Court issued its Order on Default Judgment Procedure directing Casa to file *either*: (1) a Motion for Default Judgment; or (2) a Notice of Joint Liability. D.E. 115. A Motion for Default Judgment was to be filed only "where there is only one Defendant, or where there were multiple Defendants but no allegations of joint and several liability, and no

1

possibility of inconsistent liability between Defendants[.]" *Id*. at 1 (emphasis added). "Alternatively, where there are multiple Defendants and allegations of joint and several liability, or the possibility of inconsistent liability between Defendants, Plaintiff shall file a *Notice of Joint Liability*." *Id.* at 2 (emphasis in original). The Notice of Joint Liability was to "describe the allegations and advise the Court of the status of the other Defendants' liability." *Id.* Then, "[o]nce liability is resolved as to all Defendants, Plaintiff may move for the entry of default judgment against Defendants" by filing a Motion for Default Judgment. *Id*. Because Casa's theories entail joint and several liability among Venezuela and Respondents, and there is a likelihood of inconsistent verdicts should a default against Venezuela be entered as Casa requests, default final judgment should not be granted for this reason alone.

Respondents have long argued that, even assuming *arguendo* Casa's theory is tenable, nevertheless the real properties (if somehow owned by Venezuela pursuant to a constructive trust) would be immune from suit and attachment under the FSIA. Casa's claim does not fall within a statutory exception in Section 1603(a) of the FSIA because the property at issue was not used for a commercial activity. *See, e.g.,* D.E. 127 at 5-6. Moreover, Respondents have long argued that any alleged "waiver" by Venezuela is irrelevant because this Court is constrained to execute only upon property that meets these statutory prerequisites. *Id*. at 6. Nevertheless, in direct contravention of these defenses raised by Respondents, Casa seeks – by default – a declaratory judgment establishing that "(a) Venezuela waived its sovereign immunity from suit and from execution under the FSIA; (b) Venezuela used the Properties for a commercial activity; and (c) the Properties are located in the United States." D.E. 149 at 13.

Respondents intend to prove that the properties at issue were unequivocally not used for a commercial activity in the United States. By Casa's admission, the properties have been in control of the Respondents. Thus, whether they have been used for commercial activity by anyone is a fact question that can only be decided by this Court upon hearing from the Respondents. It would be premature and inconsistent to rule upon that issue now. For this Court to determine – by default – a critical factual finding that will be vigorously litigated by Respondents would risk the exact "possibility of inconsistent liability" that this Court has ordered must be avoided.

Furthermore, Respondents intend to argue that the money used to purchase the real estate at issue is proper and legitimate and does not belong to Venezuela. More specifically, none of the money that was used to purchase the real estate at issue is directly traceable to any crime involving

the Venezuela national currency exchange. Because the money used to buy the real properties was not stolen from Venezuela, there should be no constructive trust entered in favor of Venezuela. And there should therefore be no factual finding that "Venezuela [used] the Properties for a commercial activity" (D.E. 149-4 at 4) – because these properties do not belong to Venezuela and Venezuela never used them at all. The properties belong to Respondents. Only if Casa can prove that the funds used to purchase the properties are traceable to a crime involving the Venezuelan currency exchange would Casa be able to argue that Venezuela holds a constructive trust on the properties. Respondents, of course, vigorously dispute this factual theory. It would therefore be premature for this Court to determine – by default – a critical factual finding that "Venezuela [used] the Properties for a commercial activity" (D.E. 149-4 at 4) because Venezuela has no interest in the properties and Respondents own them legitimately and intend to prove as much.

Moreover, the Amended Motion argues that, "[s]ince misappropriated Venezuelan funds were used to acquire the real properties, the properties are subject to a constructive trust in favor of Venezuela, and . . . are subject to execution by Casa Express pursuant to 28 U.S.C. § 1610(c) and Florida Statute § 56.29." D.E. 60 at 2. But, under that same theory, the Amended Motion also seeks to take those same properties from Respondents. In other words, if Casa proves its theory, it will take the properties from Respondents and (using Casa's logic) from Venezuela's constructive trust. In other words, under Casa's theory, Respondents and Venezuela would be jointly and severally liable for the same claimed damages. But this Court has already ordered that if there are mere "<u>allegations</u> of joint and several liability" (D.E. 115 at 1), then a default final judgment is inappropriate.

