## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 1:21-cv-23103-BLOOM/OTAZO-REYES

CASA EXPRESS CORP, as Trustee of
CASA EXPRESS TRUST,

                  Judgment Creditor,

v.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

                  Judgment Debtor.

_____/

## PLAINTIFF'S OBJECTIONS TO REPORT AND RECOMMENDATION [ECF No. 180]

Plaintiff and Judgment Creditor Casa Express Corp, as Trustee of Casa Express Trust ("Plaintiff"), submits these objections to Magistrate Judge Otazo-Reyes's Report and Recommendation, ECF No. [180] ("R&R"), on the Motion to Dismiss for Lack of Service or Personal Jurisdiction or Alternatively Motion to Quash Service, ECF No. [128], filed by the Impleaded Defendants Raul Gorrin Belisario ("Gorrin"), Posh 8 Dynamic Inc., Planet 2 Reaching Inc., RIM Group Investments Inc., RIM Group Investments I Inc., RIM Group Investments II Inc., RIM Group Investments III Inc. (collectively, "Gorrin Entities") (Gorrin and Gorrin Entities will be referred to as "Impleaded Defendants").

### I.     Standard of Review

"'In order to challenge the findings and recommendations of the magistrate judge, a party must file written objections which shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection.'" *In re Depts. of Antioquia, Caldas, Cundinamarca, & Valle del Cauca*, No. 16-20335-CIV, 2017 WL 6557417, at *1 (S.D. Fla. Oct. 27, 2017), *aff'd sub nom. Dep't of Caldas v. Diageo PLC*, 925 F.3d 1218 (11th Cir. 2019) (quoting *Macort v. Prem, Inc.*, 208 Fed.Appx. 781, 783 (11th Cir. 2006) (alterations omitted)). "Once a district court receives 'objections meeting the specificity requirement set out above,' it must 'make a *de novo* determination of those portions of the report to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the magistrate judge.'" *Depts. of Antioquia*, 2017 WL 6557417, at *1 (quoting *Macort*,

208 Fed.Appx. at 783–84) (alterations omitted)). In making a *de novo* determination, the "District Judge may also receive further evidence, recall witnesses, or recommit the matter to the Magistrate Judge with instructions." Magistrate Rule 4(b) of the Local Rules of the Southern District of Florida.

## II.   ARGUMENT

### 1.   The Impleaded Defendants waived their right to file a 12(b) motion to dismiss by filing a responsive pleading prior to the motion.

Rule 12 plainly requires litigants to file their motions asserting 12(b) defenses before they file a responsive pleading. Fed. R. Civ. P. 12(b) ("A motion asserting any [12(b)] defenses must be made <u>before</u> pleading if a responsive pleading is allowed") (emphasis added). Courts have uniformly held that a motion to dismiss filed after a responsive pleading is untimely as a matter of law – and must be denied. *Skrtich v. Thornton,* 280 F.3d 1295, 1306 (11th Cir. 2002) ("[B]ecause a responsive pleading—an answer—had been filed, under the plain language of Rule 12(b), a motion to dismiss would have been inappropriate"); *Breckenridge Pharmaceutical, Inc. v. Metabolite Laboratories, Inc.*, Case No. 04-80090-CIV-COHN, 2007 WL 201261, at 5 (S.D. Fla. Jan. 24, 2007) (denying motion to dismiss holding that the defendant "waived his Rule 12(b)(6) defense by filing an Answer to the Third-Party Complaint"); *Zo Skin Health, Inc. v. Salz*, No. 14-CIV-21376, 2014 WL 4185385, at *1 (S.D. Fla. Aug. 22, 2014) (denying motion to dismiss because defendant "filed her answer before filing her Motion, that Motion is untimely, and must be denied"); *Walker v. Mead,* 2014 WL 2778162 (M.D. Fla. June 18, 2014) (defendant waived right to dismissal under Rule 12(b) (6) by failing to file motion prior to responsive pleading).

In this case, the docket conclusively establishes that the Impleaded Defendants filed the motion to dismiss, ECF No. [128], after their responsive pleading[1], ECF No. [127], making the motion to dismiss untimely as a matter of law. Despite this, the R&R concludes that the motion to dismiss – which was indisputably filed after the responsive pleading – should be considered because the Impleaded Defendants raised the defenses of improper service and personal jurisdiction in their responsive pleading. ECF No. [180] at 7. Respectfully, this is immaterial.

Plaintiff is not arguing that the Impleaded Defendants waived their "service of process and personal jurisdiction defenses." ECF No. [180] at 7. Instead, Plaintiff submits that the Impleaded

---

[1]    The Impleaded Defendants concede that ECF No. [127] is their responsive pleading. ECF No. [165] at 9 (describing ECF No. [127] as "Respondent's very first responsive pleading").

Defendants preserved their defenses, but waived their right to file a motion to dismiss asserting those defenses after they filed a responsive pleading:

> [O]ur position is that under Black Letter Law the motion to dismiss is untimely. The Court should not consider the arguments raising defenses of lack of personal jurisdiction. <u>This does not mean that the Defendants waived their defenses, it just means that they waived their right to bring a 12(b) motion asserting this defense because they filed a responsive pleading before they filed their 12(b) motion</u>.

[ECF No. 183] at 78:7-14 (emphasis added). This position is consistent with the interpretation of Rule 12 by other courts in this District. *See e.g., Breckenridge Pharm., Inc.*, 2007 WL 201261, at *5 (explaining that "Rule 12(h) preserves [12(b)] defense[s] for his answer and for trial (and for summary judgment), [but] a party cannot file an answer and also seek to dismiss under Rule 12(b)(6)") (parenthesis in original).

Put simply, a 12(b) motion to dismiss filed after a responsive pleading is untimely as a matter of law – and must be denied. The Impleaded Defendants filed their 12(b) motion after their responsive pleading. The R&R erred in recommending this Court that it consider and grant the untimely motion to dismiss. The Court should reject the R&R's recommendation and limit its consideration of the motion to the relief pled in the alternative by Gorrin, which seeks to quash service of process.

