# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 21-cv-23103-BB

CASA EXPRESS CORP, as Trustee of
CASA EXPRESS TRUST,

        Judgment Creditor,

  vs.

BOLIVARIAN REPUBLIC OF
VENEZUELA,

        Judgment Debtor.

_____/

**RESPONDENTS' RESPONSE IN OPPOSITION TO [ECF NO. 276] PLAINTIFF'S OBJECTIONS TO [ECF NO. 262] REPORT AND RECOMMENDATION**

        Respectfully submitted,

        */s/Lisandra Guerrero*
        Howard Srebnick (FL Bar No. 919063)
        Lisandra Guerrero (FL Bar No. 98521)
        **BLACK SREBNICK**
        201 South Biscayne Boulevard, Suite 1300
        Miami, Florida 33131
        Tel. (305) 371-6421
        E-mail: HSrebnick@RoyBlack.com
        LGuerrero@RoyBlack.com

        */s/ Robert T. Dunlap*
        Robert T. Dunlap (FL Bar No. 119509)
        Freedman Normand Friedland LLP
        1 SE 3rd Avenue, Suite 1250
        Miami, FL 33131
        Tel: (786) 924-2900
        rdunlap@fnf.law

        *Counsel for Respondents*

**PRELIMINARY STATEMENT**

Casa obtained a money judgment against Venezuela in the Southern District of New York as a result of unpaid Venezuelan bonds issued to it in 1998 and 2002.[1] ECF Nos. 1 and 60 at ¶ 1. Neither Respondents nor their Florida Properties[2] were involved, or even mentioned, in the bond dispute. Nevertheless, Casa initiated these proceedings supplementary to satisfy its monetary judgment against Venezuela by targeting the Respondents' unrelated Properties. To do so, Casa seeks to usurp the role of its litigation adversary and judgment debtor – Venezuela – in order to prosecute an entirely new case against Respondents (purportedly on Venezuela's behalf) in which Casa seeks the imposition of a "constructive trust" over Respondents' Properties by claiming, without any factual basis, that they were purchased with the proceeds of official government contracts awarded as part of an "illicit and corrupt currency exchange scheme." ECF No. 60 (the "Amended Motion").

Magistrate Judge Otazo-Reyes recommended that Respondents'[3] Motion for Judgment on the Pleadings, (ECF No. 232), be granted on the following five grounds, each of which is independently dispositive of this case: (1) Casa lacks a viable constructive trust theory for failure to sufficiently allege a link between the Properties and the alleged misappropriated Venezuelan funds used to purchase them and its own allegation refute the existence of any such link (ECF No. 262 ("R&R") at 13); (2) Casa's claims are barred by the act of state doctrine because its constructive trust claim requires a finding that the Properties are derived from misappropriated Venezuelan obtained through illegitimate currency exchange contracts awarded by Venezuelan Treasurers, (*Id*. at 19-20); (3) Respondents' Properties are immune from attachment and execution

---

[1] *See Casa Express Corp., as Tr. of Casa Express Trust v. Bolivarian Republic of Venezuela*, Case No. 1:18-cv-11940-AT, (S.D.N.Y. Oct. 16, 2020, D.E. 83).

[2] The Properties are: (1) 144 Isla Dorada Boulevard, Coral Gables, Florida 33143; (2) 4100 Salzedo Street, Unit 1010, Coral Gables, Florida 33146; (3) 4100 Salzedo Street, Unit 608, Coral Gables, Florida 33146; (4) 4100 Salzedo Street, Unit 807, Coral Gables, Florida 33146; (5) 4100 Salzedo Street, Unit 813, Coral Gables, Florida 33146; (6) 4100 Salzedo Street, Unit 913, Coral Gables, Florida 33146; (7) 18555 Collins Avenue, Unit 4401, Sunny Isles Beach, Florida 33160; and (8) 7043 Fisher Island Dr., Unit 7043, Fisher Island, Florida 33109 (together, the "Properties").

[3] The "Respondents" are Raul Gorrin Belisario ("Gorrin"), RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group Investments II Corp., RIM Group Investments III Corp., Posh 8 Dynamic Inc., and Planet 2 Reaching Inc. The "Respondent Entities" are RIM Group Investments Corp., RIM Group Investments I Corp., RIM Group Investments II Corp., RIM Group Investments III Corp., Posh 8 Dynamic Inc., and Planet 2 Reaching Inc.

under the FSIA because they have never been used for commercial activity by Venezuela and there has been no waiver of FSIA immunity by Venezuela in this lawsuit (*Id*. at 16-17); (4) Casa lacks standing to seize a foreign nation's potential cause of action and sue its debtors, and lacks an assignment of any such claim (*Id*. at 14-15); and (5) ancillary jurisdiction does not extend to these proceedings because Casa has instituted a new lawsuit seeking to execute upon Respondents' Properties, and thus hold Respondents liable, for Casa's unrelated bond judgment against third-party Venezuela (*Id*. at 20-21). Magistrate Judge Otazo-Reyes also recommended that Gorrin's Motion for Judgment on the Pleadings, (ECF No. 231), be granted for lack of personal jurisdiction. R&R at 9.

Casa's lodges improper Objections to the R&R by repeating its previously rejected arguments, seeking to introduce new unauthenticated documents not previously submitted for Judge Otazo-Reyes' consideration, and belatedly requesting leave to amend in an attempt to correct its pleading deficiencies.[4] Casa's Objections should be rejected, and Judge Otazo-Reyes' recommendations should be adopted, such that this Court should enter judgment on the pleadings in favor of the Respondents.

---

[4] Casa objects to Judge Otazo-Reyes' only holding against the Respondents that Respondents are not entitled to judgment on the pleadings with respect to their OFAC regulations affirmative defense because of the potential issurance of an OFAC license in the future on the basis that Judge Otazo-Reyes held it is "undisputed that the Properties are blocked by OFAC." Obj. at 22. Casa claims the Fisher Island and Collins Avenue Properties are no longer blocked since they are currently being held by entities that have never been designated by OFAC. *Id*. First, the failed efforts by another judgment creditor (Antonio Caballero) to execute upon the properties were invalidated by Judge Moore, who later granted summary judgment in favor of the Respondents in that action on the merits. *See Caballero v. FARC*, 2023 WL 5437222 (S.D. Fla. Aug. 21, 2023), appeal filed, (August 22, 2023). Thus, they could not have unblocked the Properties as Casa claims. Moreover, only OFAC can authorize the unblocking of blocked property; it has not done so with respect to these properties; and no transfers have taken place under the only applicable OFAC license (License No. VENEZUELA-EO13850-2019-359725-5). *See Zamach Oil Services, Inc. v. U.S. Dept. of Treasury*, 750 F.Supp.2d 150, 157 (D.D.C. 2010) (OFAC regulations "contain no provision by which the efforts of a sanctions target and a company it wishes to do business with can, on their own, 'un-block' assets frozen by OFAC;" "Once blocked, the assets cannot be transferred except pursuant to an OFAC license."); *OKKO Business PE v. Lew*, 133 F.Supp.3d 17, 27 (D.D.C. 2015) (IEEPA statute and "regulations provide only one method by which the UEB's interest in the funds may be extinguished: a valid license from OFAC").