In sum, this Court should deny Casa's Motion for Default and reject Casa's request for a default final judgment against Venezuela because Casa improperly filed a Motion for Default in lieu of a Notice of Joint Liability. Since Casa's theories essentially seek to hold Venezuela and Respondents jointly and severally liable for the same claimed damages and raise the possibility of inconsistent verdicts as evidenced by Respondent's affirmative defenses, Casa's Motion for Default is premature and was filed in violation of the Court's Order on Default Judgment Procedure. Pursuant to this Court's Order, Casa was limited to filing a Notice of Joint Liability until the merits of Respondent's affirmative defenses, which bear directly on Casa's request as against Venezuela, are decided.

**2. Casa's Motion for Default is Contrary to the Governing OFAC Sanctions Regime Establishing the Foreign Policy Prerogatives of the Executive Branch**

In addition, default final judgment should not be granted because any judicial process is null and void as a matter of law because the subject properties are, by Casa's own admission, blocked by OFAC under an OFAC license. D.E. 3; D.E. 60 at 2, 9; D.E. 42-1 at 1. This blocking was undertaken under statutory authority, the International Emergency Economic Powers Act and National Emergencies Act, and the implementing Venezuela Sanctions Regulations. 50 U.S.C. 1701 *et seq.* ("IEEPA"); 50 U.S.C. 1601 *et seq.* ("NEA"); 31 C.F.R. Part 591. Under the applicable federal regulations, "[a]ny attachment, judgment, decree, lien, execution, garnishment, *or other judicial process* is null and void with respect to any property and interests in property blocked pursuant to § 591.201" absent an OFAC license. 31 C.F.R. § 591.202(e) (emphasis added). Moreover, "any transfer … in violation of any regulation, order, directive, ruling, instruction or license issued pursuant to this part, and that involves any property or interest in property blocked pursuant to § 591.201, *is null and void and shall not be the basis for the assertion or recognition of any interest in or right, remedy, power, or privilege with respect to such property or property interest*." 31 C.F.R. § 591.202(a) (emphasis added). Lastly, "the entry into a settlement agreement or the enforcement of any … judgment … through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c), is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part." 31 C.F.R. § 591.407.

There is no dispute that the eight properties at issue are blocked by the Treasury Department pursuant to Executive Order 13850 and are subject to a specific OFAC license issued to Edward Wilson, the only OFAC-approved licensee of the properties. D.E. 127-1. Casa has never had an OFAC license, and its license application was denied by OFAC. *See* D.E. 54-2 (Jul. 18, 2022 OFAC letter denying specific license); *see also* D.E. 33, at 14, 20 (Treasury regulations render execution proceedings null and void and prohibit Casa's standing); 31 C.F.R. § 591.202(e) ("Unless licensed pursuant to this part, any attachment . . . execution, garnishment, or other judicial process is null and void with respect to any property and interests in property blocked pursuant to § 591.201."); *Versillia Supply Service SRL v. M.Y Waku*, 371 F.Supp.3d 1143, 1147 (S.D. Fla. 2019) (citing *Stansell v. FARC*, 704 F.3d 910, 916 (11th Cir. 2013)). In derogation of the applicable regulations, Casa initiated this judicial process seeking to execute on these blocked assets by

asking this Court to transfer the blocked property from Respondents to Venezuela, and from Venezuela to Casa. Because the assets are blocked and licensed by OFAC, default final judgment against Venezuela should not be entered.

### 3. Venezuela is Immune from Suit under the FSIA

Casa invokes the FSIA (D.E. 60, at 1), but fails to establish jurisdiction under it, either to sue for or against Venezuela or to seek execution on Venezuela's behalf under a constructive trust theory. In doing so, Casa seeks to enforce its judgment against Venezuela under a "constructive trust" theory by arguing that the Respondents' real properties "were purchased with funds that were misappropriated from, and belong to, Venezuela." D.E. 60 at ¶ 33. Not only is Casa's constructive trust theory legally erroneous, but it does not survive the sovereign immunity applicable to Venezuela or its assets in the United States under 28 U.S.C. § 1601, *et seq*.