**2.      Plaintiff properly served Gorrin via the Florida Secretary of State.**

The R&R correctly concludes that Plaintiff exercised due diligence in compliance with Florida's substitute service statutes. ECF No. [180] at 8. It also correctly rejects Gorrin's technical non-compliance arguments finding that Plaintiff complied with the requirements prescribed by the statute. *Id.*

Despite this, the R&R incorrectly recommends that this Court compel Plaintiff to re-serve "Gorrin under the Hague Convention" through officials of Nicolas Maduro's illegitimate regime. ECF No. [180] at 18. Plaintiff respectfully submits that the Court should reject that recommendation to avoid violating the political question doctrine and the separation of powers prescribed by the U.S. Constitution. Instead, the Court should adopt the R&R's conclusions regarding Plaintiff's compliance with the Florida's substitute service statute and rule that Plaintiff properly effected service of process on Gorrin because the Hague Convention is unavailable to serve Gorrin.

### i.   The Hague Convention is unavailable to serve Gorrin.

Plaintiff does not dispute that Venezuela is a signatory to the Hague Convention. But the Hague Convention is unavailable to serve Gorrin because the Venezuelan government (*i.e.*, the government recognized by the executive branch) has not designated a Central Authority to process requests for international service under the Hague Convention. And compelling Plaintiff to attempt service with the officials appointed by Nicolas Maduro's illegitimate regime would violate the political question doctrine and the separation of powers prescribed by the U.S. Constitution by second-guessing the executive's decision to derecognize a foreign government.

It is black letter law that "the President has exclusive authority to recognize or not to recognize a foreign state or government." *Zivotofsky ex rel. Zivotofsky v. Kerry*, 576 U.S. 1, 15, 135 S. Ct. 2076, 2087, 192 L. Ed. 2d 83 (2015) (quoting Restatement (Third) of Foreign Relations Law § 204, at 89). "Recognition can be accomplished expressly through a statement of the Executive Branch or implicitly by receiving diplomatic representatives." *Jimenez v. Palacios*, 250 A.3d 814, 828 (Del. Ch. 2019).

The executive branch automatically "derecognizes a governmental regime when it recognizes another regime as the legitimate government of that state." *Nat'l Petrochemical Co. of Iran v. M/T Stolt Sheaf*, 860 F.2d 551, 553 (2d Cir. 1988). The decision to recognize or derecognize a foreign government "'conclusively binds' all domestic courts, such that they must accept that decision." *Jimenez*, 250 A.3d at 830 (quoting *Oetjen v. Cent. Leather Co.*, 246 U.S. 297, 302 (1918)). Because the Nation must speak "with one voice" in the topic of recognition. *Zivotofsky*, 576 U.S. 1, 14 (quotations omitted). And "[t]hat voice must be the President's." *Id*.

When it comes to Venezuela, the executive branch has expressly derecognized Nicolas Maduro's regime as the legitimate government of Venezuela. *See* ECF No. [159-1] at ¶ 11. The derecognition of Maduro's regime began in January 2019, following the appointment of Juan Guaido as the Interim President of Venezuela. *Id*. at ¶ 11. The U.S. government expressly recognized President Guaido as the legitimate head of state shortly after his swearing-in ceremony. *Id*. at ¶ 7.

In January of 2023, the opposition-led National Assembly voted to dissolve the Interim Government and removed President Guaido as the Interim President. *Id*. at ¶ 10. After the removal of President Guaido, the U.S. Department of State unequivocally re-affirmed its position regarding

Maduro's illegitimacy and expressly recognized the National Assembly as the last democratically elected institution in Venezuela:

> "[O]ur approach to Nicolás Maduro is not changing. He is not the legitimate leader of Venezuela. We recognize the 2015 National Assembly." *Id*. at ¶ 11 (quoting Decl. Ex. C) (emphasis added).

> "In terms of our approach to Nicolás Maduro, our approach has not changed. He is illegitimate. We support the 2015 National Assembly as the only remaining vestige of democracy in Venezuela." *Id*. at Ex. C (emphasis added). *Id*.

> "Juan Guaido remains a member of the 2015 National Assembly, which we recognize – the 2015 National Assembly – because it is the last democratically elected institution in the country." *Id*. at Ex. C (emphasis added). *Id*.

It is well-established that the Hague Convention requires each signatory state to "designate a Central Authority that will process requests to serve process from abroad and the procedures that the Central Authority may or must follow in effecting service of process." *Barriere v. Juluca*, No. 12-23510-CIV, 2014 WL 652831, at *2 (S.D. Fla. Feb. 19, 2014).

Neither the recently-dissolved Interim Government nor the National Assembly have designated a Central Authority to process international service requests under the Hague Service Convention. In fact, the Hague Conference's official website lists two Maduro officials, Christians Eduardo Sánchez Oloyola and Raquel Dayanna Diaz Vivas, as the contact persons for international service under the Hague Service Convention. Ex. A at ¶ 15. These are undisputed facts.

Despite this, the R&R recommends that this Court compel Plaintiff "to effectuate service on Gorrin under the Hague Convention" through the officials of Maduro's illegitimate regime. ECF No. [180] at 10. The R&R relies on *Saint-Gobain Performance Plastics Europe v. Bolivarian Republic of Venezuela*, 23 F. 4th 1036 (D.C. Cir. 2022), which is inapposite and irrelevant to the pertinent issue: Whether a court second-guesses the executive's decision to derecognize a foreign government in violation of the political question doctrine if it compels a litigant to effect service of process through officials of the illegitimate regime, impliedly affirming their authority to represent, and act on behalf of, the foreign state.

The R&R summarily dispels Plaintiff's invocation of the political doctrine claiming that *Saint-Gobain* "reject[s] the concept that Venezuela's Central Authority is the Venezuelan State." ECF No. [180] at 10. This holding is taken out of context and it fails to address the pertinent issue.