## ARGUMENT

**A. Casa's Amended Motion Fails to Allege a Viable Constructive Trust Theory.**

It is undisputed that, in order to satisfy its pleading burden on its constructive trust claim, Casa must sufficiently allege a link between the alleged misappropriated Venezuelan funds and the Respondents' Properties. *Bender v. CenTrust Mortg. Corp.*, 51 F.3d 1027, 1030 (11th Cir.), *opinion modified on denial of reh'g,* 60 F.3d 1507 (11th Cir. 1995) ("This specific property must be the subject of the inequitable transaction."). In fact, Casa expressly alleges, in its Amended Motion, that the Court can impose a constructive trust over the Properties "*as long as* they are 'directly or indirectly' traceable to the misappropriated funds." ECF No. 60 at 16 (emphasis added).

Judge Otazo-Reyes held – *three times* – that such a link is missing. ECF No. 181 at 6 ("[A] necessary link in the chain between the Properties and the alleged use of Venezuelan misappropriated funds to purchase them remains open."); ECF No. 241 at 8 ("As the undersigned has already found, a necessary link in the chain between the Properties and the alleged use of Venezuelan misappropriated funds to purchase them remains open," which constitutes an "absence of essential proof" such that "Casa Express cannot show that it has a 'good faith, viable [constructive trust] claim.'"); R&R at 10 ("Casa Express still fails to link any of these bribe-related overt acts to the Properties over which it seeks to impose a constructive trust in these proceedings supplementary."); *Id*. at 13 ("Casa Express has once again failed to establish this necessary link in the personal jurisdiction context."). And Judge Otazo-Reyes recommended that judgment on the pleadings be entered in favor of all Respondents on the merits of Casa's constructive trust theory for "fail[ure] to provide a factual basis for the necessary link between misappropriated Venezuelan funds and the Properties." *Id*. at 14. Casa argues that the R&R erred by: (1) failing to "accept as true" the conclusory allegations in its Amended Motion, and (2) discrediting its expert's flawed interpretation of the Superseding Indictment. Obj. at 5. Both objections are without merit.

First, the allegations in Casa's Amended Motion, in which Casa enumerates the Properties and recites that each was purchased "with misappropriated Venezuelan funds," (Obj. at 4-5 (quoting Amended Motion at 21-24)), are "mere conclusions, . . . not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Courts "are not bound to accept as true a legal conclusion couched as a factual

allegation."). These "vague and conclusory allegations do not satisfy Casa Express' initial pleading burden." ECF No. 180 at 11 (internal quotations omitted).[5]

Moreover, the Amended Motion and the Luis Expert Report on which it relies, are also insufficient and actually contradict the existence of any link between the Properties and the claimed conduct. *See Llauro v. Tony*, 470 F. Supp. 3d 1300, 1314 (S.D. Fla. 2020) ("[W]hen exhiits attached to a complaint 'contradict the general and conclusory allegations of the pleading, the exhibits govern.'"). The Luis Expert Report notes the inclusion of eight Properties in the forfeiture section of the Superseding Indictment in *U.S. v. Gorrin Belisario*, S.D. Fla. No. 18-cr-80160-WPD. ECF 60-14 at ¶ 25. While Mr. Luis concedes that the Properties are listed as 'substitute real properties under [21 U.S.C. § 853(p)]," he misinterprets that to mean that they are "derived from proceeds traceable to [the] offence." *Id*. Casa's Amended Motion adopts that error and alleges that the Luis Expert Report is "consistent with the allegations from Gorrin's Superseding Indictment describing the real properties as 'substitute property' that are 'derived from proceeds traceable to [the illicit bribery scheme]." ECF No. 60 at 24 (citing Ex. I (the Superseding Indictment) at 17-18). But, as Magistrate Judge Otazo-Reyes noted, "[t]his provision allows the government to 'seize any other property of the defendant, up to the value of the tainted property –rather than the tainted property itself.'" ECF No. 180 at 11-12 (quoting *Honeycutt v. United States*, 581 U.S. 443, 452 (2017)). Thus, "Mr. Luis' analysis is flawed," (R&R at 13), and so is Casa's reliance on that analysis.[6]

Casa objects to this finding by mischaracterizing it. Magistrate Judge Otazo-Reyes did not hold that "the classification of *some* Properties as 'substitute assets' in Gorrin's Superseding

---

[5]Casa points to this Court has Order on its *Ex Parte* Expedited Motion to Commence Proceedings Supplementary, (ECF No. 4), to claim that this Court "previously found that [Casa's] allegations 'sufficiently identif[y] eight (8) real properties of [Venezuela] purchased with misappropriated Venezuelan funds in the hands of the proposed impleaded parties.'" Obj. at 5. However, the Court's Order does not constitute a finding on the sufficiency of Casa's allegation in the context of the merits of Casa's constructive trust claim. The Court merely found a sufficient predicate for issuing Notices to Appear to commence proceedings supplementary. ECF No. 4 at 2-3.
[6] Casa complains that Magistrate Judge Otazo-Reyes "improperly discredits Mr. Luis' expert opinion" and cites to *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F. 3d 1333, 1340-41 (11th Cir. 2003) for the proposition that the credibility and persuasiveness of expert testimony is reserved for the jury. However, Judge Otazo-Reyes did not weigh the credibility or persuasiveness of Mr. Luis. She instead identified an undisputed error made by Mr. Luis with respect to the substitute assets classification, which renders his ultimately opinion incorrect.