As Casa has previously conceded, the Court "must address the issue of sovereign immunity independently even if [Venezuela] does not enter an appearance." D.E. 154 at n. 2. *See Vera v. Banco Bilbao Vizcaya Argenteria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019) ("even if no party raises the issue, courts have an obligation to consider subject matter jurisdiction *sua sponte*"); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002).[1]

The FSIA is the exclusive source of federal jurisdiction over a foreign government. *Argentine Republic v. Amerada Hess Shipping Co.*, 488 U.S. 428, 434, 437 (1989) ("the FSIA [is] the sole basis for obtaining jurisdiction over a foreign state in our courts;" distinguishing FSIA from section 1331 jurisdiction); *Butler v. Sukhol Co.*, 579 F.3d 1307, 1312 (11th Cir. 2009). Under the FSIA, sovereign governments and their property in the United States are immune from both suit and attachment. *See* 28 U.S.C. §§ 1604 (suit), 1609 (attachment); *Argentine*, 488 U.S. at 433–34. The FSIA provides that foreign states "shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter." 28 U.S.C. § 1604. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993). Absent an exception, a court lacks subject matter jurisdiction over a foreign sovereign and the attachment or execution upon its

---

[1] Moreover, a foreign sovereign need not be in possession of the sovereign property for immunity to exist: "An examination of the FSIA reveals no possession requirement exists in any part of the statute." *See Odyssey Marine*, 657 F.3d at 1178–79. "When Congress determined 'the exact degree [] and character' of subject matter jurisdiction over the property of foreign sovereigns under the FSIA, it did not provide an exception to immunity for property not in a foreign sovereign's possession." *Id.*

5

noncommercial property within the United States. *See* 28 U.S.C. §§ 1610(a); *Walters v. Industrial and Commercial Bank of China, Ltd.*, 651 F.3d 280, 288–89 (2d Cir. 2011).

The FSIA protections against attachment and execution are broader than those against suit because "at the time the FSIA was passed, the international community viewed execution against a foreign state's property as a greater affront to its sovereignty than merely permitting jurisdiction over the merits of an action." *Walters*, 651 F.2d at 288 (quoting *Connecticut Bank of Commerce v. Republic of Congo,* 309 F.3d 240, 255–56 (5th Cir. 2002)); *see also Odyssey Marine Expl., Inc. v. Unidentified Shipwrecked Vessel*, 657 F.3d 1159, 1178 (11th Cir. 2011). These protections against execution upon sovereign property are applicable when the property of third parties is sought to satisfy a judgment against a foreign state. *Walters*, 651 F.3d at 290 (citing cases).

Here, Casa seeks to execute upon Respondent's noncommercial real properties within the United States that it claims belong to Venezuela under an alleged constructive trust. D.E. 60 at 2, 16. Casa admits that "in a case against a foreign sovereign, the court must 'determine whether the property in question falls within one of the statutory exceptions to foreign immunity' prior to issuance of a writ of execution." D.E. 60 at 29 (quoting *Connecticut Bank*, 309 F.3d at 247). Casa cannot satisfy any immunity exception. Casa attempts to rely upon the exception applicable to "property in the United States of a foreign state, as defined in section 1603(a) of this chapter, *used for a commercial activity* in the United States." 28 U.S.C. § 1610 (emphasis added); D.E. 60, at 13. The properties at issue do not belong to Venezuela, but even if they did, they have not been used for commercial activity by Venezuela. *Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75, 90 (2d Cir. 2014) (government must actively use property commercially).

Casa's own constructive trust theory confirms Casa's belief that the properties do not belong to Venezuela. Moreover, Casa acknowledges that the properties are blocked by the Treasury Department because they are privately owned by Venezuelans designated under the Venezuela Sanctions Regulations. D.E. 42-1, at 20-25(¶ 1b).[2] Thus, the federal government does not consider them to be Venezuela's property, but instead is blocking them to increase the federal government's influence over their owners. This OFAC regulation and role is confirmed by the

---

[2] The designation of individuals, including government officials, does not block Venezuelan government assets. OFAC FAQ 505 ("The designation of an official of the Government of Venezuela does not mean that the government itself is also blocked. The prohibitions apply to transactions or dealings only with the individuals and entities whose property and interest in property are blocked.").