In *Saint-Gobain*, the plaintiff mailed a request for service with copies of its summons and complaint to the Venezuelan Central Authority to effect process on Venezuela. The plaintiff argued that mailing the documents to the Venezuelan Central Authority, without more, constituted legal service on Venezuela, claiming that the Central Authority is the state. *Id.,* at 1041. The court correctly rejected that argument explaining that the Central Authority receives and processes "requests for service" but mailing the documents to the Central Authority does not "constitute[] legal service" on a foreign state defendant. *Id.* Instead, the Central Authority must follow certain procedures to effect service of process on foreign defendants, even when the defendant to be served is a foreign state. *Id*.

Just to be clear, Plaintiff is not arguing that mailing documents to the Central Authority constitutes valid service on a foreign state under the Hague Convention. Nor is it arguing that the Central Authority is the Venezuelan state. Instead, Plaintiff's argues that the only Central Authority in Venezuela is controlled by illegitimate officials of the Maduro regime. Because it is undisputed that the recognized government of Venezuela has not designated a Central Authority to process international service requests.

So the relevant issue here is whether the judicial branch should recognize the authority of purported "officials" of a regime that the executive branch deems illegitimate by compelling a litigant to effect process through them. Plaintiff submits it should not. *The Penza*, 277 F. 91, 92–93 (E.D.N.Y. 1921) (holding that "the question who represents and acts for a foreign sovereign or nation in its relations with the United States is determined, not by the judicial department, but exclusively by the political branch of the government") (internal citation omitted); *United States v. Saab Moran*, Case No. 19-20450-CR-Scola (S.D. Fla. December 23, 2022, ECF No. [197]) (refusing to recognize diplomatic immunity of a purported regime official because "the United States has not recognized [Maduro's regime] to be the official government of Venezuela since January 2019"); *Casa Express Corp, as Tr. of Casa Express Trust. v. Bolivarian Republic of Venezuela,* Case No. 1:18-cv-11940-AT (S.D.N.Y. March 22, 2019, ECF No. [16]) (striking memorandum submitted by attorney general of Maduro's illegitimate regime).

Otherwise, the Nation fails to speak "with one voice." *Zivotofsky*, 576 U.S. 1, 14 (quotations omitted). *See also Republic of Panama v. Air Panama Internacional, S.A.*, 745 F. Supp. 669, 674 (S.D. Fla. June 14, 1988) (holding that second-guessing the executive's "recognition would require the Court to conduct foreign policy for the United States in conflict with the

Executive Branch and in breach of the Separation of Powers prescribed by the Constitution"); *The Penza*, 277 F. 91, 92 (E.D.N.Y. 1921) (noting that courts "must follow and may not lead the executive" in the topic of recognition).

To conclude, the only possible avenue to effect service of process under the Hague Convention is through officials of Maduro's illegitimate regime. The Court may not compel Plaintiff to serve Gorrin via the Hague Convention without impliedly affirming their authority to represent and act on behalf of Venezuela. Such a decision would violate the political question doctrine and the separation of powers prescribed by the U.S. Constitution.

**3.      The R&R incorrectly concludes that Plaintiff's request for alternate service via email is "premature."**

Plaintiff maintains that it properly served Gorrin via the Florida Secretary of State and that the Hague Convention is unavailable in this proceeding. If the Court disagrees, or declines to determine the applicability of the Hague Convention, Plaintiff alternatively requests for leave to serve Gorrin via email pursuant to Fed. R. Civ. P. 4(f)(3) to avoid undue delay and to prevent Venezuelan assets from being improperly transferred for pennies on the dollar.

**a.      Rule 4(f)(3) does not require exhaustion of alternate methods of service.**

The R&R concludes that Plaintiff's request for alternate service via email is "premature," recommending that this Court compel Plaintiff to attempt service under the Hague Convention before it grants leave to serve Gorrin via email. ECF No. [180] at 10. But Rule 4(f)(3) "does not require exhaustion of all possible methods of service before a court may authorize service by 'other means,' such as service through counsel and by email." *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420, 429 (1st Cir. 2015) (emphasis in original). Because leave to serve via email is "neither a last resort nor extraordinary relief." *Brookshire Bros. v. Chiquita Brands Int'l, Inc.*, No. 05CIV21962COOKEBROWN, 2007 WL 1577771, at *2 (S.D. Fla. May 31, 2007).

Courts in this District routinely grant leave to serve foreign defendants via e-mail without requiring a prior service attempt under the Hague Convention. *See, e.g., Kipu Sys., LLC v. ZenCharts, LLC*, No. 17-24733-CIV, 2018 WL 8264634, at *2 (S.D. Fla. Mar. 29, 2018) (authorizing alternate service via email where attempting service under the Hague Convention would have unduly delayed the litigation and plaintiff established that "Defendants' email addresses are known and operational"); *Chanel, Inc. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 21-CV-60308-RAR, 2021 WL

1053278, at *1–2 (S.D. Fla. Feb. 9, 2021) (granting motion for alternative service via e-mail on defendants in China, Morocco, and Germany); *Michael Kors, L.L.C. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 20-CV-62455, 2020 WL 8231117, at *1–2 (S.D. Fla. Dec. 4, 2020) (granting motion for alternative service via e-mail on defendants in China, Australia, and Sri Lanka); *Chanel, Inc. v. designerchanelgirl.com*, No. 20-62447-CIV, 2020 WL 8226843, at *1–2 (S.D. Fla. Dec. 2, 2020) (granting motion for alternative service via e-mail on defendants in China and Turkey); *Richemont Int'l SA v. montblanchot.com*, No. 20-CV-61941, 2020 WL 5763931, at *2 (S.D. Fla. Sept. 28, 2020) (concluding that "service by e-mail or internet communication does not violate" the Hague Convention to which the United States, China, Brazil, Czech Republic, India, and UK are all signatories); *MPL Communications Ltd. v. Individuals, Partnerships & Unincorporated Associations Identified on Schedule "A"*, No. 20-CIV-61418-RAR, 2020 WL 6572474, at *1–2 (S.D. Fla. July 17, 2020) (granting motion for alternative service via e-mail on defendants in China and Canada); *Tiffany (NJ) LLC v. Individuals, Partnerships, & Unincorporated Associations Identified on Schedule "A"*, No. 0:20-CV-60299-KMM, 2020 WL 6748785, at *2 (S.D. Fla. Apr. 15, 2020) (granting motion for alternative service via e-mail on defendants in China).