Indictment is somehow dispositive to find a lack of traceability as to *all* Properties." Obj. at 6 (emphasis in original). Instead, she held that Casa's conclusion that the Properties were derived from the alleged Venezuelan misappropriated funds *because* they were classified as substitute assets was an insufficient allegation of traceability since it was based on an incorrect premise. R&R at 13 ("Mr. Luis' analysis is flawed because the listing of the Properties in the forfeiture section of the indictment . . . as substitute property does not render them tainted[.]"). Therefore, Casa's argument that substitute properties are routinely re-classified is irrelevant since it was Casa who improperly relied on the Properties' classification as substitute properties in support of its allegation that they were traceable.[7]

Next, Casa argues that Mr. Luis noted the exclusion of the Fisher Island Property[8] from the Superseding Indictment and still opined that it was purchased with Venezuelan misappropriated funds. Obj. at 5-6. But, setting aside Mr. Luis' faulty reasoning on substitute assets as inapplicable to the Fisher Island Property, what remains as the basis for his traceability conclusion is the result of his independent investigation, which revealed the Fisher Island Property was acquired in 2009, and OFAC's findings, which do not reference any specific property at all. ECF No. 60-14 at 8-9, ¶¶ 27-28; R&R at 13.

In fact, Casa attempts to distance Mr. Luis' conclusion on the traceability of all Properties from his faulty reliance on their status as substitute assets by claiming he actually relied upon "OFAC's factual findings and the results of his firm's independent investigation." Obj. at 5 (citing ECF No. 60-16 at ¶ 27). His opinions fare no better. The "independent investigation" does not link the Properties to the claimed conduct because, according to the expert report, it only revealed that the Respondent Entities "did acquire real property in the State of Florida," the "Properties were acquired since 2008," and the Respondent Entities are owned or controlled by Gorrin and continue to hold title to these real properties." ECF No. 60-14 at ¶ 26. And, as Magistrate Judge Otazo-

---

[7] Moreover, no "re-classification" has occurred in the years following the Government's initial Indictment in 2018 and Superseding Indictment in 2020. *See U.S. v. Gorrin Belisario*, S.D. Fla. No. 18-cr-80160-WPD (ECF Nos. 3 and 44). Further, Casa's speculation concerning a subsequent civil forfeiture action is inapplicable here since any such action would be time barred under 19 U.S.C. § 1621, which states that a civil forfeiture action must be commenced "within five years after the time when the alleged offense was discovered," or "within 2 years after the time when the involvement of the property in the alleged offense was discovered, whichever was later[.]"

[8] The "Fisher Island Property" refers to the property located at 7043 Fisher Island Drive, Unit 7043, Fisher Island, Florida 33109.

Reyes has repeatedly noted, "while the referenced OFAC information lists the Respondent Entities, it makes no specific mention of the Properties." ECF Nos. 180 at 12; 241 at 4; 262 at 13 ("[T]here is no specific mention of the Properties in [OFAC's] findings."). Thus, neither of these sources establish the "necessary link in the chain between the Properties and the alleged use of Venezuelan misappropriated funds to purchase them[.]" ECF No. 180 at 12.[9]

Therefore, this Court should adopt Magistrate Judge Otazo-Reyes' ruling that "Respondents are entitled to judgment on the pleadings with respect to Casa Express' request for the imposition of a constructive trust on the Properties on behalf of Venezuela." R&R at 14.

**B. Casa's Claims Against Respondents are Barred by the Act of State Doctrine.**

Casa's objection that the Act of State Doctrine is inapplicable because it's "Amended Motion does not seek to invalidate the foreign currency exchange transactions that took place in Venezuela" and "merely seeks to establish that certain acts occurred while the foreign currency exchange transactions were performed," (Obj. at 19), simply repeats the same argument previously rejected by Magistrate Judge Otazo-Reyes with the apt observation that "[n]o amount of word play on the part of Casa Express can negate [the] reality" that "for Casa Express to obtain the relied it seeks in these proceedings supplementary, the Court must find that the acts of the two Venezuelan Treasurers were a breach of trust; hence illegitimate." (R&R at 19-20).

This is precisely what distinguishes *W.S. Kirkpatrick & Co. v. Env't Tectonics Corp, Int'l*, 493 U.S. 400 (1990). That case involved a suit by the losing bidder against a competitor who had pled guilty to paying bribes to Nigerian officials in order to obtain a government contract. *Id*. at 401-04. The defendants argued that the evidence demonstrating bribe payments would also render the government contract unlawful. *Id*. at 406. The Supreme Court disagreed, holding that "[r]egardless of what the court's factual findings may suggest as to the legality of the Nigerian

---

[9] While the R&R correctly relies on the lack of an alleged property nexus, the other necessary elements of a constructive trust raised by Respondents in their Motion for Judgment on the Pleadings are also not pled. *See* ECF No. 232 at 16. Initially, Casa's pleading fails to allege that there is no adequate remedy at law, a prerequisite for the equitable remedy of a constructive trust. *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1518 (11th Cir. 1994) ("[C]onstructive trusts are inherently equitable in nature and that equitable relief is available only in the absence of an adequate remedy at law."). Moreover, Casa completely fails to allege any of these four necessary elements of a constructive trust. It does not allege any promise made by Gorrin or to Gorrin, a transfer of property in reliance of any such promise, or any confidential relationship between Gorrin and anyone. *See McKinzie v. Davidson*, 2006 WL 8432332, *11 (S.D. Fla. July 10, 2006); *Ben-Yishay v. Mastercraft Dev., LLC*, 553 F. Supp. 2d 1360, 1372 (S.D. Fla. 2008).

contract, its legality is simply not a question to be decided in the present suit[.]" *Id*. Thus, "the factual predicate for application of the act of state doctrine d[id] not exist" since the issues to be decided did not "require the Court to declare invalid, and thus ineffective . . . the official act of a foreign sovereign." *Id*. at 405.

But "[u]nlike *Kirkpatrick*, this is not a case where the Court's findings might indirectly suggest the invalidity of a foreign sovereign's actions." *Caballero v. Fuerzas Armadas Revolucionarias de Colombia*, 2022 WL 71662, at *4 (W.D.N.Y. Jan. 7, 2022); *See Royal Wulff Ventures LLC v. Primero Mining Corp.*, 938 F.3d 1085, 1093–94 (9th Cir. 2019) ("Here, it is not simply a question of whether a given act—in *Kirkpatrick* a bribe—occurred; the questions Plaintiffs raise are as to the legality of the [sovereign act] itself[.]"). Here, Casa must prove that the Properties upon which it seeks to impose a constructive trust are derived from misappropriated Venezuelan funds obtained through the alleged "illicit and corrupt foreign currency exchange scheme." ECF No. 60 at 2. The legality of the currency exchange contracts is central to the dispute –if the currency exchange contracts are valid and, therefore, did not result in any unjust enrichment, there can be no constructive trust remedy as to the Properties.