6

specific OFAC license issued to Ed Wilson to manage the properties. D.E. 127-1. Further evidence that the properties do not belong to Venezuela is provided by their classification as "substitute" assets in the Gorrin superseding indictment regarding the Venezuelan currency program, which if true, would make them "other property of the defendant," not of Venezuela. *Id*. at 10; 21 U.S.C. § 853(p)(2). *See* D.E. 42-13 (superseding indictment).[3]

Even if the Court assumed that the properties belong to Venezuela, they would still be immune from execution because they have not been used for commercial activity by Venezuela. Casa makes no claim that *Venezuela* uses the properties for commercial purposes and instead alleges that the "real properties at issue were **purchased by private citizens** (through shell companies) **for the benefit of private citizens**." D.E. 60 at 26 (emphasis in the original). While Casa alleges that Gorrin rented the properties for cashflow and listed them for sale (D.E. 60 at 11), this confirms that the properties were not being commercially used by Venezuela. "What matters under the statute is what the property is 'used for,' not how it was generated or produced." *Connecticut Bank*, 309 F.3d at 251. "[E]ven if a foreign state's property has been generated by commercial activity in the United States, that property is not thereby subject to execution or attachment if it is not 'used for' a commercial activity within our borders." *Id.* Finally, any alleged commercial activity in Venezuela does not satisfy the FSIA because it is activity in Venezuela and has no direct effect on the United States. *Aldossari v. Ripp*, 49 F.4th 236, 254 (3d Cir. 2022) (contract transactions abroad not commercial activity).

Casa next claims that Venezuela has waived its sovereign immunity by virtue of certain language in documents relating to the underlying debt securities. D.E. 60 at 12-13, 26 (citing Fiscal Agency Agreements). But the purported contractual waiver of sovereign immunity does not expand the property subject to attachment beyond: (i) property in the United States; (ii) used for commercial purposes. *See Connecticut Bank*, 309 F.3d at 254 ("The statute means what it says: property of a foreign sovereign, unlike property belonging to a mere agency or instrumentality, may be executed against only if it is 'used for' a commercial activity."). "Even when a foreign state completely waives its immunity from execution, courts in the U.S. may execute only against

---

[3] Casa mistakenly asserts that this "substitute" asset forfeiture classification (pursuant to 21 U.S.C. § 853(p)) means that properties are derived from the offense. It legally means the opposite—that the properties are the legitimate "other property of the defendant." *See Honeycutt v. United States*, 581 U.S. 443, 452 (2017) (construing substitute asset forfeiture as limited to property untainted by offense).

property that meets these two statutory criteria" – that is, the property must be located in the United States and be in commercial use by the sovereign. *Id.* at 247; *accord Aurelius Capital Partners, LP v. Republic of Argentina*, 584 F.3d 120, 130 (2d Cir. 2009); *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 481 n.19 (2d Cir. 2007); *LNC Inv., Inc. v. Republic of Nicaragua*, 96 CIV. 6360 JFK, 2000 WL 745550, at *1–4 (S.D.N.Y. June 8, 2000). There is no allegation that Venezuela has ever used the properties for commercial activity; to the contrary, they are alleged to have been purchased by private citizens for their own personal benefit. D.E. 60, at 25-26. In fact, Casa pleads: "There is nothing peculiarly sovereign about such ownership." *Id.* at 26.

4. **Casa's claims against Venezuela are barred by the Act of State Doctrine.**

Casa demands that this Court address the validity of the sovereign acts of Venezuela in seeking a loan, setting the terms for its repayment, and accepting repayment. The act of state doctrine bars suit when "the relief sought or the defense interposed would have required a court in the United States to declare invalid the official act of a foreign sovereign performed within its own territory." *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp. Int'l*, 493 U.S. 400, 405 (1990). The official acts underlying the terms and performance of Venezuela's foreign exchange transactions taking place within Venezuela are the acts of a sovereign government. Indeed, Casa's entire thesis—that Venezuela has a claim arising out of its currency transactions with Gorrin—confirms that these are acts of a sovereign government.