The R&R erred in concluding that an (unsuccessful and futile) attempt to serve Gorrin via the (illegitimate) Central Authority is a prerequisite to authorizing alternate service. The decision to permit service via email "lies within the discretion of the district court." *Louis Vuitton Malletier, S.A. v. louis-vuittononlines.org*, No. 17-CV-61033, 2017 WL 10741870, at *1 (S.D. Fla. May 31, 2017). And the court should authorize alternate service if the movant establishes that "it is not prohibited by international agreement and is reasonably calculated to give notice to the defendants." *Astrove v. Doe*, No. 22-CV-80614-RAR, 2022 WL 4594180, at *1 (S.D. Fla. May 31, 2022). The R&R fails to address the applicable standard. This was error.

### i.   Service via email is not prohibited by an international agreement.

First, service via e-mail is not prohibited by an international agreement. While Venezuela has objected to service via "postal channels" under Article 10 of the Hague Convention, it has not specifically objected to service via e-mail. *Stat Med. Devices, Inc. v. HTL-Strefa, Inc.*, No. 15-20590-CIV, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2015) (holding that "an objection to Article 10 of the Hague Convention, i.e. an objection to service through 'postal channels' does not equate to an express objection to service via electronic mail"); *Cf. Stat Med. Devices, Inc. v. HTL-*

*Strefa, Inc.*, No. 15-20590, 2015 WL 5320947, at *3 (S.D. Fla. Sept. 14, 2015) (noting that an objection to the alternative forms of service set forth in the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 658 U.N.T.S. 16, is limited to the specific forms of service objected to). Therefore, authorizing Plaintiff to serve Gorrin via e-mail would not violate an international agreement. *Id*.

ii.     **Service via email is reasonably calculated to give notice Gorrin.**

Second, the email address rgrrn@me.com is reasonably calculated to give notice of service to Gorrin. The numerous emails attached to Plaintiff's response in opposition to the motion to dismiss establish that the address rgrrn@me.com is operational. ECF No. [159-2]. They also establish that the address rgrrn@me.com is reasonably calculated to provide notice to Gorrin (indeed, his own counsel uses the address to notify Gorrin of every single docket entry in this matter). The Impleaded Defendants do not dispute these facts.

For these reasons, Plaintiff respectfully requests that the Court reject the R&R's recommendation to require service via the Hague Convention before authorizing Plaintiff's request for alternate service via email. Instead, the Court should grant Plaintiff leave to serve Gorrin via email because it is not "prohibited by international agreement and is reasonably calculated to give notice to [Gorrin]." *Astrove,* 2022 WL 4594180, at *1.

b.  **Service via email is appropriate to avoid undue delay in litigation.**

The Court should not require Plaintiff to attempt serving Gorrin through the illegitimate Central Authority as a prerequisite to service via email because such attempt would be an exercise in futility. It is well-established that Maduro's illegitimate Central Authority refuses to "accept any service packages coming from the United States." *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of Venezuela*, No. 1:19-CV-0683 (CJN), 2022 WL 3576193, at *5 (D.D.C. Aug. 19, 2022).

In fact, Plaintiff could not find a single instance where Maduro's illegitimate Central Authority provided a certificate of service within the last three years. Instead, litigants mail the required documents to the Maduro officials, wait for several months without response, and then seek leave for alternate service because the illegitimate Central Authority fails to issue the certificate. *Osio v. Moros*, No. 1:21-CV-20706, 2022 WL 17583631, at *3 (S.D. Fla. Sept. 26, 2022) (waiting more than "six months" attempting to effect international service with Maduro's illegitimate central authority"); *ConocoPhillips Petrozuata B.V. v. Bolivarian Republic of*

*Venezuela*, No. 1:19-CV-0683 (CJN), 2022 WL 3576193, at *5 (D.D.C. Aug. 19, 2022) (more than a year passed after plaintiff mailed "everything necessary for the completion of service under the Hague Service Convention" but Maduro's illegitimate central authority did "not certified their receipt of service") *Isaac Indus., Inc. v. Petroquimica de Venezuela, S.A.*, No. 1:19-CV-23113, 2021 WL 3907803, at *2 (S.D. Fla. Sept. 1, 2021) (concluding that service "under the Hague Convention cannot be made [in Venezuela]" because plaintiff completed all the necessary steps to effect service but more "twenty-one (21) months" elapsed "without confirmation from [Maduro's] Central Authority").

The Impleaded Defendants recognize that service via email is appropriate to prevent "unduly long delays in litigation." ECF No. [169] at 7 (internal quotation omitted). Yet the guaranteed outcome of requiring Plaintiff to attempt service on Gorrin via the Hague Convention is to unnecessarily delay this proceeding while Gorrin continues to defend his interests through his controlled-entities.

Plaintiff submits that such an undue delay is not warranted in this proceeding. *Mystique, Inc. v. 138 Int'l, Inc.*, No. 07-22937-CIV, 2010 WL 3008809, at *4 (S.D. Fla. July 28, 2010), *report and recommendation adopted*, No. 10-21421-CIV, 2010 WL 4316957 (S.D. Fla. Oct. 26, 2010) (providing that supplementary proceedings are intended to afford judgment creditors "a swift, summary disposition of issues through the relief of equitable remedies") (internal quotation omitted).

Especially considering that other creditors are attempting to execute the same Venezuelan properties that are the subject of this action presenting additional extenuating circumstances. Indeed, Impleaded Defendants Fisher Isl. 7043, LLC and Collins Apt. 4401, LLC (collectively "Caballero Entities") recently obtained title to two Venezuelan properties for pennies on the dollars in a related action that is being litigated in this District.