To impose a constructive trust over the Properties would require a finding of unjust enrichment –*i.e.,* that the currency exchange contracts unlawfully generated misappropriated proceeds used to purchase the Properties –which necessarily requires that the contracts be invalidated. *Team Services Inc. v. Securitas Electronic Security, Inc*., 2023 WL 6890660, *11 (11th Cir. Oct. 19, 2023); *Global Network Management Ltd. v. Centurylink Latin American Solutions, LLC*, 67 F.4th 1312, 1317 (11th Cir. 2023) (citing *Diamond S Development Corp. v. Mercantile Bank*, 989 So.2d 696, 687 (Fla. 1st App. 2008) (no unjust enrichment claim, constructive trust remedy, if contract applies). Since "[s]uch a finding is precluded by the act of state doctrine's preclusive effect . . . Respondents are entitled to judgment on the pleadings with respect to their act of state doctrine affirmative defense." R&R at 20; *See Glen v. Club Mediterranee S.A.*, 365 F. Supp. 2d 1263, 1271 (S.D. Fla. 2005), *aff'd*, 450 F.3d 1251 (11th Cir. 2006) ("Because the Glen's trespass and unjust enrichment claims necessarily hinge on the asserted invalidity of an act of state, the act of state doctrine precludes this court from addressing these claims.").

### C. Respondents' Property is Immune from Attachment and Execution under the FSIA, such that this Court Lacks Subject Matter Jurisdiction.

Casa argues that the Properties are subject to execution under Section 1610(a)(1) of the FSIA because they belong to Venezuela, they were used for commercial activity by Venezuela, and Venezuela waived its immunity from attachment and execution in the Fiscal Agency Agreements (the "FAAs") that governed the underlying bond dispute. Obj. at 13-14. Magistrate Judge Otazo-Reyes properly rejected each of these arguments.

Initially, Casa claims the R&R erred by failing to address whether the Properties belong to Venezuela. Obj. at 15. However, Casa's Amended Motion attempts to satisfy the ownership element of Section 1610(a)(1) by claiming the Properties are subject to a constructive trust because they were purchased with misappropriated Venezuelan funds. ECF No. 60 at 13-25. As stated above, Magistrate Judge Otazo-Reyes has repeatedly analyzed and rejected this argument. ECF Nos. 180 at 12, 241 at 5, and 262 ("R&R") at 13-14. Nevertheless, the R&R's FSIA analysis begins by restating the Respondents' argument that, "*assuming arguendo* Casa's claim that the Properties belong to Venezuela, they would be immune from attachment and execution under the FSIA[.]" R&R at 16 (emphasis added). Given that assumption, there was no need for the R&R to repeat its finding on the insufficiency of allegations regarding traceability in the context of the FSIA's ownership element, especially when the other statutory criteria –the use of the Properties for commercial activity –remains unsatisfied.

On the commercial use element, Casa argues that Venezuela used the Properties commercially by allowing Casa to sue on its behalf and execute upon the Properties in satisfaction of its judgment.[10] First, Casa's Amended Motion devotes two paragraphs to this element, which

---

[10] Casa appears to have abandoned its alternate argument that the Properties need not have been used for commercial activity by the sovereign state, such that Gorrin's commercial use of the Properties satisfied Section 1610(a) and resulted in a waiver of sovereign immunity by Venezuela. This argument was duly rejected by Magistrate Judge Otazo-Reyes, who held that Section 1610(a) "does not mean that the foreign state loses its FSIA immunity if someone else uses its property for commercial activity, as Casa Express contends." R&R at 18. This finding is supported by nationwide case law uniformly interpreting Section 1610(a) as requiring that the property be used for a commercial activity within the United States by the foreign state, not any third party, for a waiver to be imputed. *United States v. M/Y Galactica Star*, 13 F. 4th 448, 459 (5th Cir. 2021) ("[O]nly the foreign state itself can waive its sovereign immunity."); *Flatow v. Islamic Republic of Iran*, 76 F. Supp. 2d 16, 23 (D.D.C. 1999); *Connecticut Bank of Commerce v. Republic of Congo*, 309 F.3d 240, 247 (5th Cir. 2002); *Export-Import Bank of the Republic of China v. Grenada*, 768 F.3d 75, 90 (2d Cir. 2014).

do not include this argument or a single supporting factual allegation. *See* ECF No. 60 at 25-26. Given that this argument is entirely outside of the pleadings, it is unavailable for consideration under Fed. R. Civ. P. 12(c). *Bryant v. Progressive Mountain Ins. Co.*, 243 F. Supp. 3d 1333, 1336 (M.D. Ga. 2017) ("Because judgment on the pleadings is limited to consideration of the substance of the pleadings and any judicially noticed facts, the Court cannot consider facts introduced in the parties' briefing on Defendants' Motion.").

Second, Casa's unpled argument nevertheless fails. Casa's attempt to introduce new materials in the context of its commercial use argument fails for the same reasons expressed above with respect to Casa's standing argument. And, again, the documents provided do not state that Venezuela is guaranteeing anything at all, much less that Venezuela is guaranteeing the Respondents' Properties to satisfy its judgment. They only state Venezuela has no objection to Casa's request for an OFAC license. ECF Nos. 149-2 at 13, 276-5 at 2, 276-6 at 2. Further, Casa concedes that the R&R "correctly notes that the Proposal occurred after the commencement of the supplementary proceeding," but claims the time of filing suit is "irrelevant for purposes of the 'commercial activity' FSIA analysis." Obj. at 16. However, just like with standing issues, commercial activity under FSIA is determined as of the time of filing suit. *TIG Insurance Co. v. Republic of Argentina*, 967 F.3d 778, 782 (D.C. Cir. 2020) Holding that the "time-of-filing approach best accords with the text and purpose of the FSIA."). Accordingly, Plaintiff's concession that Venezuela's alleged commercial activity had not begun before commencement of this suit is fatal to its alleged showing of commercial activity.