The Act of State doctrine is a judicial limitation on the right to sue. *United States v. Noriega*, 746 F. Supp. 1506, 1521 (S.D. Fla. 1990) (Hoeveler, J.), *aff'd on other grounds*, 117 F.3d 1206 (11th Cir. 1997). "It is a doctrine of judicial restraint that prohibits a United States court from passing judgment on the validity of an act of a foreign sovereign taken within its own territory." *Club Mediterranee*, 365 F. Supp. 2d at 1267 (citing *inter alia Banco Nacional de Cuba v. Sabbatino*, 376 U.S. 398, 401 (1964) ("The act of state doctrine in its traditional formulation precludes the courts of this country from inquiring into the validity of the public acts a recognized foreign sovereign power committed within its own territory"). "The doctrine does not simply relieve the foreign government of liability for its acts, but operates as an issue preclusive device, foreclosing judicial inquiry into the validity or ***propriety*** of such acts in litigation between any set of parties." *Id.* at 1271 (quoting *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1380 (5th Cir. 1980)) (emphasis added). "Every sovereign state is bound to respect the independence of

every other sovereign state, and the courts of one country will not sit in judgment on the acts of the government of another, done within its own territory." *Mezerhane*, 785 F.3d at 552.

In the underlying currency exchange, the transactions flowed through and were effectuated by the Venezuelan government. *See generally* D.E. 60 at ¶¶ 5-12. "[B]ecause in this case a foreign plaintiff is protesting a taking by a foreign sovereign that took place outside of the United States, the act of state doctrine bars a U.S. court from questioning the sovereign's act." *Mezerhane*, 785 F.3d at 552. "Consequently, [Movant's unjust enrichment and constructive trust] claims would be foreclosed under this doctrine, since they would require this court to make a determination of their rights in the wake of the sovereign acts of the [Venezuelan] government." *Club Mediterranee*, 365 F. Supp. 2d at 1271. The Act of State doctrine bars this Court from providing civil redress for the acts of Venezuela and its officials, conducted in Venezuelan territory.

**5. Venezuela Was Not Properly Served Because The Amended Motion to Commence Created a New Proceeding and Formal Service was Required**

Lastly, default final judgment should not be entered because Venezuela was not properly served. After initiating this action, Casa moved for authorization to serve Venezuela with a summons and its *Ex Parte* Expedited Motion to Commence Proceedings Supplementary (D.E. 3) (the "Motion") *via* diplomatic channels pursuant to 28 U.S.C. § 1608(a)(4). D.E. 32. Casa's request was granted. D.E. 38. The summons and motion were mailed to the Consulate of Venezuela in New York (D.E. 40), and later forwarded to the Venezuelan embassy in Washington D.C. on May 5, 2022. D.E. 41.

Casa subsequently filed an amended *Ex Parte* Expedited Motion to Commence Proceedings Supplementary (the "Amended Motion") (D.E. 60) and the Amended Motion was granted (D.E. 62), but there is no record on the docket reflecting that Casa's Amended Motion or a subsequent Notice to Appear directed to Venezuela were ever served, or even attempted to be served, upon Venezuela.[4] "In Florida, execution and garnishment proceedings are ancillary

---

[4] Casa sought a ruling from this Court that Venezuela did not need to be served with the Amended Motion, which was granted. D.E. 105. Casa's Motion for Default now claims Venezuela was properly served by pointing to the mailing of Casa's original Motion (not the Amended Motion). But Casa did not direct the Court to *Stansell*, which holds that "an execution or garnishment proceeding 'commence[s] when the writ is issued or the pleading setting forth the claim of the party initiating the action is filed.'" 771 F.3d at 733. Because Casa filed an Amended Motion to Commence Proceedings Supplementary, it needed to serve Venezuela to bring Venezuela into this new and distinct proceeding.

9

proceedings." *Stansell v. Revolutionary Armed Forces of Colombia*, 771 F.3d 713, 733 (11th Cir. 2014). "Thus, an execution or garnishment proceeding 'commence[s] when the writ is issued or the pleading setting forth the claim of the party initiating the action is filed.'" *Id.* (quoting Fla. R. Civ. P. 1.050). Here, the Amended Motion to Commence Proceedings Supplementary was filed on June 7, 2022 "and, at that point, it [admittedly] became the operative pleading in this proceeding." D.E. 77 at 1. The Amended Motion (D.E. 60) initiated a distinct proceeding, and Venezuela – a sovereign nation – had to be served in order to be brought into the proceeding.