### c. The Court should not condone the Impleaded Defendants delay tactics.

Finally, the Court should authorize service via email to avoid condoning the delay tactics employed by the Impleaded Defendants. As the Court knows, on June 7, 2022, Plaintiff moved for leave to amend to, *inter alia*, incorporate jurisdictional allegations that would allow it to effect substitute service of process on Gorrin via the Florida Secretary of State. Although the proposed amendment did not include any additional allegations relating to the Gorrin Entities, they vehemently opposed Plaintiff's motion to protect their owner, Gorrin, from being served with

process. Ultimately, the Court rejected the Gorrin Entities' efforts and granted Plaintiff leave to amend.

After Plaintiff filed its amended pleading, Gorrin's counsel conveniently volunteered to provide Plaintiff with the most-wanted fugitive's home address in Venezuela. ECF No. [128-2] at 1. Why? Because they knew that Hague Convention would not apply if the address of the person to be served is unknown. *See* ECF No. [169] at 7 (Impleaded Defendants' concession that the Hague Convention does not apply "where the defendant's foreign address is unknown") (internal quotation omitted).

So after unsuccessfully opposing Plaintiff's request for leave to amend to protect Gorrin from being served, and recognizing that the service of Gorrin via the Florida Secretary of State was imminent, they concocted a new strategy to unduly delay the adjudication of Plaintiff's claims on the merits: Plaintiff must serve Gorrin via the Hague Convention because we offered to disclose the most-wanted fugitive's current address. *See, e.g.*, ECF No. [128] at 2 ("Plaintiff fails to note that the Hague Service Convention is in effect between the United States and Venezuela and the undersigned counsel has expressly offered to provide Plaintiff's counsel with 'a current address for Gorrin Belisario'"); *id.* at 7 ("Gorrin's counsel have offered to provide Gorrin's address to Plaintiff's counsel, but Plaintiff's counsel have not even asked for Gorrin's address").

To be clear, Plaintiff could not have independently discovered the most-wanted fugitive's address through the exercise of reasonable diligence, rendering the Hague Convention inapplicable at the time the Amended Motion was filed. The Impleaded Defendants attempt to argue otherwise by citing a tweet posted in 2018 from a purported journalist, claiming that Gorrin acquired certain real property in Venezuela. ECF No. [128] at 10. Their argument is unpersuasive.

First, it is unreasonable to expect that Plaintiff should have discovered a tweet posted by a random journalist in 2018, just because it mentions Gorrin. Indeed, Plaintiff would have had to scroll through literally thousands of tweets posted after 2018 that mention most-wanted fugitive Gorrin just to find the tweet. This is patently unreasonable.

Second, the tweet does not indicate that Gorrin resides in the property, just that he purportedly acquired it. So even taken at face value, the tweet does not provide Plaintiff with Gorrin's residential address. And assuming that the tweet did indicate that Gorrin resides in the property (it does not), it would have only provided Plaintiff with Gorrin's address as of November

of 2018 (*i.e.*, before he was indicted and designated a most-wanted fugitive searched by U.S. federal authorities).

For these reasons, Plaintiff submits that the Court should reject the R&R's recommendation to require service via the illegitimate Hague Convention as a prerequisite to alternate service to avoid endorsing the delay tactics employed by the Impleaded Defendants.

**4.    The Court possesses personal jurisdiction over Gorrin.**

The Court should not consider the motion to dismiss asserting lack of personal jurisdiction because it is untimely as a matter of law. *See supra* Section II(1). Alternatively, assuming that the Court decides to entertain the merits of the untimely motion (it should not), the Court should reject the R&R's incorrect conclusion that the Amended Motion's allegations "are insufficient to support the Court's assertion of specific personal jurisdiction over Gorrin." ECF No. [180] at 12.

A court must conduct a two-part inquiry when deciding the issue of personal jurisdiction. *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623 (11th Cir. 1996). First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied. *Id.* at 626. Second, if the requirements of the long-arm statute are satisfied, then the court must also consider the federal Due Process Clause. *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250-51 (11th Cir. 2000).

Courts consider three factors to determine whether exercising specific personal jurisdiction over a foreign defendant comports with due process: "(1) defendant's purposeful availment of the forum state; (2) the cause of action arising out of the activities of which the defendant purposefully availed himself; and (3) reasonable foreseeability of the defendant being haled into court in the forum state." *See id.* (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

**a.  The Amended Motion satisfies Florida's long-arm statute.**

Plaintiff submits that the Amended Motion satisfies two prongs under Florida's long-arm statute:

1.  Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state.
2.  Committing a tortious act within this state.

Fla. Stat. § 48.193(1)(a)(1)-(2).

i. **Committing a tortious act within the state.**

The R&R concludes that Plaintiff "has not met its burden of alleging or presenting 'sufficient facts to make out a prima facia case' of specific personal jurisdiction over Gorrin." ECF No. [180] at 11. Respectfully, this is incorrect.

The Amended Motion alleges that Gorrin committed the tortious act of wrongfully participating in a breach of trust by making bribe payments to Andrade Cedeno and Diaz Guillen with knowledge that a breach of trust was being committed. ECF No. [60] at 16 (alleging that Gorrin "wrongfully participat[ed] in the breach of trust because he committed an overt act in furtherance of the breach of trust (*i.e.*, the bribe payments), with knowledge that he a breach of trust was being committed"); *see also Centrust Sav. Bank v. Barnett Banks Trust Co.,* N.A., 483 So.2d 867, 869 (Fla. 5th DCA 1986) ("The wrong of [sic] participation in a breach of trust has two elements: (1) An act or omission which furthers or completes the breach of trust by the trustee; and (2) knowledge at the time that a breach of trust was occurring or the legal equivalent of such knowledge").