Regardless, Magistrate Judge Otazo-Reyes correctly ruled that a guarantee by Venezuela of the Properties for the repayment of Casa's judgment would not constitute use of the Properties for commercial activity under Section 1610(a)(1). R&R at 17 (citing *United States v. M/Y Galactica Star*¸13 F. 4th 448, 459 (5th Cir. 2021)). In *Galactica Star*, the Nigerian Government "encouraged" and "consulted with" the United States Government on the interlocutory sale of a yacht during a forfeiture action. *Id*. Judge Otazo-Reyes agreed with the Fifth Circuit's finding that "Nigeria's participation in the sale of a yacht for civil forfeiture purposes did not constitute commercial activity resulting in a waiver of its sovereign immunity." *Id*. Casa attempts to distinguish *Galactica Star* on irrelevant and inapplicable bases. Casa argues "Venezuela has never withdrawn its claim against the Impleaded Defendants," while Nigeria voluntarily withdrew its claim to the yacht in *Galactica Star*. Obj, at 16. This distinction makes no difference to the relevant

issue but, regardless, Venezuela has never made a claim to the Respondents' Properties in the first place. As argued above, there has been no assignment of a potential cause of action by Venezuela. Casa also argues that "Venezuela is the party that entered into the agreement with Casa Express" whereas the parties entering into the purchase agreement regarding the yacht were the United States Government and the winning bidder in *Galactica Star*. Obj. at 6. However, it is unclear what "agreement" Casa is referring to as there is no agreement between Venezuela and anyone regarding the sale of Respondents' Properties. Finally, Casa argues that "Venezuela stands to receive the funds (if there is any surplus) unlike Nigeria." But Casa has repeatedly stated it seeks to execute upon Respondents' Properties in order to satisfy its judgment, just as the proceeds from the sale of the yacht in *Galactica Star* would be used to satisfy the United States' Government's forfeiture claim.

The cases upon which Casa relies involve entirely distinguishable facts and do not interpret the commercial use exception under Section 1610(a). In *Guevara v. Republic of Peru*, 468 F. 3d 1289 (11th Cir. 2006), the court dealt with the issue of whether Peru's "offer of a reward in return for information enabling it to locate and capture a fugitive" fell within the commercial activity exception for jurisdictional sovereign immunity under § 1605(a). In *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, the court decided whether Argentina's issuance of bonds satisfied the commercial activity exception to jurisdictional immunity under § 1605(a)(2). These inapplicable cases do not call into question Judge Otazo-Reyes' sound reasoning.

Finally, as to the issue of waiver, Casa concedes that the R&R correctly found that Venezuela's waiver of immunity from suit in the Partial Default Judgment entered against it in the New York bond proceedings does not translate to a waiver of immunity from attachment and execution in this lawsuit. Obj. at 14. This finding was in direct response to Casa's argument that "Venezuela explicitly waived its jurisdictional immunity from suit in the FAAs, making it subject to this supplementary proceeding." ECF No. 251 at 16. And Judge Otazo-Reyes' holding comports with the well-established statutory distinction between a waiver of immunity from suit versus a waiver of immunity from property attachment and execution under the FSIA. Casa now attempts to belatedly change its argument by claiming the R&R "fails to consider the allegations in the Amended Motion that establish Venezuela's waiver from attachment and execution." Obj. at 14. This new argument is unavailing because the Casa nevertheless fails to satisfy the statutory criteria requiring actual commercial use of the property by the foreign sovereign. *See, e.g.*, *Bainbridge*

*Fund Ltd. v. Republic of Argentina*, 2023 WL 5747299, at *4 (S.D.N.Y. Sept. 6, 2023) ("execution is authorized '*only if* the property is 'used for a commercial activity in the United States,' *even if* the foreign sovereign has waived its immunity.") (quoting *Aurelius Cap. Partners, LP v. Republic of Arg.*, 584 F.3d 120, 130 (2d Cir. 2009)).

Therefore, this Court should adopt the R&R's recommendation that "Respondents are entitled to judgment on the pleadings with respect to their affirmative defense of FSIA immunity." R&R at 18.

### D. Casa Lacks Standing to Sue on Venezuela's Behalf, Depriving this Court of Jurisdiction.

In addition to the abject lack of merit in Casa's claim and failure to establish a viable constructive trust, Casa lacks standing to assert Venezuela's cause of action against Respondents, which forms the predicate for the constructive trust Casa seeks. Casa does not dispute that it has not pled, and cannot establish, any of the elements necessary for Article III standing or prudential standing. Instead, Casa claims that Florida's supplementary proceedings statute automatically confers standing by authorizing Casa to assert the claims of its judgment debtor. In other words, Casa argues that, without Venezuela's approval, it may usurp the foreign sovereign, seize its potential cause of action, and file suit against its debtors. Not surprisingly, none of the cases that Casa cites stand for this proposition or involve the unique circumstance in which a private judgment debtor obtains title to a foreign sovereign's "chose in action" (particularly one involving allegations of a corrupt scheme perpetrated by the sovereign's government officials) to execute upon the properties of the sovereign's debtors. Casa's recycled argument, which again lacks any supporting legal authority on point, should again be rejected.

Alternatively, Casa again claims that "Venezuela assigned its litigation rights to Casa Express pursuant to a Venezuelan law." Obj. at 9. Aside from the fact that Casa has not even pled standing based on an assignment, which alone is grounds to reject its argument, no such assignment occurred. In support of its assignment claim, Casa initially submitted (1) a Venezuelan law dated February 21, 2022 entitled "Guidelines for Processing Proposals from Creditors of the Venezuelan Public Sector to Sue Holders of Assets Obtained by Corruption;" and (2) correspondence from the former Special Attorney General of Venezuela dated March 17, 2022 (digitally signed on March 7, 2022). ECF No. 251 at 6-7 (citing ECF No. 149-2). Judge Otazo-Reyes rejected Casa's argument, finding that "Casa Express acknowledged that it had not strictly considered the legal requirements for making an assignment of litigation rights and that the Venezuelan law upon which

it relies may not meet those requirements," and "the Venezuelan Attorney General's purported authorization post-dated the commencement of this action." R&R at 16, n. 11.

Casa now objects by interjecting new documents, namely: (1) the supposed "Proposal" submitted by Casa to the Venezuelan Special Attorney General pursuant to the Venezuelan law, (ECF No. 276-3); (2) correspondence from Casa dated March 8, 2022 allegedly supplementing the Proposal, (ECF No. 276-4); (3) a second letter from the former Special Attorney General of Venezuela dated March 17, 2022 (digitally signed on the same date), (ECF No. 276-6); and (4) an undated declaration by a Venezuelan lawyer purporting to offer an "opinion" on the legal significance of the documents submitted by Casa (ECF No. 276-2) (the "Guzman Declaration). These new documents, which have not been authenticated by Casa, are not property before this Court because: (1) they are entirely outside of the pleadings and, therefore, unavailable for consideration under Fed. R. Civ. P. 12(c); (2) they were not presented to Judge Otazo-Reyes in advance of her R&R; and (3) they are disputed and inadmissible.