Moreover, while Casa requested authorization from this Court to serve Venezuela via diplomatic channels under 28 U.S.C. § 1608(a)(4), Casa failed to satisfy the requirements of this provision. The Supreme Court has strictly enforced the FSIA service requirements of 28 U.S.C. § 1608(a). *Republic of Sudan v. Harrison*, 139 S. Ct. 1048 (2019). Casa acknowledges as much. D.E. 32 at 2 ("Section 1608 'mandate[s] strict adherence to its terms, not merely substantial compliance.'") (quoting *Finamar Investors Inc. v. Republic of Tadjikistan*, 889 F. Supp. 114, 117 (S.D.N.Y. 1995)).

Section 1608(a) sets out in hierarchical order four methods by which service of process on a foreign state must be made. 28 U.S.C. § 1608(a). First, a copy of the summons and complaint must be delivered "in accordance with any special arrangement for service between the plaintiff and the foreign state[.]" *Id*. at § 1608(a)(1). "[i]f no special arrangement exists," the second method allows for the delivery of a copy of the summons and complaint "in accordance with an applicable international convention on service of judicial documents." *Id*. at § 1608(a)(2). If the first two methods cannot be accomplished, the third method calls for sending a copy of the summons and complaint, together with a translation of each into the official language of the foreign state, by and form of mail requiring a signed receipt, … to the head of the ministry of foreign affairs of the foreign state concerned." *Id*. at § 1608(a)(3). The fourth, and last, method requires the service packet to be sent "by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia," for transmittal "through diplomatic channels to the foreign state." *Id*. at § 1608(a)(4).

Casa claimed to have "determined that the only method available to serve Venezuela" was pursuant to Section 1608(a)(4). D.E. 32 at 2. Even though Section 1608(a)(4) should be used as a last resort, Casa sought to skip to that option first without explanation or proof of any previous attempts to satisfy any of the three other methods required under the statute. This is simply

improper and violates the statute. *Republic of Sudan v. Harrison*, 203 L. Ed. 2d 433, 139 S. Ct. 1048, 1062 (2019) ("Respondents may attempt service once again under § 1608(a)(3), and if that attempt fails, they may turn to § 1608(a)(4)."); *Howe v. Embassy of Italy*, 68 F. Supp. 3d 26, 31 (D.D.C. 2014)("Four hierarchical methods of service are outlined in § 1608(a), which are to be followed 'in descending order of preference—meaning that a plaintiff must attempt service by the first method (or determine that it is unavailable) before proceeding to the second method, and so on.'").

Nevertheless, here, the only mode of service by Casa upon Venezuela appears to be service upon an embassy official in the United States, which is not valid. *Harrison*, 139 S. Ct. at 1053 (holding that Section 1608(a)(3) is not satisfied when a service packet that names the foreign minister is mailed to the foreign state's embassy in the United States); *Howe*, 68 F.Supp.3d at 26. Moreover, there is no indication on the record that the documents were ever routed or transmitted by the Washington D.C. embassy to Venezuela as required by the statute.

Given Casa's refusal to abide by the requirements of Section 1608(a) and failure to perfect service under Section 1608(a)(4), this Court lacks jurisdiction over Venezuela and cannot enter a default against it. *Howe*, 68 F. Supp. 3d at 32 ("If a plaintiff fails to perfect service as required under the applicable provision of § 1608, the court lacks personal jurisdiction over the foreign entity pursuant to 28 U.S.C. § 1330(b), regardless of whether the foreign sovereign would otherwise be amenable to suit under one of the delineated exceptions to the FSIA."). And judgments entered against foreign states without compliance with § 1608(a) are void. *Kumar v. Sudan*, 880 F.3d 144, 160 (4th Cir. 2018). Thus, Casa's requested default judgment should be denied.

## CONCLUSION

For the foregoing reasons, Casa's Motion for Default (D.E. 149) should be denied.

Respectfully submitted,

*/s/ Robert T. Dunlap*
Robert T. Dunlap (FL Bar No. 119509)
Freedman Normand Friedland LLP
1 SE 3rd Avenue, Suite 1250
Miami, FL 33131
Tel: (786) 924-2900
rdunlap@fnf.law

Howard M. Srebnick (FL Bar No. 919063)
Black Srebnick
201 South Biscayne Blvd., Suite 1300
Miami, FL 33131
Tel: (305) 371-6421
HSrebnick@royblack.com

12