The Superseding Indictment, attached to the Amended Motion[2], links Gorrin's bribe payments to Andrade Cedeno and Diaz Guillen to the Southern District of Florida:

| Superseding Indictment | Overt Acts Linking Gorrin's Bribe Payments to Florida |
|---|---|
| ECF No. [60-12] at 11 ¶ 2 | Gorrin "met with Alejandro Andrade Cedeno in the Southern District Court of Florida to discuss the payment of bribes." |
| ECF No. [60-12] at 11 ¶ 5 | Gorrin wired "$4.35 million" to a yacht company's bank account in the Southern District of Florida purchase a yacht for the benefit of Diaz Guillen and her husband. |
| ECF No. [60-12] at 12 ¶ 8 | Gorrin wired "approximately $15,000" to Andrade Cedeno's bank account in the Southern District of Florida to pay for certain veterinary services. |
| ECF No. [60-12] at 12 ¶ 10 | Gorrin wired "$1,103,371" to Andrade Cedeno's bank account in the Southern District of Florida to pay for certain security system. |
| ECF No. [60-12] at 12-13 ¶ 10 | Gorrin wired "$150,000" to Andrade Cedeno's bank account in the Southern District of Florida to pay for horse-related expenses. |
| ECF No. [60-12] at 13 ¶ 17 | Gorrin wired an additional "$281,951" to the yacht company's bank account in the Southern District of Florida for the yacht he acquired for Diaz Guillen and her husband. |

---

[2]     Fla. R. Civ. P. 1.130(b) ("Any exhibit attached to a pleading must be considered a part thereof <u>for all purposes</u>") (emphasis added).

| ECF No. [60-12] at 13 ¶ 18 | Gorrin wired "$4 million" to a fashion company's bank account located in the Southern District of Florida owned by Diaz Guillen. |
| ECF No. [60-12] at 14 ¶ 20 | Gorrin wired "$117,087.15" to a home improvement company's bank account in the Southern District of Florida to pay for renovation to Andrade Cedeno's South Florida home. |

After entry of the R&R, Magistrate Judge Otazo-Reyes stroke from Gorrin's affidavit his improper denial of the allegations lodged against him in Superseding Indictment under the Fugitive Disentitlement Doctrine. ECF No. [184]. So the Court "<u>must</u> accept the facts alleged in the complaint as true [because] they are uncontroverted by the defendant's affidavit." *Millennium Funding, Inc. v. 1701 Mgmt. LLC,* 576 F. Supp. 3d 1192, 1199 (S.D. Fla. 2021) (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990); emphasis added).

For this reason, Plaintiff submits that the Amended Motion, inclusive of its exhibits, satisfies Florida's long-arm statute by pleading that Gorrin committed a tortious act within the State of Florida. The allegations regarding Gorrin's bribes involving the commission of tortious act within the State are sufficient, by themselves, to satisfy the Florida's long-arm statute. Fla. Stat. § 48.193(1)(a)(2). Therefore, the Court should exercise specific personal jurisdiction over Gorrin as long as it comports with due process (it does).

### ii. Conducting a business within the state.

The Amended Motion also alleges that Gorrin conducted a business in compliance with Fla. Stat. § 48.193(1)(a)(1). The R&R concludes otherwise. ECF No. [180] at 11. According to the R&R, the Amended Motion makes "vague and conclusory" allegations "without any factual support to connect [Gorrin] with the real estate activities of the [Gorrin Entities]." *Id.* This conclusion is flawed for three reasons.

First, the R&R incorrectly challenges Plaintiff's factual allegation that Gorrin operated a real estate venture through the Gorrin Entities in the State of Florida. ECF No. [180] at 11. But a district court "<u>must</u> accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavit. *Millennium Funding, Inc. v. 1701 Mgmt. LLC,* 576 F. Supp. 3d 1192, 1199 (S.D. Fla. 2021) (quoting *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir. 1990); emphasis added). Neither Gorrin nor the Gorrin Entities challenged Plaintiff's real estate venture allegation in their affidavits. ECF No. [127-1]; ECF No. [127-2]. Therefore, the Court must accept the Amended Motion's allegation that Gorrin operated a real estate venture through

the Gorrin Entities in Florida as an uncontroverted fact for purposes of determining personal jurisdiction over Gorrin.

Second, even if the Impleaded Defendants' affidavits challenged Gorrin participation in the real estate venture (they do not), the Amended Motion alleges sufficient "factual support to connect [Gorrin] with the real estate activities of the [Gorrin Entities]." ECF No. [180] at 11. The R&R's conclusion to the contrary fails to consider several exhibits to the Amended Motion that conclusively prove Gorrin's participation in the real estate venture of the Gorrin Entities:

| Exhibit | Activity Linking Gorrin to the Real Estate Venture |
|---------|---------------------------------------------------|
| ECF No. [60-16] at 4-5 | Correspondence from the Island of Cocoplum Condominium Homeowners Association, Inc. approving Gorrin's application for ownership membership that he filed on behalf of RIM Group Investment III Corp, noting that the "approval is only for the individuals named in the application." |
| ECF No. [60-20] | Quit Claim Deed executed by Gorrin transferring title of the Venezuelan property located at 4100 Salzedo St., Unit 608, Coral Gables, Florida 33146 from a Gorrin-controlled entity to RIM Group Investments I, Corp. |
| ECF No. [60-21] | Quit Claim Deed executed by Gorrin as "President and Secretary" of RIM Group Investments, Corp. transferring title of the Venezuelan property located 4100 Salzedo St., Unit 807, Coral Gables, Florida 33146 to RIM Group Investments I, Corp. |
| ECF No. [60-22] | Quit Claim Deed executed by Gorrin transferring title of the Venezuelan property located at 4100 Salzedo St., Unit 813, Coral Gables, Florida 33146 from a Gorrin-controlled entity to RIM Group Investments II, Corp. |
| ECF No. [60-23] | Quit Claim Deed executed by Gorrin as "President and Secretary" of RIM Group Investments, Corp. transferring title of the Venezuelan property located 4100 Salzedo St., Unit 913, Coral Gables, Florida 33146 to RIM Group Investments I, Corp. |

Finally, the R&R fails to consider the applicable pleading standard when effecting service under Florida's substituted service statute:

> When service of process is to be made under statutes authorizing service on nonresidents of Florida, it is sufficient to plead the basis for service in the language of the statute without pleading the facts supporting service.