First, a court may only consider documents outside the four corners of a complaint when deciding a motion for judgment on the pleadings if they have been "incorporated by reference" in that they are (i) central to the plaintiff's claim, and (ii) undisputed. *Horsely v. Feldt*, 304 F.3d 1125, 1134-35 (11th Cir. 2002); *GoPlus Corp. v. Crown Equipment Corp.*, 533 F.Supp.3d 1344, 1352 (S.D. Ga. 2021). Here, Casa's new materials cannot be considered incorporated into the pleadings since they are not mentioned or even alluded to in Casa's Amended Motion. Indeed, the ultimate purpose of this new material—to prove an assignment by Venezuela to Casa of its right to sue— is beyond the pleadings because Casa's Amended Motion does not even claim standing based on an assignment. The absence of any pleading of assignment is confirmed by Casa's request for leave to amend its pleading "to incorporate factual allegations regarding Venezuela's assignment." Obj. at 13, n.9. Casa's request should be denied for improperly requesting leave to amend in its Objection to the R&R in lieu of filing a motion as required under Fed. R. Ci. P. 7(b)(1). *Suntrust Mortg., Inc. v. McCormic*, 2015 WL 12844299, at *2 (M.D. Fla. July 17, 2015) ("Plaintiff, . . . has not filed a motion seeking leave to amend its Complaint . . . [and] [t]he only place where Plaintiff requests leave to amend its Complaint is in its Objection to the Magistrate Judge's Report, which is improper."). Moreover, the newly introduced documents are disputed, as explained more fully below.

Second, because Casa failed to present this new material to Judge Otazo-Reyes, this Court has "broad discretion" to decline to consider it. *Club Madonna Inc. v. City of Miami Beach*, 42 F. 4th 1231, 1259-60 (11th Cir. 2022); *Williams v. McNeil*, 557 F.2d 1287, 1292 (11th Cir. 2009). This is especially appropriate where, as here, a party seeks to overrule a Report and Recommendation through "evidence which should have been presented to the Magistrate Judge for consideration originally, particularly where good cause for the omission has not been demonstrated and where a motion seeking leave to submit the new evidence is lacking." *United States v. Welch*, 2015 WL 13791188, *1 (M.D. Fla. Feb. 9, 2015). Casa's unexplained omission of these documents during the Parties' extensive briefing on the Respondents' Motion for Judgment on the Pleadings coupled with the glaring inconsistencies in the newly submitted materials further supports rejection by this Court.[11]

Specifically, the English and Spanish versions of Casa's alleged Proposal are dated March 2, 2021, (ECF No. 276-3) and of Casa's supplement to the Proposal are dated March 8, 2021 (ECF No. 276-4). Casa had previously stated it submitted its Proposal on March 8, 2021, without actually providing a copy to the Court and without referencing the prior March 2, 2021 correspondence. ECF Nos. 149-2 at 2, 251 at 7. Nevertheless, Casa now claims both letters were submitted pursuant to the Venezuelan law, (Obj. at 11), and both letters quote and discuss the Venezuelan law (ECF Nos. 276-3 at 1, 276-4 at 4). However, the Venezuelan law first issued on February 22, 2022, a year after the date of the letters. Additionally, both letters refer to the instant action, which commenced on August 27, 2021, as having already been filed by listing its docket number as 1:21-mc-23103-BB. ECF Nos. 276-3 at 1, 276-4 at 3. The Proposal letter purports to attach "a copy of the motion [Casa] filed at the Southern District Court of Florida to initiate supplementary proceedings" (ECF No. 3), and this Court's Order "authorizing the summoning of the defendants" (ECF No. 4). Although the actual attachments are not provided by Casa, the referenced docket entries are dated September 10, 2021 and September 14, 2021, respectively.

---

[11] Casa's failure to attach all of the relevant correspondence and documents from inception violates Fed. R. Civ. P. 106 and the common law rule of completeness, both of which state that a party who introduces all or part of a writing or recorded statement may be required to introduce any other writing or statement that in fairness ought to be considered at the same time. Here, Casa's unexplained piecemeal approach to submitting the documents it relies upon to establish its claimed assignment violates the fairness principle underlying the rule of completeness.

Confirming this discrepancy between the letters' stated dates and the subsequent events to which they refer, Casa's Objection contradicts the stated dates in both letters, (ECF Nos. 276-3, 276-4), as well as its prior assertion, supported by the declaration of Casa's director, confirming the stated date of the Proposal supplement as being March 8, 2021, (ECF Nos. 251 at 7, 276-4 at 4), by now referring to the letters as being dated March 2, 2022 and March 8, 2022 and having a Venezuelan lawyer use the 2022 dates in a declaration. Obj. at 11, ECF No. 276-2 at ¶ 11. The Respondents dispute the newly provided materials given the questionable nature of their untimely disclosure and their numerous inconsistencies. Therefore, they cannot be used to overcome the recommendation that judgment on the pleadings be entered.

Regardless, even a consideration of Casa's untimely materials does not result in a finding of an assignment by Venezuela. Casa's alleged Proposal specifically seeks a "**No Objection Letter** . . . stating the Republic has no objection" to Casa's request for an OFAC license. ECF No. 276-3 at 3. The supplement to Casa's Proposal reiterates Casa's "request that a **No Objection Letter** be issued . . . stating that the Bolivarian Republic of Venezuela has no objection to the Specific License application currently being processed by [Casa]." ECF No. 276-4 at 2. Then, the March 17, 2022 correspondence from the former Special Attorney General of Venezuela concludes by "express[ing] [a] willingness to grant the requested Letter of No Objection to be addressed to OFAC, under the terms of [Casa's] request[.]" ECF Nos. 149-2 at 13, 276-5 at 2. And the newly provided correspondence from the former Special Attorney General of Venezuela of the same date reiterates that "the Bolivarian Republic of Venezuela . . . does not have any objection to [Casa] obtaining an authorization or license from the Department of the Treasury to execute the judgment that the District of the Southern District of New York issued ordering the Bolivarian Republic of Venezuela to pay the amount of $43,360,535.20." ECF No. 276-6 at 2. Casa did not request, and Venezuela did not provide, an assignment of any potential cause of action by Venezuela against the Respondents.