Fla. R. Civ. P. 1.070(h) (emphasis added). If the Court holds that Plaintiff properly served Gorrin pursuant to Fla. Stat. § 48.181 (it should), then Plaintiff satisfies its prima facie jurisdictional burden by merely pleading the language of the statute without alleging "any factual support to connect [Gorrin] with the real estate activities." ECF No. [180] at 11. *See also id.* (recognizing that

the Amended Motion alleges that "'Gorrin operated conducted, engaged in, or carried on a business venture in Florida") (quoting ECF No. [60] at ¶ 34).

    **iii.**    **Connectivity between Gorrin's real estate venture in Florida and the cause of action.**

According to the R&R, the Amended Motion fails to plead a link "between the Properties and the alleged use of Venezuelan misappropriated funds to purchase them." ECF No. [180] at 12. This conclusion is flawed for two reasons.

First, the R&R applies the incorrect standard. When deciding personal jurisdiction, "[t]he appropriate inquiry is whether the tort *as alleged* occurred *in Florida*, and not whether the alleged tort *actually* occurred." *Walter Lorenz Surgical, Inc. v. Teague*, 721 So. 2d 358, 359 (Fla. 1st DCA 1998) (emphasis in original). *See also*, *Brennan v. Roman Cath. Diocese of Syracuse New York, Inc.*, 322 F. App'x 852, 855 (11th Cir. 2009) (holding that "a motion to dismiss a tort claim for lack of personal jurisdiction under Florida's Long–Arm Statute does not require a full-scale inquiry into whether the defendant committed a tort. Instead, when a plaintiff alleges a claim, and the record is in dispute as to the accuracy of the claim, we can construe the facts in the light most favorable to the plaintiff and hold that the alleged claim satisfies Florida's Long–Arm Statute.") (applying Florida).

The Amended Motion unequivocally *alleges* that Gorrin used misappropriated Venezuelan funds to acquire the real properties in Florida. *See, e.g.,* ECF No. [60] at 8 (alleging that "Gorrin Invested The Misappropriated Venezuelan Funds In Real Properties Through Shell Entities To Obfuscate His Beneficial Ownership Of The Assets"); *id.* at 15 ("Gorrin misappropriated and retained hundreds of millions of dollars of sovereign funds at the expense of Venezuela. He then used the sovereign funds to purchase (through shell entities) the real properties which Casa Express seeks to execute"). It also attaches an expert report tracing the misappropriated Venezuelan funds to the real properties. ECF No. [60-14] at ¶ 27 (concluding that the "properties were acquired using misappropriated Venezuelan funds.").

Yet the R&R inexplicably finds that "a necessary link in the chain between the Properties and the alleged use of Venezuelan misappropriated funds to purchase them remains open." ECF No. [180] at 12. The R&R's analysis incorrectly focuses on whether Plaintiff *proved* that misappropriated Venezuelan were *actually* used to buy the real properties as opposed to whether Plaintiff properly *alleged* that misappropriated funds were used to buy the properties. According to the R&R, Plaintiff must *prove* the merits of its case at the pleading stage for this Court to

properly exercise personal jurisdiction over Gorrin. This is incorrect. *Brennan*, 322 F. App'x at 855.

Second, the R&R incorrectly considers Gorrin's conclusory affidavit as a proper challenge to personal jurisdiction. It is well-established that a defendant may challenge personal jurisdiction "by submitting affidavit evidence in support of its position, [and] the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Madara v. Hall,* 916 F.2d 1510, 1514 (11th Cir.1990). But the burden does not shift back to plaintiff when "the defendant's affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). To shift the burden back to the plaintiff, a defendant's affidavit must contain "specific factual declarations within the affiant's personal knowledge." *Id.* at 1351.

In this case, Gorrin submitted a wholly conclusory and self-serving affidavit that is insufficient to present a meritorious challenge to personal jurisdiction:

> I deny the allegations in the press release (D.E. 60-5) and the Expert Report of Nelson Luis (D.E. 60-14) referenced in and attached to Casa Express's Ex Parte Expedited Motion (D.E. 60).

ECF No. [127-2] at ¶ 3. The affidavit does not contain *any* factual declarations that could properly challenge the personal jurisdictional allegations in the Amended Motion. Therefore, the Court "<u>must</u> accept the facts alleged in the complaint as true [because] they are uncontroverted by the defendant's [conclusory] affidavit." *Millennium*, 576 F. Supp. 3d at 1199 (quotation omitted).

Assuming *arguendo* that "I deny" constitutes a sufficient challenge to personal jurisdiction (it does not), the district court must construe all reasonable inferences in favor of the plaintiff when the "plaintiff's complaint and the defendants' affidavit conflict." *Millennium*, 576 F. Supp. 3d at 1199. Here, the R&R construes all reasonable inferences *against* Plaintiff, even to the point of attacking the competency of the report submitted by its expert. This is error. *Id*.

In sum, the Amended Motion satisfies Florida's long-arm statute by alleging a claim against Gorrin (wrongful participation in a breach of trust) directly related to a tortious act he committed in Florida (making bribe payments to bank accounts located in the Southern District of Florida). It also satisfies Florida's long-arm statute by alleging that Gorrin operated a business within the state (the real estate venture) that is directly linked to Plaintiff's claim (using misappropriated Venezuelan funds to acquire the properties that form the basis of his business).

Therefore, the Court should exercise specific personal jurisdiction over Gorrin as long as it comports with due process.

> **b. Exercising personal jurisdiction over Gorrin comports with due process.**

The R&R fails to consider whether exercising personal jurisdiction over Gorrin comports with due process. The court must consider three factors to determine whether exercising specific personal jurisdiction over a foreign defendant comports with due process: "(1) whether the plaintiff's claims 'arise out of or relate to' at least one of the defendant's contacts with the forum; (2) whether the nonresident defendant 'purposefully availed' himself of the privilege of conducting activities within the forum state, thus invoking the benefit of the forum state's laws; and (3) whether the exercise of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" *Future Tech.,* 218 F.3d at 1250-51 (quoting *Burger King,* 471 U.S. at 472–73).