Casa attempts to fix this problem by submitting a declaration of a Venezuelan lawyer summarily concluding (without any evidence) that "Venezuela assigned to Casa Express its litigation rights against Gorrin and his controlled entities relating to its ownership interest in the Subject Properties." ECF No. 276-2 at ¶ 21. The Guzman Declaration is itself invalid and inadmissible under 28 U.S.C. § 1746(1) because it is undated; it fails to identify where it was signed; and it fails to state it was made under penalty of perjury under the laws of the United

States.[12]  Moreover, it does not solve Casa's failure to "consider[] the legal requirements for making an assignment of litigation rights and that the Venezuelan law upon which it relies may not meet those requirements." R&R at 16. Casa fails to provide this analysis to this day. *See US Fax L. Ctr., Inc. v. iHire, Inc.*, 476 F.3d 1112, 1120 (10th Cir. 2007) ("If a valid assignment confers standing, an invalid assignment defeats standing if the assignee has suffered no injury in fact himself.").

Finally, even accepting Casa's argument that there had been an assignment on March 17, 2022, Judge Otazo-Reyes held that "the Venezuelan Attorney General's purported authorization post-dated the commencement of this action." R&R at 16, n. 11. Under Casa's own interpretation of its documents, this action was commenced without standing. As a factual matter, this lawsuit commenced with the registration of Casa's New York judgment on August 27, 2021, (ECF No. 1), and certainly no later than the filing of Casa's initial motion seeking to commence proceedings supplementary on September 10, 2021 (ECF No. 30). Yet Casa claims an alleged assignment occurred on March 17, 2022. Obj. at 12. But Casa cannot gradually acquire standing after the fact. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 571 (1992) ("standing is to be determined as of the commencement of suit"); *Focus on the Fam. v. Pinellas Suncoast Transit Auth.*, 344 F.3d 1263, 1275 (11th Cir. 2003) ("Article III standing must be determined as of the time at which the plaintiff's complaint is filed."); *MSP Recovery Claims, Series LLC v. QBE Holdings, Inc.*, 965 F.3d 1210, 1219 (11th Cir. 2020) ("[A]n assignee must possess the assigned right 'on the day it filed the complaint.'") (quoting *Abraxis Bioscience, Inc. v. Navinta LLC,* 625 F. 3d 1359, 1366 (Fed. Cir. 2010)); *Voo-Doo Daddy Prods., LLC v. Colorblind Media, LLC*, 2022 WL 17251517, at *3 (M.D. Fla. Nov. 28, 2022), *reconsideration denied,* 2022 WL 17609670 (M.D. Fla. Dec. 13, 2022) ("[A] a nunc pro tunc assignment does not confer standing if executed after the complaint's filing.").

Casa fails to object to this finding, such that this portion of Judge Otazo-Reyes' report is reviewed for clear error, an "extremely deferential standard of review" that is "rarely invoked."

---

[12] *Taser Int'l, Inc. v. Phazzer Elecs., Inc.,* 2022 WL 19826877, at *1 (M.D. Fla. Aug. 31, 2022) (striking declaration because undated and fails to identify where signed); *Braddy v. Robinson*, 2020 WL 352826, *2 (S.D. Fla. Jan. 21, 2020) (Bloom, J.) (undated declaration is incompetent evidence); *Ostrow v. GlobeCast Am. Inc.*, *4 (S.D. Fla. Oct. 13, 2011) (striking declaration for failure to comply with 28 U.S.C. § 1746(1) requirement to declare under penalty of the perjury laws of the United States), *aff'd,* 489 F. App'x 433 (11th Cir. 2012).

*Cox Enters., Inc. v. News-Journal Corp.*, 794 F.3d 1259, 1272 (11th Cir. 2015); *See Parts & Elec. Motors, Inc. v. Sterling Elec., Inc.*, 866 F.2d 228, 233 (7th Cir. 1988) quoted in *Howzell v. Saul*, 20-80142- CIV, 2020 WL 5077029, at *1 (S.D. Fla. Aug. 27, 2020) (J. Altman) and *Sec. & Exch. Comm'n v. Nat. Diamonds Inv. Co.*, 493 F. Supp. 3d 1260, 1263 (S.D. Fla. 2020) (Reinhart, J.) ("To be clearly erroneous, a decision must strike us as more than just maybe or probably wrong; it must, as one member of this court recently stated during oral argument, strike us as wrong with the force of a five-week-old, unrefrigerated dead fish.").

For the above reasons, this Court should adopt Judge Otazo-Reyes' recommendation that "Respondents are entitled to judgment on the pleadings with respect to their affirmative defense of Casa Express' lack of standing." R&R at 16.

### E. This Court Lacks Ancillary Jurisdiction Over This Matter.

Magistrate Judge Otazo-Reyes found that this court lacks ancillary jurisdiction over these proceedings because: (1) ancillary jurisdiction does not extend to a new lawsuit against Respondents, who are third parties that cannot be held liable for Casa's bond judgment against Venezuela (R&R at 20-21 (citing *Peacock v. Thomas*, 516 U.S. 349, 359 (1996)); and (2) federal question jurisdiction by virtue of the applicability of the FSIA is nonexistent since the FSIA "is only applicable to proceedings supplementary against Venezuela, the judgment debtor," and "does not extend to the third-party Respondents" (R&R at 21).

In opposition to the applicability of *Peacock*, Casa objects by recycling the argument that Casa "does not seek to hold the [Respondents] liable for [its] outstanding judgment against Venezuela," and it only seeks to execute upon Properties "in the hands of the [Respondents]" in order to satisfy the judgment. Obj. at 19-20.[13] That is, as Magistrate Judge Otazo-Reyes found, a "distinction without a difference, since the Respondent Entities own the Properties upon which Casa Express seeks to impose a constructive trust[.]" R&R at 20. Thus, Casa's semantic argument is unavailing when the indisputable effect of Casa's claims would be "to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment [Respondents]" or to "make the [Respondents] answerable for the judgment already obtained" solely against Venezuela. *Peacock*, 516 U.S. at 357.

---

[13] Casa abandons its prior arguments that the jurisdiction to enforce the New York judgment extends beyond the judgment debtor to third parties, which was properly rejected by Magistrate Judge Otazo-Reyes. R&R at 20-21.

Casa's only rebuttal is that this finding "impermissibly fails to accept the factual allegations in the Amended Complaint [that the real properties are property of Venezuela] as true" and "makes a factual determination of a disputed material fact." Obj. at 19. However, as stated above with respect to Casa's failure to sufficiently allege its constructive trust theory, Casa's conclusory allegations as to property ownership lack any factual support and are actually contradicted by the faulty reasoning of Casa's expert, such that they are not entitled to the assumption of truth. As Casa concedes, it "must establish that the Properties belong to Venezuela in this supplementary proceeding." Obj. at 20. But it has failed to sufficiently allege it in the first place. R&R at 14. And Casa's attempt to invoke the Eleventh Circuit's reasoning in *Nat'l Mar. Servs., Inc. v. Straub*, 776 F.3d 783 (11th Cir. 2015) is unavailing because, as Magistrate Judge Otazo-Reyes found, that case "involved a fraudulent transfer claim rather than the imposition of a constructive trust predicated on a breach of trust claim." R&R at 20.