Plaintiff submits that exercising personal jurisdiction over Gorrin comports with due process. First, Plaintiff's claims "arise out of" Gorrin's contacts with the state (*i.e.*, paying bribes to accounts in the Southern District of Florida and using misappropriated Venezuelan funds to purchase the real properties). Second, Gorrin purposefully availed himself of the privilege of operating a real estate venture in this state by purchasing and renting eight real properties to generate monthly cashflow. Finally, exercising personal jurisdiction over Gorrin comports with "fair play and substantial justice" because litigating in Florida does not place a burden on Gorrin (he is actively litigating another case in this District). Florida also has a strong interest in hearing the case because the properties are located within its boundaries. Plaintiff has an interest in litigating the case in its chosen forum. Finally, the judiciary has an interest in efficiently resolving the dispute in this forum where it has been long pending.

Therefore, the exercising personal jurisdiction over Gorrin comports with due process.

**5. The Court possesses personal jurisdiction over the Gorrin Entities.**

The Gorrin Entities also joined in the personal jurisdiction challenge. The RIM Entities[3] voluntarily withdrew their challenge to personal jurisdiction after Plaintiff filed its response in opposition to the Motion. Planet 2 Reaching, Inc. and Posh 8 Dynamic, Inc. maintained their challenge to personal jurisdiction.

---

[3]      "RIM Entities" refers to RIM Group Investments Inc., RIM Group Investments I Inc., RIM Group Investments II Inc., RIM Group Investments III Inc.

Magistrate Judge Otazo-Reyes addressed their challenge to personal jurisdiction in a separate Report and Recommendation, ECF No. [181], correctly concluding that their challenge to personal jurisdiction should be stricken as "waived." ECF No. [181] at 8. Plaintiff submits that the Court should adopt Magistrate Judge Otazo-Reyes's recommendation and strike their waived personal jurisdiction defense.

## III.    CONCLUSION

The Court should reject the R&R's consideration of the Impleaded Defendants' untimely motion to dismiss. The law is clear: If you file a responsive pleading, you waive your right to file a motion to dismiss asserting 12(b) defenses. That is what happened here. The Impleaded Defendants filed their responsive pleading, ECF No. [127], before their motion to dismiss, ECF No. [128]. Accordingly, the motion to dismiss is untimely as a matter of law – and must be denied.

The Court should limit its consideration of the motion to the relief pled in the alternative by Gorrin, which seeks to quash service of process.

Plaintiff respectfully submits that the Court should adopt the R&R's findings that Plaintiff complied with Florida's substitute service statutes in effecting service of process over Gorrin via the Florida Secretary of State.

The Court should reject the R&R's recommendation requiring re-service of Gorrin under the Hague Convention. The Hague Convention is unavailable to serve Gorrin because the recognized government of Venezuela has not designated a Central Authority to process service requests as required under the treaty. In addition, the Court should reject the R&R's recommendation to avoid recognizing the authority of illegitimate officials appointed by a derecognized regime in violation of the political question doctrine and the separations of powers prescribed by the U.S. Constitution.

Alternatively, Plaintiff requests that the Court reject the R&R's conclusion that granting leave to serve Gorrin via email is premature. Rule 4(f)(3) does not require exhaustion of alternative methods of service. Courts have broad discretion to grant service via email if it is not prohibited by an international agreement and is reasonably calculated to provide notice to the defendant. In this case, Plaintiff satisfies both elements and submits that leave to serve Gorrin via email should be granted.

Moreover, the Impleaded Defendants concede that service via email is proper to avoid undue delays in litigation – which is an inevitable consequence of requiring Plaintiff to attempt re-

service of Gorrin via the illegitimate Central Authority. It is well-established that the illegitimate Central Authority refuses to accept international service requests from the United States. In fact, neither Plaintiff nor the Impleaded Defendants have been able to find a single instance where the illegitimate Central Authority issued a certificate of service within the last three years. Because it does not exist.

The Impleaded Defendants seek to unduly delay the adjudication of Plaintiff's claims on the merits. They manifested their intent when they conveniently volunteered the most-wanted fugitive's address after realizing that service of Gorrin via the Florida Secretary of State was imminent. Only to subsequently argue that the Hague Convention superseded Florida's service statute by virtue of their offer to volunteer Gorrin's address. The Court should not condone the delay tactics employed by the Impleaded Defendants.

For the foregoing reasons, Plaintiff submits that the Court should enter an Order holding that Plaintiff properly served Gorrin via the Florida Secretary of State. Alternatively, the Court should enter an Order granting Plaintiff leave to serve Gorrin via email pursuant to Fed. R. Civ. P. 4(f)(3).

As to personal jurisdiction, Plaintiff maintains that it should not be considered because the motion to dismiss was untimely as a matter of law. In the event the Court entertains the arguments (it should not), Plaintiff respectfully requests that the Court should reject the R&R's conclusion that Plaintiff failed to plead a prima facia case of personal jurisdiction over Gorrin.

The Amended Motion contains sufficient allegations to satisfy Florida's long-arm statute. In addition, exercising personal jurisdiction over Gorrin comports with due process.  Finally, the Court possesses jurisdiction over Planet 2 Reaching, Inc. and Posh 8 Dynamic, Inc. and should strike their waived challenge to personal jurisdiction, as recommended by Magistrate Judge Otazo-Reyes in a separate report and recommendation.

Finally, the Court should adopt the R&R's conclusion that the Office of Foreign Assets Control ("OFAC") regarding blocked properties are not dispositive at this juncture considering that OFAC's own licensing officer overseeing Plaintiff's license application indicated that this litigation does "not appear to require a license from OFAC." ECF No. [180] at 6 n. 7 (quoting ECF No. [50-2] at 2).

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 2, 2023, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system.

By:  <u>/s/ *Andres Gamardo*          </u>
        Andres Gamardo, Esq.

Dated: May 2, 2023                Respectfully submitted,

                        **GAMARDO, P.A.**
                        1200 Brickell Avenue, Suite 750
                        Miami, Florida 33131
                        Tel: (305)542-6626

                        <u>/s/ *Andres Gamardo*        </u>
                        Andres Gamardo, Esq.
                        Florida Bar No.: 1021165
                        Email: agamardo@gamardolaw.com
                        *Attorney for Plaintiff*