Magistrate Judge Otazo-Reyes also properly rejected Casa's attempt to invoke federal question jurisdiction under 28 U.S.C. § 1331. R&R at 21. As an initial matter, Casa's Amended Motion does not assert § 1331 federal question jurisdiction, but rather exclusively claims federal jurisdiction under the FSIA. ECF No. 60 at 1. And the FSIA only applies to the extent Casa seeks to enforce its judgment against Venezuela. Casa appears to concede this point by mischaracterizing the nature of this proceeding in claiming that "the FSIA governs this post-judgment proceeding against Venezuela." Obj. at 21. But Casa is not proceeding *against* Venezuela here. Instead, Casa claims to be proceeding against the third-party Respondents *on behalf of* Venezuela. The FSIA does not confer an independent basis for jurisdiction over the Respondents, who are entirely separate entities being held accountable for Venezuela's judgment under a tenuous "constructive trust" theory totally unrelated to the subject matter of Casa's original claim for unpaid bonds, and which Magistrate Judge Otazo-Reyes found to be legally deficient. R&R at 21. Therefore, "Respondents are entitled to judgment on the pleadings with respect to their affirmative defense that the Court lacks ancillary jurisdiction over these proceedings supplementary." *Id*.

**F. Casa Has Failed to Allege, and Cannot Establish, Personal Jurisdiction Over Gorrin.**

Reiterating her prior holding that "the Court lacks personal jurisdiction over Gorrin in these proceedings supplementary" because "a necessary link in the chain between the Properties and the alleged use of Venezuelan misappropriated funds to purchase them remains open," (ECF No. 181at 6, 12), Judge Otazo-Reyes recommended that "Gorrin is entitled to judgment on the pleadings for

lack of personal jurisdiction." R&R at 9. Casa does not dispute that, in order to gain specific personal jurisdiction under Florida's long-arm statute, Casa must establish a connexity between the cause of action and the Florida contacts. Obj. at 23. However, Casa's Objections again attempt to improperly parse this out by claiming its cause of action is for "wrongful participation in a breach of trust" and a connection to the only relief sought in the cause of action –the imposition of a constructive trust upon Respondents' Properties –is unnecessary. *Id*. Casa proceeds to provide a list of alleged activities by Gorrin in Florida pertaining to a yacht, veterinary services, a security system, a fashion company, and the renovation of an unrelated property, (Obj. at 24), none of which are in any way related to the Properties upon which Casa seeks to impose a constructive trust here.[14]

As Judge Otazo-Reyes aptly held, "[t]here are two problems with Casa Express' attempt to hang personal jurisdiction on such a disjointed theory. First, a constructive trust is the *raison d'etre* for these proceedings supplementary, whereby Casa Express seeks to collect on its Judgment against Venezuela . . . Second, Casa Express cites no authority for the novel idea that the Court can exercise specific personal jurisdiction over Gorrin for alleged acts that are related to a tort but that are disjointed from the relief sought for that tort." R&R at 10 (internal citations omitted). Casa's Objections still neglect to do so because, according to Casa, it "does not bear the burden of proof on Gorrin's motion." Obj. at 23, n. 12. However, Casa indisputably bears the burden of establishing personal jurisdiction over Gorrin and, consequently, of setting forth a legally sound basis for the exercise of jurisdiction by the Court. Rather than doing so, Casa again argues that its conclusory allegations in the Amended Motion should be accepted as true. Obj. at 27-28. Again, Casa's conclusory allegations as to property ownership lack any factual support and are actually contradicted by the faulty reasoning of Casa's expert, such that they are not entitled to the assumption of truth.

---

[14] Casa incorrectly claims that these allegations from the Superseding Indictment must be accepted as true because they are undisputed by Gorrin's affidavit. The allegations are specifically denied in Gorrin's affidavit, (ECF Nos. 127-2, 128-3), and this Court's subsequent ruling striking the denial in Gorrin's affidavit of the criminal allegations in the Superseding Indictment after Casa "emphasized that it does not seek to strike the entire Declaration to leave Gorrin, or any of the Respondents, defenseless," (ECF No. 184 at 5), does not render these allegations "undisputed."

Alternatively, Casa attempts to satisfy the "conducting business" prong of personal jurisdiction by alleging that Gorrin operated a real estate venture in Florida with respect to the Properties, such as by applying for approval to a Homeowner's Association and executing Quit Claim Deeds, (Obj. at 26), none of which, according to Judge Otazo-Reyes, qualifies as conducting business in Florida under the factors set forth by the Eleventh Circuit in *Horizon Aggressive Growth, L.P. v. Rothesteing-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). Casa's objects by simply disagreeing with the ruling while failing to provide any analysis of these factors. Obj. at 27.

Finally, Casa argues that exercising personal jurisdiction over Gorrin comports with due process and takes issue with the R&R's opposite holding "given the weakness of Casa Express' arguments for application of the Florida long-arm statute to Gorrin," (R&R at 12), because, according to Casa, "the due process test is separate and distinct from the long-arm statute test" (Obj. at 29). However, Casa previously conceded that the due process analysis only applies once the Court determines that the requirements of Florida's long-arm status are satisfied. ECF No. 252 at 8 (citing *See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F. 3d 623 (11th Cir. 1996)); *Rautenberg v. Falz*, 193 So. 3d 924, 930 (Fla. Dist. Ct. App. 2016) (When Florida's long-arm statute is not satisfied, the court "need not reach the issue of whether [the defendant] has sufficient contacts with Florida to satisfy due process concerns."). Regardless, Casa cannot satisfy the first prong of the due process inquiry – whether Casa's claims arise out of or relate to at least one of Gorrin's contacts in Florida – for the same reasons it has failed to sufficiently allege a connexity between the Respondents' Properties and its cause of action under Florida's long-arm statute.

## **CONCLUSION**

For the foregoing reasons, this Court should adopt Judge Otazo-Reyes' recommendations, (ECF No. 262), and grant the Respondents' Motions for Judgment on the Pleadings (ECF Nos. 231 and 232)